UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

WINFORD DALLAS JONES,       )
            )
     Plaintiff,        )
            )
v.             )  Civil Action No. 7:06-CV-00547
            )
LORETTA M. D'SOUZA, Personal  )
Representative of the ESTATE OF KRISTINA  )
MAE ARCISZEWSKI, deceased, *et al.*,  )
            )
     Defendants.      )

**MEMORANDUM IN SUPPORT OF ROBINSON DEFENDANTS'
MOTION TO DISMISS PURSUANT TO FED. R. CIV. PRO. 12(B) (6),**

      Defendants C.H. Robinson Worldwide, Inc., C.H. Robinson Company, C.H. Robinson Company Inc., C.H. Robinson Company LP, C.H. Robinson International, Inc., C.H. Robinson Operating Company LP, and C.H. Robinson Transportation Company Inc. (collectively "Robinson"), are entitled to have the Complaint against them dismissed for failure to state a claim upon which relief may be granted. Each of the relevant counts of the Complaint is discussed in turn below.

**FACTUAL BACKGROUND**

**A.    Cast of Characters**

      This case arises out of a serious motor vehicle accident involving two tractor trailers that occurred in Wythe County on the evening of September 12, 2004. *See* Complaint. at ¶13. In order to understand what allegedly transpired, and why the Robinson defendants are not legally responsible, it is important to identify the various *dramatis personae* involved.

The plaintiff, Winford Dallas Jones, is a resident of West Virginia, and a professional truck driver. *See id.* at ¶¶ 5, 13. On the night of September 12, 2004, he was purportedly operating a Freightliner truck, presumably in the scope of his employment. *See id.*

The primary defendants in this case are Loretta D'Souza, the personal representative of the Estate of Kristina Mae Arciszewski, another truck driver who was killed in the accident; Ms. Arciszewski's then-employer, a now-defunct Georgia trucking company called AKJ Enterprises, Inc. ("AKJ"); and Elson and Dionnie (sic) Bolar, the purported sole owners of AKJ. *See id.* at ¶¶ 1-3. Allegedly, at the time of the accident, Ms. Arciszewski's truck was carrying a load of cable reels manufactured by Coleman Cable, Inc., and being shipped by Coleman from its facility in Hayesville, North Carolina, to another of its facilities, located in East Longmeadow Massachusetts. *See id.* at ¶11.

Robinson is a freight broker—not a trucking company or a shipper.[1] *See id.* at ¶ 28; *see also* Amended Motor Freight Agreement between Robinson and AJK,[2] 4/19/01, attached to the Complaint (hereinafter "Motor Freight Agreement" or

---

[1] In *Schramm v. Foster*, 341 F. Supp. 2d 536 (D.Md. 2004), a case in which Robinson was a defendant, and which dealt with many of the issues in the case at bar, the Court described Robinson's business as follows: "Robinson does not own transportation equipment (trucks, trains, ships or aircraft), but instead matches shippers together with carriers that do own and operate such equipment so that commercial goods can be moved efficiently from origin to destination. . . . Robinson has brokerage contracts with more than 20,000 licensed motor carriers, whereby the carriers agree to haul loads for shippers through C.H. Robinson." *Id.* at 541. *Schramm* is discussed in detail below.

[2] In the Motsor Freight Agreement, AKJ is identified as "Unlimited Express", a name under which it apparently did business.

"Agreement").[3]  Freight brokers are, in many ways, like travel agents for motor freight and cargo.  The Motor Freight Agreement describes Robinson as

> a motor carrier property broker duly licensed by the Federal Highway Administration (FHWA) to arrange the transportation of property by authorized motor carriers, which desires from time to time to use the services of carriers [like AKJ] to transport freight for or on behalf of its customers, the transportation of which Robinson controls.

*Id.* at p.3.

When a shipper, like Coleman Cable, needs to transport product via truck, they often contract with a broker like Robinson to connect them with a trucking company, like AKJ.  Like a travel agent, Robinson has access to thousands of carriers, and performs the job of middle-man, accepting shipment requests from shippers and finding carriers for those shipments—often thousands of times a day. Thus, Robinson has contracts like the Motor Freight Agreement with thousands of carriers, as well as similar contractual arrangements with shippers. However, both the shippers and the freight carriers remain contractually independent of Robinson. Indeed the Motor Freight Agreement contains the following express provisions governing the relationship between Robinson and AKJ:

- AKJ and Robinson agree that they are both independent contractors of one another, and that AKJ "shall and does employ, retain or lease on its own behalf all persons operating motor vehicles transporting commodities under this contract, and *such persons are not employees or agents of Robinson or its Customers.*"  *Id.* at ¶ 6 (emphasis added).

- The parties further agreed that "all drivers of motor vehicles and persons employed in connection with the transportation of commodities under this

---

3    Because the Motor Freight Agreement is both referenced in, and attached to, the Complaint, it is deemed "a part of the complaint which is subject to the motion to dismiss under Rule 12(b)(6).  *Belvac Production Machinery v. Standard Industrial Prods Co.*, 2007 WL 1189703 (W.D.Va. 2007) (citations omitted).

Contract *are subject to the direction, control and supervision of Carrier [AKJ], and not of Robinson or its Customers.*" *Id.* (emphasis added).

- AKJ also agreed to ensure that its drivers were "competent and properly licensed" and that "neither Robinson nor its Customer is responsible for paying the involved driver's salary, wages, compensation or charges, nor are either responsible for Workman's Compensation coverage or any taxes based on salary, wages or compensation. Carrier [AKJ] agrees to provide and maintain the necessary equipment and to provide all fuel and pay all expenses necessary to operate the equipment . . . *in no instance shall Robinson or its customer be responsible for any of the expenses.*" *Id.* at ¶ 4 (emphasis added).

- As part of the consideration for the Agreement, AKJ agreed that it would be responsible for maintaining proper licensure, insurance, and Federal Highway Administration certifications—not Robinson—and, further, that it would "*at all times have a U.S. DOT safety rating that is satisfactory, and that at no time will it allow its safety rating to become unsatisfactory.*" *Id.* at ¶ 4 (emphasis added).

## B.    The Events at Issue

The alleged facts surrounding the actual collision in this case are straightforward. The plaintiff alleges that, on September 12, 2004, he was driving his Freightliner tractor-trailer south on Interstate 81, when he was struck head-on by AKJ's truck, which was heading north. *See id.* at ¶¶ 13-16. The collision killed the driver of AKJ's truck, Arciszewski, and allegedly injured the plaintiff. *See id.*

Normally, this is where the inquiry would end. However, apparently neither AKJ, which is no longer in business, nor the Arciszewski Estate, has the sort of deep pockets being sought by the plaintiff. Instead, the plaintiff attempts to cast Robinson in the combined—and wholly inapposite—role of employer, insurer, shipper, manufacturer, and regulatory proxy. The plaintiff claims that, the plain language of the Amended Carrier agreement notwithstanding, Robinson was somehow the direct employer of both AKJ and Arciszewski, and that Robinson purportedly controlled and

4

directed the shipment as though Robinson—and not Coleman Cable—was the true shipper here. *See id.* The plaintiff also contends that because AKJ went out of business shortly after the collision, it must have been in poor financial condition, and Robinson was legally obligated to know this, and furthermore to avoid doing business with a financially suffering carrier. *See id.*

## ARGUMENT

In all, the plaintiff asserts five different claims against Robinson: (a) negligence; (b) negligent hiring and supervision; (c) negligent entrustment; (d) violations of the Federal Motor Carrier Act, 49 U.S.C. § 14101(a); and (e) violations of the Federal Motor Carrier Safety Rules, 49 CFR 390.13.[4] For the following reasons, however, none of these claims can withstand scrutiny, and they must therefore be dismissed.

### A.  Negligence (Count I)

1.  Robinson Cannot be Liable for Direct Negligence, Because the Terms of the Motor Freight Agreement Establish that Robinson had no Control over AKJ or its Driver.

The plaintiff contends that Robinson and the other defendants were jointly negligent and that their negligence caused the collision at issue. Oddly, however, all of the specific allegations of negligence against Robinson assert conduct or relationships that are expressly contradicted by the plain language of the Motor

---

[4]   Counts II and IV of the Complaint are not addressed in this brief because they assert claims against AKJ only.

5

Freight Agreement—which is attached to, and incorporated into the Complaint.[5]   For example, the plaintiff claims that AKJ's driver, Arciszewski, was acting as the "agent, servant, and/or employee" of both AKJ and Robinson. Complaint at ¶ 8.  However, the Agreement provides that

> [AKJ] shall and does employ, retain or lease on its own behalf all persons operating motor vehicles transporting commodities under this contract, and *such persons are not employees or agents of Robinson or its Customers* . . . [and that] all drivers of motor vehicles and persons employed in connection with the transportation of commodities under this Contract *are subject to the direction, control and supervision of Carrier [AKJ], and not of Robinson or its Customers.*

*Id.* at ¶ 6 (emphasis added).  No additional facts are pleaded, however, to explain how this could be legally or factually possible in light of the express wording of the Motor Freight Agreement.

The plaintiff also claims—again, without factual support, and again, in direct contravention of the terms of the Motor Freight Agreement—that the duty fell on *Robinson* to "ensure" that *AKJ's* driver operated in a "proper and lawful manner." *Id.* at ¶ 10.  This is belied by paragraph 4 of the Agreement, which expressly provides that AKJ, not Robinson, is responsible for maintaining proper licensure, insurance, and Federal Highway Administration certifications and, further, that

> AKJ would, "*at all times have a U.S. DOT safety rating that is satisfactory, and that at no time will it allow its safety rating to become unsatisfactory.*"  (emphasis added).

---

[5]   The plaintiff's attempt to get around the Motor Freight Agreement by simply contradicting it runs afoul of the general rule that where "the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint."  *Sazerac Co., Inc. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994), citing *Feick v. Fleener*, 653 F.2d 69, 75, n. 4 (2d Cir.1981); *United States ex rel. Sommer v. Dixon*, 524 F. Supp. 83, 85 (N.D.N.Y.1981).

Again, no additional facts are pleaded to get around the application of the Agreement.

In addition, the plaintiff asserts that Robinson and AKJ somehow jointly "controlled, managed and/or supervised the manner, method and/or procedure that this load was to be transported," and that the defendants were jointly negligent in that they "failed to keep *their* vehicle under proper control," among other things. *Id.* at ¶¶ 11, 16, 17. Again, the plain words of the Agreement teach that this is simply not so:

> [AKJ also agreed to ensure that its drivers were] "competent and properly licensed" [and that] "neither Robinson nor its Customer is responsible for paying the involved driver's salary, wages, compensation or charges, nor are either responsible for Workman's Compensation coverage or any taxes based on salary, wages or compensation. Carrier [AKJ] agrees to provide and maintain the necessary equipment and to provide all fuel and pay all expenses necessary to operate the equipment . . . *in no instance shall Robinson or its customer be responsible for any of the expenses.*"

*Id.* at ¶ 4 (emphasis added).

2.  <u>Robinson Also Cannot be Vicariously Liable for the Acts of AKJ, an Independent Contractor</u>.

As explained above, Robinson cannot be liable for direct negligence here. Nor can it be vicariously liable for the negligence of AKJ or Arciszewski. As noted in paragraph 6 of the Agreement, Robinson and AKJ are independent contractors. *See id.* Robinson did not have control over AKJ or Arciszewski's driving time, compensation, route, or any other aspect of Arciszewski's driving. *See id.* Moreover, Robinson could not fire, or even discipline, Arciszewski. *See id.* It is axiomatic under Virginia law that "one who employs an independent contractor is not liable for injuries to third parties resulting from the contractor's negligence." *MacCoy v. Colony House Builders, Inc.*, 239 Va. 64, 69 (1990); *see also Schramm*, 341 F. Supp. 2d at 546

(analyzing wording in virtually identical Agreement between Robinson and carrier, and holding that the Motor Freight Agreement did not give Robinson sufficient control over the driver to make Robinson vicariously liable for the driver's negligence.)

### B. Negligent Hiring and Supervision (Count III)

Plaintiff's next claim against Robinson is Count III of the Complaint, which alleges that Robinson negligently hired and supervised AKJ and Arciszewski. *See* Complaint at ¶¶ 27-35. For the reasons below, neither count should survive.

1. Virginia Does Not Recognize a Cause of Action for Negligent Supervision.

Negligent supervision is not recognized as a cause of action under Virginia law. *See*, e.g., *The Chesapeake and Potomac Telephone Company of Virginia, et al. v. H. Lee Dowdy, Jr.*, 235 Va. 55, 365 S.E.2d 751 (1988). Indeed, this Court recently held as much in *Huffman v. Wynn, et al.*, 2006 WL 1288317, *4 (W.D.Va. 2006) (holding that claim for negligent supervision "must be dismissed because Virginia does not recognize a cause of action for negligent supervision.").

2. Robinson Cannot be Liable for Negligent Hiring.

Plaintiff alleges that Robinson is also liable for the "negligent hiring" of AKJ, ostensibly because Robinson somehow knew or should have known that AKJ was "lacking in experience" and having "financial difficulties." Compl. at ¶¶ 28-29. Although plaintiff does not explain why AKJ's alleged lack of operational experience and financial difficulties somehow rendered them unfit to carry freight, that is clearly the plaintiff's theory.

As this Court observed in *Huffman*, however, in Virginia, negligent hiring applies only to *employers* who hire *employees* who pose an unreasonable risk of harm to others. *See* 2006 WL 1288317, at *3  This Court noted that

> [t]he plaintiff must establish that: an employee had a propensity for the conduct that ultimately resulted in the injury to others, and knowledge of the propensity was reasonably discoverable; the employer failed to inquire; and if the employer had inquired, it would not have placed the employee in the position that it did.

*Id.* (citations omitted).

The doctrine is inapplicable here, however, for two reasons. First, as noted previously, Robinson was not the "employer" of AKJ or of Arciszewski, AKJ's truck driver. *See* Motor Freight Agreement, at ¶¶ 4, 6 (providing that "all drivers of motor vehicles and persons employed in connection with the transportation of commodities under this Contract *are subject to the direction, control and supervision of Carrier [AKJ], and not of Robinson or its Customers.*") (emphasis added). Thus, the tort does not apply to Robinson.

Second, the plaintiff does not allege—nor can he—that AKJ or Arciszewski had "a propensity for the conduct that ultimately resulted in the injury to others." The plaintiff simply cannot point to any evidence establishing that AKJ or Arciszewski had a prior propensity to cause fatal crashes. Allegations of financial difficulties and unspecified "lack of experience" do not constitute evidence of a pre-existing propensity by AKJ or its driver to cause crashes. Indeed, in *Huffman,* this Court granted a defendant's Rule 12(b)(6) motion and dismissed a negligent hiring claim precisely because "[t]he plaintiff has failed to allege any sort of knowledge by Winchester Orthopaedic, prior to hiring Wynn, of the possibility that the defendant

would create an unreasonable risk of harm or would be unfit for the position." 2006 WL 1288317, at * 4.

For these reasons, Robinson cannot be liable for negligent hiring.

### C.     Negligent Entrustment (Count V)

In Count V of the Complaint, plaintiff asserts that Robinson is liable for negligent entrustment because Robinson purportedly "negligently entrusted to defendant AKJ . . . a load of cable reels manufactured by Coleman Cable Inc." Compl. at ¶ 42.  Plaintiff asserts that, because of AKJ's aforementioned financial problems and other factors, it was negligent for Robinson to retain AKJ to haul this load. *Id.*  This claim fails, however, for the reasons below.

First, the claim fails because, under Virginia law, negligent entrustment "requires that the *owner of the instrumentality used to inflict injury* knew, or had reasonable cause to know, that he was entrusting the *instrumentality* to a third person who was likely to use it in a manner that would cause injury to others." *Kingrey v. Hill*, 245 Va. 76, 78 (1993) (emphasis added), citing *Hack v. Nester*, 241 Va. 499 (1991); *Denby v. Davis*, 212 Va. 836 (1972).   In the case at bar, the "instrumentality" used to injure the plaintiff was AKJ's tractor-trailer.  However, it is undisputed—as it must be—that Robinson was not the owner of, and had no interest in, AKJ's truck.  Thus, Robinson cannot, as a matter of both law and logic, have "entrusted" the truck to AKJ.

Indeed, the only thing even arguably "entrusted" to AKJ by Robinson was the freight load of cable reels.  As plaintiff acknowledges, these were the property of Coleman Cable, and even if the Court were to treat them as the de facto property of

Case 7:06-cv-00547-GEC-mfu   Document 25   Filed 05/25/07   Page 10 of 15   Pageid#: 69

Robinson, it would still not expose Robinson to liability here, because the plaintiff does not allege—nor can he—that the load of cable reels (rather than the truck carrying them) was the instrumentality that injured the plaintiff.  Under Virginia law, in cases involving motor vehicle accidents, the vehicle at fault is generally deemed to be the "instrumentality" of injury—not cargo or other materials being carried in the vehicle.  *See, e.g., Kingrey, supra*; *Hack*, *supra;* and *Denby*, *supra.*

This reasoning was also accepted by the Court in *Schramm* (a motor vehicle accident case with similar facts to the case at bar), applying Maryland law—which is substantially similar to Virginia law on this point.  There, the Court held that the plaintiffs

> fail[ed] to establish a claim for negligent entrustment because Robinson did not supply Foster [the defendant truck driver] with a chattel. . . . The truck Foster used was provided by his employer, [defendant trucking company] Groff Brothers.  At no point did Robinson exercise control over the truck or play any part in assigning the load to Foster.  The contract carrier agreement [virtually identical to the Motor Freight Agreement in this case] expressly required Groff Brothers to provide both the truck and the driver to deliver the load.  Thus, Robinson was not a "supplier" of chattel subject to liability for negligent entrustment.

341 F. Supp. 2d at 546-47.

For these reasons, Robinson is not liable for negligent entrustment.

### D.    Violations of Motor Carrier Act (Count VI) and Motor Carrier Act Regulations (Count VII)

The plaintiff's final claims assert that Robinson violated the Federal Motor Carrier Act ("MCA"), 49 U.S.C.A. §§ 14101, *et seq.*, and section 390.13 of the Federal Motor Carrier Safety Rules ("FMCSRs"), 49 C.F.R. §§390, *et seq.*  For the reasons below, neither claim should survive.

11

1.    <u>Alleged Violations of the MCA</u>.

In Count VI, plaintiff claims that Robinson's decision to use AKJ as its carrier—notwithstanding the aforementioned alleged problems with AKJ—violated § 14101(a) of the MCA.  As noted by the plaintiff, that provision merely states that "a motor carrier shall provide safe and adequate service, equipment and facilities."  49 U.S.C.A. § 14101(a).  However, the plaintiff then reads into that one sentence—without any factual or legal support—a duty on the part of *Robinson*, a broker, to ensure that AKJ, the carrier, complies with § 14101(a).  *See* Compl. at ¶¶ 46-50.  Indeed, the plaintiff specifically alleges that § 14101(a) expressly provides that private citizens may recover "damages sustained by a person as a result of an act or omission by that interstate motor carrier, broker and/or freight forwarder in violation of such federal rules and regulations." Compl. at ¶ 46.

There is *no such language* in § 14101.  Nothing in that section provides for any sort of private right of action—or other remedy—in the event of some sort of violation.  Thus, the plaintiff cannot seek damages against Robinson—or anyone else—under § 14101.

Section 14704(a)(2) of the MCA *does* contain a provision permitting the recovery of damages against a "carrier or broker . . . for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part." *Id.*  However, virtually all Courts that have analyzed this section, including Judge Motz in *Schramm*, have held that it does *not* provide a private right of action to members of the public who are injured by motor carriers.  *See, e.g., Schramm,* 341 F. Supp.2d at 548 (holding that "I join with those courts which have found that section

12

14704(a)(2) does not create a private right of action for personal injuries."); citing *Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.*, 192 F.3d 778 (8th Cir. 1999); *Stewart v. Mitchell Transport*, 241 F. Supp. 2d 1216 (D. Kan. 2002); *Renteria v. K&R Transportation Inc.*, 1999 WL 33268638 (C.D.Cal. 1999). Instead, recognizing the massive negative impact such a private right of action would have on the entire industry, Judge Motz held that § 14704(a)(2) was intended by Congress to apply only to commercial disputes among shippers and brokers. *Id.*

Moreover, as the Court noted in *Schramm*, Robinson cannot be liable for the actions of AKJ and/or Arciszewski, because—as demonstrated repeatedly above—Robinson was not their employer. *Id.* at 547-48 (noting that, pursuant to § 390.3 of the FMCSRs, which implement the MCA, § 14704 of the MCA applies only to employers and their employees).

    2.    <u>Alleged Violations of the FMCSRs</u>.

Just as Robinson is not liable under § 14704 of the MCA, it cannot be liable under § 390.13 of the FMCSRs (49 C.F.R. § 390.13). In Count VII of the Complaint, the plaintiff asserts that Robinson violated FMCSR § 390.13, which provides that no person shall "aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter." *Id.*; Complaint at ¶¶ 52-53. The plaintiff claims—without any factual support—that Arciszewski was driving in an undisclosed "impaired and/or fatigued condition," and that Robinson "allowed" her to do so. Compl. at ¶ 53.

This claim cannot stand for several reasons. First, pursuant to the terms of the Motor Freight Agreement, Robinson did not have the authority to control Arciszewski's driving hours, or monitor or control her physical or mental state. *See*

13

Agreement, at ¶¶ 4, 6. As noted previously, Robinson was *not* Arciszewski's employer. Thus, Robinson had no duty to *prevent* Arciszewski from violating the FMCSRs—that duty rested solely with AKJ, her employer. Accordingly, Robinson cannot be credibly accused of "allowing" Arciszewski to do anything.

Second, this precise question arose in *Schramm*, and was resolved in Robinson's favor by the Court. There, the plaintiffs attempted to assert, under § 390.13, that Robinson had aided and abetted violations by Groff Brothers (the trucking firm in that case), and Foster (Groff's driver), by failing to inquire about Foster's driving hours and by prescribing a delivery and pick-up schedule that would allegedly require Foster to drive in excess of his allowable hours. *See* 341 F. Supp. 2d at 550. The Court disagreed, however, noting that aiding and abetting required more than showing that Robinson "merely brought about the arrangement that made the . . . acts of the principals possible." *Id.* The Court held that the plaintiffs

> have failed to proffer sufficient evidence establishing that Robinson intended to assist Groff Brothers or Foster in violating the hours of service regulations. While Robinson may have brought about the arrangement that made it possible for Groff Brothers and Foster to violate the regulations, this alone is insufficient to show that Robinson knew that Groff Brothers and Foster would violate the regulations.

*Id.* at 551.

Similarly, in the case at bar, the plaintiff has not alleged—nor can he—that Robinson was aware AKJ and Arciszewski were planning to violate the law, and that Robinson intended to assist them in doing so. Indeed, under the terms of the Motor Freight Agreement, Robinson lacked the necessary measure of control to do so.

Accordingly, Counts VI and VII should be dismissed.

Case 7:06-cv-00547-GEC-mfu    Document 25    Filed 05/25/07    Page 14 of 15    Pageid#: 73

## CONCLUSION

For the foregoing reasons, the Robinson Defendants ask that their motion be granted, that the case against them be dismissed, and that they be awarded costs, attorney's fees and such other relief as the Court may deem appropriate.

Respectfully submitted,

C.H. ROBINSON WORLDWIDE, INC.,
C.H. ROBINSON COMPANY,
C.H. ROBINSON COMPANY INC.,
C.H. ROBINSON COMPANY LP,
C.H. ROBINSON INTERNATIONAL,
INC.,
C.H. ROBINSON OPERATING
COMPANY LP,
and
C.H. ROBINSON TRANSPORTATION
COMPANY INC.,

By: **/s:// Paul C. Kuhnel**_____

Paul C. Kuhnel (VSB #28151)
Robert Michael Doherty (VSB #43997)
WootenHart PLC
707 S. Jefferson Street, Suite 300
P. O. Box 12247
Roanoke, VA  24024-2247
(540)343-2451
(540)345-6417 (facsimile)

### Counsel for the Robinson Defendants

s:\robinson_ch\19765\robinson--12b6 motion--brief.doc5/25/07rd