# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| **WINFORD DALLAS JONES,** | : |
| | : |
| **Plaintiff** | : |
| | : |
| **v.** | : |
| | : |
| **Loretta M. D'Souza, Personal Representative** | : |
| **of the ESTATE OF KRISTINA MAE** | : |
| **ARCISZEWSKI, deceased; AKJ ENTERPRISES, INC.,** | : 7:06-CV-00547 |
| **d/b/a Unlimited Express; ELSON BOLAR;** | : |
| **DIONNIE BOLAR; C. H. ROBINSON** | : |
| **WORLDWIDE, INC.; C. H. ROBINSON COMPANY;** | : |
| **C. H. ROBINSON COMPANY INC.; C. H. ROBINSON** | : |
| **COMPANY LP; C. H. ROBINSON INTERNATIONAL,** | : |
| **INC.; C. H. ROBINSON OPERATING COMPANY LP;** | : |
| **and C. H. ROBINSON TRANSPORTATION** | : |
| **COMPANY INC.,** | : |
| | : |
| **Defendants.** | : |

## BRIEF IN OPPOSITION TO
## MOTION TO DISMISS

**COMES NOW** Plaintiff, Winford Dallas Jones, by counsel, and files this Brief in

Opposition to the Motion to Dismiss filed by Defendants C. H. Robinson Worldwide, Inc.;

C. H. Robinson Company; C. H. Robinson Company Inc.; C. H. Robinson Company LP;

C. H. Robinson International, Inc.; C. H. Robinson Operating Company LP; and C. H.

Robinson Transportation Company Inc. (collectively referred to herein as "C. H.

Robinson").

# INTRODUCTION

In the present case, Plaintiff has brought various claims against the defendants in this suit, but only C. H. Robinson has been served at this time due to ongoing attempts to conclude settlement of a related matter, in which Canal Insurance Company interpled its full coverage in respect of a liability policy issued to Defendant AKJ Enterprises, Inc., such interpled funds being subject to various claims by the individuals and entities affected by the underlying accident. <u>See</u> *Canal Ins. Co. v. AKJ Enterprises, Inc., et al*, Civil Action No. 7:05-cv-00312. Plaintiff also wishes to note that Defendant AKJ Enterprises, Inc. filed for a Chapter 7 discharge in bankruptcy in the Northern District of Georgia after the accident giving rise to this suit, as set forth in Plaintiff's Complaint, and that a discharge was granted by that Court by Order dated May 25, 2006. Accordingly, Plaintiff does not intend to seek recovery directly from AKJ Enterprises, Inc., and the terms of the settlement agreement for the above-referenced suit require the dismissal of AKJ and the Estate of Kristina Mae Arciszewski upon the happening of certain events, the last of which Plaintiff anticipates occurring in the near future. Plaintiff does, however, still reserve the right to pursue his veil-piercing theory against Elson and Dionnie Bolar, the owners and/or principals of AKJ Enterprises, Inc.

# FACTS NOT IN DISPUTE

## THE ACCIDENT:

As set forth in Plaintiff's Complaint, the accident giving rise to the present suit

occurred in Wythe County, Virginia, at approximately 8:30 p.m. on September 12, 2004, in the vicinity of Mile Marker 86 on Interstate I-81. At the time of the accident, Plaintiff, Winford Dallas Jones, a resident of West Virginia, was traveling southbound on I-81 in a tractor-trailer owned by his employer, Purdy Brothers Trucking Company, Inc., to deliver a load destined for Salisbury, North Carolina. Traveling northbound on Interstate I-81 at that same time was a tractor-trailer owned by AKJ Enterprises, Inc. d/b/a Unlimited Express ("AKJ"), which was reportedly being driven by Kristina Mae Arciszewski ("Arciszewski"), who died at the scene shortly after the accident. Charles Morris, who was allegedly Arciszewski's boyfriend and/or co-driver, was a passenger in her vehicle. As the two tractor-trailers were approaching one another from opposite directions, Arciszewski's tractor trailer suddenly and abruptly crossed the median and struck Plaintiff's tractor-trailer essentially head-on.

Both tractor trailers were essentially ripped apart in the collision. As noted previously, Arciszewski died at the scene, having suffered profound injuries. Her companion, Charles Morris, also suffered injuries. Plaintiff was severely and permanently injured, suffering a concussion, multiple fractures of his right arm and numerous fractures of his left leg, such that essentially every bone in Plaintiff's left leg was broken from just below his hip to his ankle.[1]

---

[1] Plaintiff is unaware at this time as to whether C. H. Robinson intends to dispute the Plaintiff's position as to the residual or long-term physical impairments from which he currently suffers or is anticipated to continue suffering, or his diagnosis of post-traumatic stress disorder. Plaintiff will say simply for the Court's knowledge that he would anticipate, in the event of any dispute, putting on medical evidence and testimony of permanent nerve damage, fractures that have failed to properly heal, and other such proof, with the conclusion being that he is totally and permanently disabled, all of which is alluded to in more general terms in Plaintiff's Complaint.

**AKJ ENTERPRISES, INC., KRISTINIA MAE ARCISZEWSKI AND CHARLES MORRIS:**

Defendant AKJ was a motor carrier company which operated out of Jonesboro, Georgia. Public records of the State of George indicate that the company was formed in or around February of 1997 by Dionnie and/or Elson Bolar, who are also defendants in this matter.[2] It appears that AKJ had previously hauled at least one load for C. H. Robinson, based upon court records from the United States District Court for the Northern District of Illinois, but Plaintiff cannot state at this time how frequently C. H. Robinson had used AKJ's services prior to the accident giving rise to this suit or the length or duration of any relationship that had existed between the two entities prior to the accident on September 12, 2004.[3] As noted previously, AKJ has obtained a Chapter 7 discharge in the Northern

___

[2] In the Fourth Circuit, in addition to the factual allegations set forth in the Complaint and the exhibits attached thereto, a court may also consider official public records, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed. See *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004); *Witthohn v. Fed. Ins. Co*., 164 Fed. Appx. 395, 396-97 (4th Cir. 2006) (unpublished per curiam disposition) (taking judicial notice of state court proceedings). Some of the facts set forth in this brief are found in the public records of the Secretary of State of Georgia, the Federal Motor Carrier Safety Administration, the United States District Court for the Northern District of Illinois, and/or the United States Bankruptcy Court for the Northern District of Georgia. Although Plaintiff does not believe the Court will necessarily need to consider the accounts of such public records for purposes of ruling on C. H. Robinson's Motion to Dismiss, such information is included herein for purposes of providing background information that Plaintiff does not believe will be disputed.

[3] Plaintiff respectfully requests that the Court take judicial notice of the electronic records of the United States District Court for the Northern District of Illinois, Civil Action No. 1:04-cv-04672, which was apparently initiated by C. H. Robinson against AKJ Enterprises,

Case 7:06-cv-00547-GEC-mfu   Document 27   Filed 06/08/07   Page 4 of 23   Pageid#: 79

District of Georgia, and it would appear that the motor carrier ceased operations in or around November of 2004, according to its documents filed in the context of the bankruptcy proceeding.[4],[5]

At the time of the accident, Arciszewski and Morris were engaged in the process of driving a load from Hayesville, North Carolina, to East Long Meadow, Massachusetts, on behalf of AKJ and C. H. Robinson. Arciszewski is believed to have been driving at the time of the accident, and, as set forth in Plaintiff's Complaint, is understood to have been a relatively inexperienced commercial driver who had never undertaken employment as a driver of a tractor-trailer without also having been subject to the supervision of a more experienced trainer or supervisor. Morris is understood to have been Arciszewski's boyfriend, as well as her co-driver, but at the time of the accident, his commercial driver's license ("CDL") had been suspended or revoked. As set forth in Plaintiff's Complaint, AKJ is believed to have been aware of Arciszewski's lack of experience, as well as the fact that Morris lacked a valid CDL.[6]

**C. H. ROBINSON:**

C. H. Robinson generally holds itself out as a motor carrier broker who connects

---

Inc., approximately two months prior to the accident at issue.

[4] Plaintiff respectfully requests that the Court take judicial notice of the electronic records of the United States Bankruptcy Court for the Northern District of Georgia, 05-70896-jem.

[5] Plaintiff was unable to propound formal discovery to AKJ in the underlying Interpleader suit due to the bankruptcy proceedings, and is now awaiting responses to discovery requests that have been sent to C. H. Robinson. Accordingly, Plaintiff anticipates being able to further develop its facts as it obtains the information and documentation requested.

[6] §391.11 of the Federal Motor Carrier Safety Regulations prohibits a motor carrier from

Case 7:06-cv-00547-GEC-mfu    Document 27    Filed 06/08/07    Page 5 of 23    Pageid#: 80

shippers and carriers for purposes of arranging the transport and delivery of various types of cargo.[7] Upon information and belief, and as set forth in the Complaint, when AKJ was selected to be the motor carrier for the load being carried by Arciszewski and Morris at the time of the accident, AKJ had a conditional or unsatisfactory safety rating from the Federal Motor Carrier Safety Administration, a matter of which Plaintiff takes the position C. H. Robinson was or should have been aware. Plaintiff has also alleged in his Complaint that C. H. Robinson was or should have been aware that AKJ had limited experience as a motor carrier, that AKJ was impaired financially, and that AKJ was otherwise unfit to perform the required services in a safe and reasonable manner. It is Plaintiff's theory, as set forth in the various counts of his Complaint, that C. H. Robinson had a duty to hire carriers who met a minimum standard of competency and that C. H. Robinson breached or violated that duty in selecting AKJ to haul the load at issue.

## ARGUMENT

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; it

---

employing a driver who lacks a valid CDL.

[7] Plaintiff objects to C. H. Robinson's blanket statement in its memorandum under the section titled "Factual Background" that it is "a freight broker – not a trucking company or a shipper." (See Memorandum in Support filed by Defendants, page 2) Defendants cite to a Maryland case, *Schramm v. Foster*, 341 F. Supp.2d 536 (D. Md. 2004), to which both parties will likely make frequent reference during the course of these proceedings, for the proposition that C. H. Robinson's status is somehow a settled matter and/or for purposes of setting forth factual information about the company not contained in Plaintiff's pleading. As an initial matter, the opinion in the *Schramm* case deals with circumstances as they existed in or around May of 2002, when the accident underlying that case occurred. Plaintiff does not yet know if, how, or to what extent C. H. Robinson's circumstances or practices may have changed over time or as a consequence of the *Schramm* case. Furthermore, whether C. H. Robinson can be characterized as a motor carrier or as a shipper is a matter that requires the application of specific federal statutes to facts that are

does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. See *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). A complaint should not be so dismissed "unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." See *Adams v. Bain*, 697 F.2d 1213, 1216 (4th Cir. 1982) (citation omitted) (reversing dismissal as premature because fact-specific determination of whether volunteer fire department was state actor could not be made on face of complaint). Additionally, in considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the plaintiff, assuming its factual allegations to be true. See *Martin*, 980 F.2d at 952. Importantly, a court may not, in considering a Rule 12(b)(6) motion, resolve factual disputes to determine the proper disposition of the motion. See *Thigpen v. United States*, 800 F.2d 393, 396 (4th Cir. 1986). Rule 12(b)(6) motions to dismiss are generally disfavored by the courts. See *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991).

As the foregoing authorities make clear, Plaintiff is not required to have gathered together all of the evidence necessary to prove his claims at this juncture, nor would he be capable of doing so outside of the discovery process. See also *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.") (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683 (1974)). Plaintiff has brought his claims in good faith, based upon the facts known to him at this time and upon a reasonable belief that C. H. Robinson is a responsible party who shares in liability

---

not before the Court at this stage of the proceedings.

for Plaintiff's severe and life-altering injuries. Plaintiff respectfully submits that he is entitled to continue to gather his evidence against C. H. Robinson as the discovery phase of this suit progresses.

**A.    CLAIMS ASSERTED AGAINST C. H. ROBINSON:**

In the present case, Counts I, III, V, VI, and VIII pertain to C. H. Robinson, either exclusively or as one of several joint and several defendants. Count I seeks damages against C. H. Robinson under a vicarious liability claim. Count III seeks damages against C. H. Robinson under a negligent hiring, retention, and/or supervision claim. Count V seeks damages against C. H. Robinson under a negligent entrustment claim. Counts VI and VII seek damages against C. H. Robinson under claims for violations of the Federal Motor Carrier Act and the Federal Motor Carrier Safety Regulations, respectively.

Plaintiff's basic position at this stage of the proceedings, by way of summary, is that C. H. Robinson, despite its attempts to paint itself as a "broker" having only minimal involvement in the actual transportation process, has so effectively intertwined itself with the carriers that it employs, and the transportation process for each load it assigns, that it no longer fits the profile of the typical "broker" and has instead evolved into a *de facto* motor carrier and/or employer of the carriers it uses. Plaintiff seeks, in the various counts asserted against C. H. Robinson, to present a theory of liability against C. H. Robinson that adequately addresses the practicalities and realities of C. H. Robinson's extensive degree of involvement with, and control over, the transportation processes of its carriers and their individual drivers.

**B.    C. H. ROBINSON'S ARGUMENTS IN SUPPORT OF THEIR 12(b)(6)**

**MOTION TO DISMISS ARE PREDICATED UPON DISPUTED ISSUES OF FACT AND LAW WHICH CANNOT BE RESOLVED BY THE COURT ON A MOTION TO DISMISS:**

As an initial matter, C. H. Robinson's Memorandum in Support of its Motion to Dismiss places much emphasis upon certain terms allegedly contained in a document described by Defendants as "the Amended Motor Freight Agreement" or "the Motor Freight Agreement" and which was purportedly attached as an exhibit to Plaintiff's Complaint. (See Defendants' Memorandum in Support, page 2, and page 3, footnote 3) Plaintiff is much intrigued by the references to this document in the memorandum filed by C. H. Robinson, as there was no such exhibit attached to Plaintiff's Complaint, nor, in fact, has Plaintiff ever seen such a document, although hopefully C. H. Robinson will be producing that document to Plaintiff in the near future in response to his recently filed discovery requests. Although Plaintiff made passing references to some sort of agreement between C. H. Robinson and AKJ in his Complaint, as one would anticipate that an oral or written agreement of some sort would exist between two such entities, Plaintiff has not seen, nor has he been able at this stage to gain possession of, a copy of the document repeatedly referenced and heavily relied upon by C. H. Robinson in its supporting memorandum. Defendants did not attach a copy of the purported agreement to their memorandum in support.[8]

---

[8] Plaintiff notes that C. H. Robinson's Motion to Dismiss pursuant to Rule 12(b)(6) was filed on February 8, 2007. The aforesaid motion presented no legal arguments or other basis for the dismissal. On May 7, 2007, a Scheduling Order was entered by this Court which required that "If a motion was filed before entry of this order without supporting legal arguments, the movant must file a supporting brief within 14 days of the entry of this order." Pursuant to the Court's Order, Defendants' supporting memorandum was to have been filed by May 21, 2007, at the latest. No such memorandum was filed until May 25,

Case 7:06-cv-00547-GEC-mfu   Document 27   Filed 06/08/07   Page 9 of 23   Pageid#: 84

Plaintiff submits that any such document, if it exists and is properly authenticated, would presumably constitute evidence in this case, but would not control, as a matter of law, C. H. Robinson's liability to third parties who were not signatories to such contract, nor would the labels and self-identifiers set forth in any such agreement necessarily supersede the manner in which the Federal Motor Carrier Safety Act or Regulations dictate that a particular person or entity be characterized in light of the actual conduct and dealings of the parties. That being said, Plaintiff further submits that he cannot reasonably be expected to wholeheartedly accept C. H. Robinson's assertions as to the terms or import of an agreement that he has never seen, and as such, Plaintiff has no choice but to dispute its existence and/or authenticity at this juncture. As a consequence, Plaintiff respectfully submits that, for purposes of C. H. Robinson's Rule 12(b)(6) Motion to Dismiss, the Court cannot consider any references in Defendant's memorandum to the alleged "Amended Motor Freight Agreement" or "Motor Freight Agreement," including any assertions as to

---

2007, four days past the Court's deadline and 106 days after C. H. Robinson's Motion to Dismiss was filed. Counsel for Plaintiff is unaware of any efforts having been made by Defendants to seek such an extension from the Court and presumes for purposes of this memorandum that no such request has been made. Plaintiff notes that Rule 6(b) of the Federal Rules of Civil Procedure provides that, where an act is required to be undertaken within a specified time by order of court, the court has the discretion to order the period of time enlarged if the request is made prior to expiration of that period, but where no request is made prior to expiration of the specified period, the court may, upon motion of the party who was to have performed such act, permit the act to be done after the expiration period, but only where the failure to act "was the result of excusable neglect." See FED. R. CIV. P. 6(b). In the present case, C. H. Robinson's supporting brief was filed after the expiration of the specified period without any motion seeking, or any order granting, an enlargement of the time period within which such brief was to have been filed. Furthermore, Plaintiff submits that Defendants' failure to file its supporting brief in a timely manner is not the product of excusable neglect, or at least, no basis exists for a claim of excusable neglect of which Plaintiff has been made aware, particularly as Defendants could have filed their supporting memorandum at any point within the 102-day period between the filing of their Motion to Dismiss and the deadline specified in the Court's Order.

what the terms of any such agreement may be, or the import thereof, as set forth on pages 2, 3, 4, 5, 6, 7, 8, 9, 13, and 14 of the memorandum, as no such agreement was attached to Plaintiff's Complaint, Plaintiff has not been provided with a copy of this document, and to the best of Plaintiff's knowledge, no such agreement is otherwise available as a public record. See *Witthohn,* 164 Fed. Appx. at 396-97.

To the extent that the Court is otherwise inclined to consider such information, however, Plaintiff would further submit that such action would convert C. H. Robinson's 12(b)(6) Motion to Dismiss into a Motion for Summary Judgment, to which Plaintiff would be entitled to respond by presenting evidence obtained after being afforded a reasonable opportunity to pursue the discovery process to completion. See *Fayetteville Investors*, 936 F.2d at 1471-72; FED R. CIV. P. 12(b)(6).

In light of the foregoing, it is Plaintiff's position that C. H. Robinson cannot assert the existence of an independent contractor relationship between C. H. Robinson and AKJ, as there is no such allegation in Plaintiff's Complaint, nor do the allegations contained therein provide a reasonable basis for such a conclusion. Furthermore, Plaintiff objects to references contained in the "Factual Background" section of Defendant's memorandum to independent contractor relationships between C. H. Robinson and other motor carriers, unless such assertions can be substantiated through public or court records.

1.     **COUNT I OF PLAINTIFF'S COMPLAINT: NEGLIGENCE (VICARIOUS LIABILITY):**

Plaintiff has asserted a claim against C. H. Robinson under a vicarious liability theory in Count I of his Complaint, based upon the degree of oversight and control that Plaintiff believes C. H. Robinson exerted over both AKJ and Arciszewski. Despite the

limited review of the Court in the context of ruling on a 12(b)(6) motion to dismiss, C. H. Robinson seeks the dismissal of Plaintiff's vicarious liability claim, as a matter of law, based upon what it reports to be selected excerpts from the purported "Motor Freight Agreement," presented entirely out of context, which it maintains conclusively establishes that an independent contract relationship existed between C. H. Robinson and AKJ, and which, as noted above, has not been made available to Plaintiff (although Plaintiff has requested copies of any agreements between C. H. Robinson and AKJ in its recently served request for production of documents).[9] Plaintiff's Complaint, however, does not assert that an independent contractor relationship existed between C. H. Robinson and AKJ and/or Arciszewski for purposes of consideration of its claim of vicarious liability against C. H. Robinson, or for any other purpose, nor can such an assertion be reasonably inferred from the facts cited in Plaintiff's Complaint.

For the sake of argument, however, to the extent the Court were to conclude that it can consider the isolated excerpts presented by C. H. Robinson in its memorandum and/or its arguments predicated almost entirely upon conclusions drawn from such excerpts, Plaintiff recognizes that Virginia law holds that, as a general rule, an owner who employs an independent contractor is not liable for injuries to third persons caused by the contractor's negligence.  See *Kesler v. Allen*, 233 Va. 130, 134, 353 S.E.2d 777, 780 (1987).  Ordinarily, whether one acts as an employee or as an independent contractor is a question of fact for a jury.  See *MacCoy v. Colony House Builders, Inc.*, 239 Va. 64, 68, 387 S.E.2d 760, 762 (1990).  A court decides the question only when reasonable minds

_____
[9] Plaintiff submits that Section A. of the Argument Section of C. H. Robinson's memorandum must be disregarded in its entirety due to Defendants' complete reliance on

could not differ.  *Id.*

In the present case, Defendants seek to present various excerpts selected from the purported "Motor Freight Agreement," along with their conclusions as to the proper interpretation thereof, for purposes of establishing an inability on Plaintiff's part to ultimately prove a claim for vicarious liability against C. H. Robinson under any set of facts.  However, Plaintiff submits that, under applicable law, it has been established that liability of an employer under a vicarious liability theory is determined with reference to the actual relationship and dealings between the employer and the tortfeasor employee and is not dependent upon the terms used by such parties to describe the nature of their relationship.  <u>See, for example</u>, *West v. Costen*, 558 F. Supp. 564, 573 n.2 (W.D. Va. 1983) (citation omitted) (**"**Although the employment agreement between MSF and the individual collectors refers to the latter as 'independent contractors,' the key consideration in determining the existence of a master-servant relationship is the alleged master's power of control of the alleged servant's actions.").  As such, even if the Court were to accept that Defendants have accurately represented the terms of an agreement that can be considered by the Court at this stage, it does not follow, as a matter of law, that Plaintiff could not ultimately establish a claim for vicarious liability against C. H. Robinson by proving that, despite the provisions of any such agreement, a relationship existed between C. H. Robinson and AKJ and/or Arciszewski that falls within the scope of an employer-employee relationship for purposes of a claim of vicarious liability.

As an additional matter, even if the Court were to believe that an independent contractor relationship existed between C. H. Robinson and AKJ for purposes of Plaintiff's

the purported agreement which is not before the Court.

claim of vicarious liability, Plaintiff notes that Virginia law provides several exceptions to the general rule against holding an employer liable for the negligent acts of an independent contractor, if it can be shown that such independent contractor's torts arise directly out of his use of a dangerous instrumentality, arise out of work that is inherently dangerous, are wrongful *per se*, are a nuisance, or are such that it would, in the natural course of events, produce injury unless special precautions were taken. See *Kesler*, 233 Va. at 134, 353 S.E.2d at 780; *T. E. Ritter Corp. v. Rose*, 200 Va. 736, 742, 107 S.E.2d 479, 484 (1959) ("[O]ne who engages an independent contractor to do work of an inherently hazardous character, or to use a dangerous instrument, from either of which, in the natural course of things, it is likely that injurious consequences to others may arise, unless all reasonable precautions be taken . . . is bound to see to the doing of that which is necessary to prevent the mischief, and cannot relieve himself of responsibility"); *Bowers v. Martinsville*, 156 Va. 497, 515, 159 S.E. 196, 202 (1932); see also *Hodges v. Johnson*, 52 F. Supp. 488, 490 (W.D. Va. 1943) ("It is a matter of common knowledge that the transportation of freight upon the highways, usually by means of huge trucks and trailers, is fraught with great danger to the traveling public."); *Beauchamp v. B. & L. Motor Freight, Inc.*, 106 Ohio App. 530, 536, 152 N.E.2d 334, 338 (1958) (noting the potential for a tractor-trailer to be "inherently and imminently dangerous").

As set forth above, Plaintiff believes that he can prove a set of facts consistent with the allegations in his Complaint which would permit him to recover against C. H. Robinson under a theory of vicarious liability, provided he is given the opportunity to complete his discovery and more fully develop his evidence as to specific details of the relationship between C. H. Robinson, AKJ, and/or Arciszewski, and, accordingly, Plaintiff

respectfully requests that the Court deny Defendants' motion in respect to Count I of his Complaint.

## 2.   COUNT III OF PLAINTIFF'S COMPLAINT:   NEGLIGENT HIRING, RETENTION, OR SUPERVISION:

Plaintiff has also asserted under Count III of its Complaint a direct negligence claim against C. H. Robinson for negligently hiring, retaining, and/or supervising AKJ to haul the load at issue.  Virginia law clearly recognizes the independent torts of negligent hiring and retention.  See, for example, *Blair v. Defender Servs.*, 386 F.3d 623, 628 (4th Cir. 2003) (finding a genuine issue of material fact as to whether employee's "dangerous propensities" should have been discovered by employer); *J. v. Victory Tabernacle Baptist Church*, 236 Va. 206, 208, 372 S.E.2d 391, 393 (1988) (negligent hiring); *Sutphin v. United Am. Ins., Co.*, 154 F. Supp. 2d 906, 907 (W.D. Va. 2000) (negligent retention).

As noted previously herein, Plaintiff believes that he can establish an employer-employee relationship between C. H. Robinson and AKJ, regardless of the labels or self-identifiers that these parties may have set forth in any agreement executed by them (as set forth in a purported agreement not before the Court at this time).   Furthermore, Defendants' assertions in their memorandum notwithstanding, Virginia law has previously held that an employer who contracts with an independent contractor can be held directly negligent and liable for selecting and retaining an incompetent independent contractor.  See *Philip Morris, Inc. v. Emerson*, 235 Va. 380, 399, 368 S.E.2d 268, 278 (1988).

In Plaintiff's Complaint, it is asserted under Count III that C. H. Robinson knew or should have known that AKJ had limited experience as a motor carrier, had been assigned

a conditional or unsatisfactory rating by the federal regulatory agency, was impaired financially, and was otherwise unsuited and unfit to operate safely, regardless of how the nature of the relationship between them is ultimately characterized. As an initial matter, C. H. Robinson relies upon an unpublished decision of the Western District to establish a very specific pleading requirement that Plaintiff must meet, and then argues that Plaintiff has failed to meet that burden. (See Defendant's Memorandum, page 9, citing to *Huffman v. Wynn*, 2006 U.S. Dist. LEXIS 27810) Plaintiff counters with his own unpublished Western District opinion, *Anderson v. Wiggins*, 1997 U.S. Dist. LEXIS 11898, in which allegations of specific prior bad acts were not required where the Complaint contained other assertions of shortcomings on the part of the employee in respect of material traits necessary to perform the role of truck driver competently. *Anderson* was, in fact, acknowledged and impliedly approved by the Court in *Huffman*. See *Huffman*, 2006 U.S. Dist. LEXIS 27810, *9-10.

Plaintiff submits to the Court that, under either the *Huffman* or *Anderson* opinions, his Complaint contains sufficient allegations to survive a Rule 12(b)(6) Motion to Dismiss. As an initial matter, Plaintiff has clearly pled that AKJ had an unsatisfactory or conditional safety rating from the Federal Motor Carrier Safety Administration, had limited motor carrier experience, and was of questionable financial stability. The Complaint further states that either (i) C. H. Robinson was aware of AKJ's deficient *safety* rating, which would seem to be a fairly clear indication to C. H. Robinson that AKJ was an unsafe and unfit motor carrier, particularly when viewed in light of AKJ's other shortcomings, but that C. H. Robinson nonetheless chose to negligently hire AKJ notwithstanding such knowledge; or (ii) C. H. Robinson negligently failed to apprise itself of AKJ's deficient

safety rating and other facts indicating that AKJ was unfit to act as a motor carrier for the particular load involved in this case.[10]  Plaintiff's allegations can be viewed as describing an awareness on C. H. Robinson's part that AKJ had a propensity for unsafe conduct or operating unsafely in contravention of federal requirements, or they can be viewed as setting forth specific allegations showing the shortcomings of AKJ in respect of material traits necessary to perform competently as a motor carrier, such as safe practices.

Plaintiff respectfully submits that Virginia law does not appear to be entirely clear as to any specific pleading requirements for a claim for negligent hiring or retention. Plaintiff had pled with as much specificity as he believes he can reasonably do without including entirely speculative facts in his pleading based on his understanding of C. H. Robinson's prior dealings with other carriers at other times.  Plaintiff respectfully submits that he has pled sufficient facts to show that he had a reasonable basis for his claim, and, accordingly, Plaintiff respectfully requests that the Court deny Defendants' motion in respect to Count III of his Complaint and permit him to complete the discovery process.

3.    **COUNT V OF PLAINTIFF'S COMPLAINT: NEGLIGENT ENTRUSTMENT:**

In Count V of Plaintiff's Complaint, Plaintiff has asserted a claim against C. H. Robinson for negligent entrustment to AKJ, not of the tractor-trailer itself, but of the assignment to haul the cargo placed into Defendants' care by the shipper, Coleman Cable, Inc.  C. H. Robinson argues in its brief that Virginia does not recognize a cause of action

---

[10] Plaintiff notes that the public records of the Federal Motor Carrier Safety Administration concerning a motor carrier's safety ratings were available to C. H. Robinson via the agency's official website.

Case 7:06-cv-00547-GEC-mfu   Document 27   Filed 06/08/07   Page 17 of 23   Pageid#: 92

for negligent entrustment in respect of an activity within the defendant's control, as opposed to an instrumentality or thing.

Under the Restatement (Second) of Torts, it is stated that "[i]t is negligence to permit a third person to use a thing *or to engage in an activity which is under the control of the actor*, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others." See RESTATEMENT (SECOND) OF TORTS § 308 (emphasis added). Virginia courts have recognized and cited to the Restatement (Second) of Torts, and §308 in particular, with approval. See, for example, *Stanley v. Williams*, 42 Va. Cir. 400, 401 (Warren Co. 1997). Other courts that have directly addressed a claim of negligent entrustment in respect of "an activity which is under the control of the actor" have found such claims cognizable. See, for example, *Gaines v. Krawczyk*, 354 F. Supp. 2d 573, 580, n.1 (W.D. Pa. 2004) (finding that a claim for negligent entrustment could be made based upon an "activity"); *Midgette v. Wal-Mart Stores, Inc.*, 317 F. Supp. 2d 550, 568 (W.D. Pa. 2004) (to state a prima facie case for negligent entrustment, the plaintiff must show both that the third party could possess the harmful item, or engage in the harmful action only with the consent of the defendant, and that the defendant had reason to think that if it withheld consent, the third party would no longer be able to possess the item or participate in the activity).

In the present case, C. H. Robinson has cited to Virginia cases addressing circumstances involving a thing, chattel, or instrumentality. (See Memorandum, pages 10-11) Plaintiff is not aware of any Virginia case on point which indicates that a claim of negligent entrustment cannot be predicated upon a negligently entrusted activity. Based on

the Restatement (Second) of Torts, § 308, it would appear that Plaintiff has asserted a reasonable claim against C. H. Robinson and Plaintiff respectfully requests that the Court deny Defendants' motion in respect to Count V of his Complaint and permit him to complete his discovery.

**4.      COUNTS VI AND VII OF PLAINTIFF'S COMPLAINT:  VIOLATIONS OF THE FEDERAL MOTOR CARRIER ACT AND MOTOR CARRIER SAFETY REGULATIONS:**

**a.      VIOLATIONS OF THE FEDERAL MOTOR CARRIER ACT:**

Plaintiff has asserted under Count VI of its Complaint a claim against C. H. Robinson for its violation of the Federal Motor Carrier Act, specifically its failure to provide safe and adequate service, equipment, and facilities.  *See* 49 U.S.C. § 14101(a). Plaintiff believes C. H. Robinson is legally responsible for his personal injuries, as carriers and brokers that provide transportation service are liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of 49 USCS §§ 13101 *et seq.  See* 49 U.S.C. § 14704(a)(2).

A "plain meaning" reading of 49 U.S.C. § 14704(a)(2) has been found to confer a private right of action for a plaintiff's personal injuries.  See *Marrier v. New Penn Motor Express, Inc.*, 140 F. Supp. 2d 326, 329 (D. VT. 2001) (finding that one of the purposes of the Interstate Transportation Act is to ensure safety in the operation of motor carriers, thus mandating that a private right of action exists for personal injuries under the rules and regulations as promulgated; also finding that the plain meaning of 49 U.S.C. § 14704(a)(2) clearly creates the private right of action); see also *Doe v. Chao*, 435 F.3d 492, 496 (4th Cir.

2006)("When the statute's language is plain, the sole function of the courts - at least where the disposition required by the text is not absurd - is to enforce it according to its terms."); unpublished opinion, *Ferraro v Ballard (In re Ballard)*, 69 Fed. Appx. 145, 151 n.3 (4th Cir. 2003) (citation omitted) ("Where, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms" without any reference to legislative history.").

In the present case, Plaintiff respectfully submits that he is unaware of any Courts in the Fourth Circuit having considered the foregoing issue except the District Court for the Northern Division of Maryland in the case of *Schramm v. Foster*, 341 F. Supp.2d 536 (D. Md. 2004), cited in both briefs. Plaintiff respectfully submits that the language of 49 U.S.C. § 14704(a)(2) indicates a basis for finding that a private right of action for personal injuries is provided under said statute and that the *Schramm* decision is not binding upon this Court. Accordingly, Plaintiff respectfully requests that the Court deny Defendants' motion in respect to Count VI of his Complaint.

### b. <u>VIOLATIONS OF THE FEDERAL MOTOR CARRIER SAFETY REGULATIONS:</u>

Plaintiff has asserted under Count VII of its Complaint a claim against C. H. Robinson for its violation of the Federal Motor Carrier Safety Regulations, alleging specifically that C. H. Robinson aided and abetted AKJ and/or Arciszewski to violate certain provisions of those regulations, in violation of 49 C.F.R. §390.13. Again, Defendants make blanket assertions as to what actions C. H. Robinson could take, or the degree of control it could exert or the degree of aid that it could provide, based upon the purported "Motor Freight Agreement" that is not before the Court. Defendants appear to

take the position that Plaintiff is somehow required to produce evidence or detailed facts at this stage of the proceeding as to what C. H. Robinson knew or intended to do. The *Schramm* decision, relied upon by C. H. Robinson, was based upon a motion for summary judgment, not a Rule 12(b)(6) Motion to Dismiss. As is evident from the various arguments asserted by Defendants in their memorandum, C. H. Robinson is taking the position that Plaintiff is required to have somehow managed to complete his discovery prior to even filing suit and incorporate such evidence into factual allegations that would be sufficient to withstand a motion for summary judgment. This is simply something that a plaintiff cannot be required to do without having had the opportunity to conduct reasonable discovery.

## CONCLUSION

**WHEREFORE**, Plaintiff prays that the Court will overrule the Motion to Dismiss filed by C. H. Robinson for the reasons asserted herein.

Respectfully submitted,

**WINFORD DALLAS JONES**

s/_____Gary C. Hancock_____
Of Counsel

Gary C. Hancock, VSB #16704

Timothy E. Kirtner, VSB #36938
Ann L. Bishop, VSB #43847
GILMER, SADLER, INGRAM, SUTHERLAND & HUTTON
P. O. Box 878, 65 East Main Street
Pulaski, VA  24301
540/980-1360 (telephone)
540/980-5264 (facsimile)

Byron R. Shankman, VSB #13485
P. O. Box 1859
Dublin, VA  24084

Counsel for Plaintiff, Winford Dallas Jones

## CERTIFICATE OF SERVICE

I do hereby certify that I have this 8th day of June 2007 electronically filed the foregoing Brief in Opposition with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Paul C. Kuhnel, Esquire, Wooten Hart PLC, P.O. Box 12247, Roanoke, Virginia 24024-2247, Counsel for C.H. Robinson Worldwide, Inc.; C. H. Robinson Company; C. H. Robinson Company Inc.; C. H. Robinson Company LP; C. H. Robinson International, Inc.; C. H. Robinson Operating Company LP; and C. H. Robinson Transportation Company Inc.

s/      Gary C. Hancock
Gary C. Hancock
Gilmer, Sadler, Ingram, Sutherland & Hutton
P. O. Box 878, 65 East Main Street
Pulaski, VA  24301
540/980-1360 (telephone)
540/980-5264 (facsimile)

[ghancock@gsish.com](mailto:ghancock@gsish.com)