UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WINFORD DALLAS JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:06-CV-00547 |
| | ) |
| LORETTA M. D'SOUZA, Personal | ) |
| Representative of the ESTATE OF KRISTINA | ) |
| MAE ARCISZEWSKI, deceased, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ROBINSON DEFENDANTS' REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS PURSUANT TO FED. R. CIV. PRO. 12(B) (6),**

Defendants C.H. Robinson Worldwide, Inc., C.H. Robinson Company, C.H. Robinson Company Inc., C.H. Robinson Company LP, C.H. Robinson International, Inc., C.H. Robinson Operating Company LP, and C.H. Robinson Transportation Company Inc. (collectively "Robinson"), file this as their reply to the plaintiff's brief in opposition to their motion to dismiss, pursuant to Rule 12(b)(6), Fed. R. Civ. Pro. As discussed below, the plaintiffs' arguments, though thoughtful, are simply not correct, and the Robinson defendants are entitled to have the Complaint against them dismissed for failure to state a claim upon which relief may be granted.

### A. Preliminary Matters

Before critiquing the plaintiff's attempts to defend the factual adequacy of the Complaint, Robinson must quickly address several general issues raised in the plaintiff's brief.

1. Plaintiff's Brief Contains Numerous Facts and Allegations that are *Not* in the Complaint.

The factual content of plaintiff's brief is far richer than that of the Complaint—see, for example, detailed damages information provided in footnote 1 of his brief, and on pages 3-4, and financial information about defendant AKJ Enterprises (hereinafter "AKJ") on pages 4-5, and in footnotes 2 and 3. However, it is the content of the Complaint which is at issue here. "A party moving to dismiss a complaint under Rule 12(b)(6) is '**test[ing] the sufficiency of [the] complaint**' and asserting, in effect, 'that the plaintiff [is not] entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.' *Secretary of State for Defence v. Trimble Navigation Ltd.*, 484 F. 3d 700, 710 (4th Cir. May 10, 2007) (emphasis added) (affirming dismissal of Complaint under Rule 12(b)(6) by Eastern District of Virginia), quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir.1999); see also generally *Huffman v. Wynn*, 2006 WL 1288317 *2 (W.D.Va. 2006).

Thus, the plaintiff cannot use his brief as a *de facto* Supplemental Complaint in order to avoid dismissal under Rule 12(b)(6).

2. <u>The Motor Freight Agreement Between Robinson and AKJ is Properly Before the Court</u>.

The plaintiff correctly notes that, throughout their brief, the Robinson defendants make reference to, and quote extensively from, a Motor Freight Agreement (the "Freight Agreement") between AKJ and Robinson that governed their relationship at the time of the accident in this case. The plaintiff claims to make only "passing references" in the Complaint to the Freight Agreement, and complains that he has somehow been surprised and prejudiced by Robinson's use of the document. He also unfairly implies that by not attaching the document to its brief, and by

2

claiming that the Agreement was attached to the Complaint, Robinson was somehow engaging in sharp practice.[1]

In fact, however, the plaintiff relies heavily on the document in his Complaint—despite also claiming he has never even seen it. (Pl. Brief at 9). For example, the plaintiff alleges in Count I (negligence), that defendant Arciszewski was hauling a load of cable reels at the time of the crash, "as was dictated through an amended [2]contract carrier agreement and/or broker agreement between defendants AKJ and Robinson." Complaint at ¶ 11. He then makes specific factual claims about the *terms* of the Agreement—which he purports to have never seen—alleging that

> [u]nder this amended agreement, defendants AKJ and Robinson controlled, managed and/or supervised the manner, method and/or procedure that this load was to be transported, including but not limited to, the time the shipment was to be picked up and delivered, the route to be taken, payment restrictions, and extensive driver instructions.

*Id.* at ¶ 11.

The Freight Agreement is also referenced in some detail in Count III (negligent hiring and supervision). There, the plaintiff asserts that "Robinson hired, by and through a contract carrier agreement and/or broker agreement and/or lease agreement, defendant AKJ to transport freight on its behalf." Complaint at ¶ 28. In

---

[1]  In fact, what occurred was that the copy of the Complaint in defense counsel's file had the Agreement attached to it. Counsel has recently ascertained that the Agreement was attached by Robinson when the Complaint was forwarded by Robinson to undersigned counsel. As the Agreement is referenced repeatedly in the Complaint, however, defense counsel reasonably assumed it was attached by the plaintiff. In any event, Robinson happily attaches the Freight Agreement hereto as **Exhibit A.**

[2]  It is also curious that, though the plaintiff claims he has never seen the Freight Agreement, he nevertheless accurately describes it in his Complaint as an "*amended*" agreement. *See* Ex. A.

addition, according to the plaintiff, "AKJ was hired, and agreements were subsequently generated." *Id.* In fact, the plaintiff goes on to assert that he "is an implied third-party beneficiary" of these agreements. *Id.* at ¶ 34.

Detailed allegations like these go far beyond mere "passing references" in the Complaint. Because the Freight Agreement is referenced in the Complaint, it is deemed "a part of the complaint which is subject to the motion to dismiss under Rule 12(b)(6). *Belvac Production Machinery v. Standard Industrial Prods Co.*, 2007 WL 1189703 (W.D.Va. 2007) (citations omitted). Indeed, this principle has been noted with approval by the Fourth Circuit as recently as May 10 of this year. *See Trimble Navigation Ltd.*, *supra*, 484 F. 3d at 705:

> In reviewing the dismissal of a complaint under Rule 12(b)(6), we may properly take judicial notice of matters of public record. *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir.2004). We may consider documents attached to the complaint, *see* Fed.R.Civ.P. 10(c), **as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic**, *see Blankenship v. Manchin*, 471 F.3d 523, 526 n. 1 (4th Cir. 2006). Finally, for purposes of Rule 12(b)(6), "we are not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999).

(emphasis added) (internal citations omitted).

The plaintiff's somewhat desperate attempts to bar the Freight Agreement from being considered as part of this Rule 12(b)(6) motion is understandable, given that the plain and unambiguous terms of the Agreement flatly contradict the allegations in the Complaint, and establish that he has no basis for his claims against Robinson. However, the plaintiff's attempt to get around the Freight Agreement by simply contradicting it runs afoul of the general rule that where "the allegations of a complaint are contradicted by documents made a part thereof, the document controls

4

and the court need not accept as true the allegations of the complaint." *Sazerac Co., Inc. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994), citing *Feick v. Fleener*, 653 F.2d 69, 75, n. 4 (2d Cir.1981); *United States ex rel. Sommer v. Dixon*, 524 F. Supp. 83, 85 (N.D.N.Y.1981).

Moreover, as plaintiff notes in passing, he is supposedly engaged in a search for the truth. If this is so, then it is unjust to permit him to make allegations out of whole cloth regarding the purported terms of the Freight Agreement, and that his baseless allegations should be given at least equal weight to the actual terms of the actual document, which is attached to this Reply.

For these reasons, the Court may, and should, take notice of the Freight Agreement, and overrule this, and the plaintiff's other general objections to the defendants' motion.[3]

### B. Individual Counts of the Complaint

In addition, the plaintiff's arguments in his brief simply do not overcome the issues raised in Robinson's motion. Each claim is discussed in turn.

#### 1. Count I—Negligence

Plaintiff's negligence claim against Robinson is based on a *respondeat superior* theory. *See* Pl. Brief at 8. As discussed above, the plaintiff contends that

---

[3] Robinson feels it must respond—briefly—to the plaintiff's contention, in a footnote, that Robinson's brief was filed four days late, and thus should not be accepted by the Court absent a showing of good cause. *See* Pl. Brief at fn 8. Defense counsel was unaware that the Court's Scheduling Order had been issued until the day its brief was filed. This case has been pending since September 2006, but the plaintiff has not actively prosecuted the case until very recently, when his first discovery requests were served. It is difficult to see how four days—coming at the end of *six months* of inactivity—prejudiced the plaintiff. Indeed, the quality of the plaintiff's brief is clear evidence that no prejudice occurred. To the extent a request for leave of court is appropriate, Robinson hereby so moves.

under the terms of the Freight Agreement, Robinson was the *employer* of AKJ and its driver, Arciszewski, and exerted control over such specific things as "the manner, method and/or procedure that this load was to be transported, including but not limited to, the time the shipment was to be picked up and delivered, the route to be taken, payment restrictions, and extensive driver instructions." Compl. at ¶ 11.

In truth, however, the undisputable words of the Freight Agreement—which plaintiff cannot both rely upon and contradict---state the opposite. Nor can it be vicariously liable for the negligence of AKJ or Arciszewski. As noted in paragraph 6 of the Agreement, Robinson and AKJ are independent contractors. *See* Ex. A. Robinson did not have control over AKJ or Arciszewski's driving time, compensation, route, or any other aspect of Arciszewski's driving. *See id.* Moreover, Robinson could not fire, or even discipline, Arciszewski. *See id.* It is axiomatic under Virginia law that "one who employs an independent contractor is not liable for injuries to third parties resulting from the contractor's negligence." *MacCoy v. Colony House Builders, Inc.*, 239 Va. 64, 69 (1990); *see also Schramm v. Foster*, 341 F. Supp. 2d 536, 546 (D. Md. 2004)(analyzing wording in **a virtually identical Agreement** between Robinson and a carrier, and holding that the Freight Agreement did not give Robinson sufficient control over the driver to make Robinson vicariously liable for the driver's negligence.).[4]

The plaintiff argues that the descriptions of Robinson and its business in *Schramm* are of limited utility because that case was decided in 2004, and it does not necessarily accurately represent Robinson's current business model. However, the

---

[4] The relevant terms of the Freight Agreement are excerpted at length in Robinson's opening brief. For purposes of efficiency, they are not repeated here.

plaintiff has presented no factual basis to support this, and indeed, concedes in his brief that he "does not . . . know if, how, or to what extent C.H. Robinson's circumstances or practices may have changed over time." Pl. Brief at 6, fn. 7. If this is true, then it would seem that the plaintiff lacks a good faith basis for his claims against Robinson. In addition, not only does the Court in *Schramm* interpret the terms of the Freight Agreement as creating only an independent contractor relationship between Robinson and the carrier, but other courts have reached the same result even more recently.

For example, on February 22, 2007, the State Court of Dekalb County, Georgia, interpreting the same Freight Agreement provisions and language that were at issue in both *Schramm* and in the case at bar, found that the Agreement created only an independent contractor relationship between Robinson and the carrier, and granted summary judgment to Robinson. *See Lattimore v. Carter, et al.*, Civil Action No. 04-A-27871-2, a copy of which is attached hereto as **Exhibit B.** The Court noted that, like the Freight Agreement here, the Agreement at issue "expressly stated that WCT [the carrier] was an independent contractor and that none of WCT's employees was an employee of CHR [Robinson]." *Id.* at 2. Also, citing Georgia law principles nearly identical to the law of the Commonwealth, the Court rejected the plaintiff's claims that Robinson was vicariously liable for the negligence of WCT—whether based on employment, contract, or actual or apparent agency. *Id.* at 5-7.

Plaintiff's negligence claim against Robinson should be dismissed.

        2.     Count III—Negligent Hiring and Supervision

This count fails for the same reasons as Count I. The Freight Agreement expressly provides that AKJ is *not* the employee of Robinson, and at least *two* other Courts have reached the same conclusion. Thus, Robinson cannot, as a matter of law, be liable for the negligent hiring of AKJ. The claim also fails for these additional reasons.

First, in his brief, the plaintiff claims that he has asserted a cause of action for "negligent hiring and retention." Pl. Brief at 15. However, Count III of the Complaint alleges "negligent hiring and *supervision*." Compl. at 9 (emphasis added). No claim is made in the Complaint for negligent *retention*. *Id.* As noted by Robinson in its opening brief, Virginia does not recognize a cause of action for negligent supervision. *See, e.g., The Chesapeake and Potomac Telephone Company of Virginia, et al. v. H. Lee Dowdy, Jr.*, 235 Va. 55, 365 S.E.2d 751 (1988); *see also Huffman, supra,* 2006 WL 1288317 at *4. It appears that plaintiff is now trying to shift ground by changing his claim in his brief, perhaps hoping no one would notice.

In addition, plaintiff's reliance on *Philip Morris, Inc. v. Emerson*, 235 Va. 380 (1988), for the proposition that a company that contracts with an incompetent independent contractor *can* be liable for negligently selecting the contractor, is misplaced. *Philip Morris* involved a contractor who was retained by Philip Morris to test, identify, and ultimately remove ultra-hazardous chemicals contained in some tanks on Philip Morris' property. The contractor failed to take proper precautions, and was overcome by the gas (pentaborane—a corrosive substance *thousands* of times more toxic than cyanide). The contractor died from his brief exposure, and a number of other persons in the area were injured. On appeal, the Virginia Supreme Court

8

held that Philip Morris *could* be held liable for the negligence of its independent contractor, because of the following exceptional circumstances: (a) the substance being handled, pentaborane, is "ultra-hazardous" and thus requires significant care beyond normal business practices; and (b) the contractor was supposed to be operating under the close, personal supervision of a Philip Morris representative, whom the parties agreed had the express authority to control and stop the contractor's work at any time, but who was not present when the release occurred. *See* 235 Va. at 390-93.

In the case at bar, however, no such ultra-hazardous materials or activities were involved. The plaintiff alleges that defendant Arciszewski's truck contained cable reels—hardly the type of uber-toxic chemicals that would trigger the *Philip Morris* analysis. Also, as noted previously, unlike the contractor in *Philip Morris*, AKJ was not under the direct supervision and optional control of Robinson.

For these reasons, plaintiff's negligent hiring and supervision claim should be dismissed.

### 3. Count V—Negligent Entrustment

The plaintiff apparently misunderstands Robinson's arguments against this claim, and thus incorrectly asserts that Robinson contends that Virginia does not recognize a cause of action for negligent entrustment of an "activity" as opposed to an object. While Robinson does not believe that a single Circuit Court opinion from 1997 that merely references § 308 of the Restatement of Torts with approval is the same thing as the General Assembly or Supreme Court of Virginia "recognizing a cause of action" for something, that is not the thrust of Robinson's argument here.

9

Rather, the plaintiff's negligent entrustment claim fails for the following reasons: First, as has been discussed at length above, Robinson cannot be liable as the employer, or as some sort of agent or principal of AKJ. *See* Exs. A and B. Second, the cases cited by the plaintiff in this section of his brief—none of which are from Virginia—all involve negligent entrustment of an "activity" where the activity at issue was extremely hazardous, or it posed a greater risk to the public than normal everyday activities such as shipping non-hazardous cargo over the roads in a truck.

Third, as a matter of policy, it would make no sense to impose liability under a negligent entrustment theory in situations like this one. The plaintiff does not allege here—nor can he—that brokers like Robinson are insurers. Under the plaintiff's theory, any time a tractor trailer is involved in a wreck, the people who actually shipped the goods that are on the truck could be held personally liable. This would create an obscene flood of litigation, and it is difficult to imagine that such a result would be the desire of the General Assembly or the Virginia Supreme Court. In any event, as the plaintiff concedes, neither the legislature nor the Supreme Court has expressly addressed this question; accordingly, this Court should abstain from attempting to second-guess them, in the absence of clear guidance.

4. <u>Counts VI and VII—Violations of the Motor Carrier Act and Regulations</u>.

Here, the plaintiff concedes that the only reported case in the Fourth Circuit addressing the applicability of the Motor Carrier Act and Regulations to personal injury suits is *Schramm*. *See* Pl. Brief at 20-21. As discussed by Robinson in its opening brief, the Court in *Schramm* held that 49 U.S.C.A. § 14704(a)(2) does *not* create a private right of action for personal injuries against trucking companies and

brokers. 341 F. Supp.2d at 548 (holding that "I join with those courts which have found that section 14704(a)(2) does not create a private right of action for personal injuries."); citing *Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.*, 192 F.3d 778 (8th Cir. 1999); *Stewart v. Mitchell Transport*, 241 F. Supp. 2d 1216 (D. Kan. 2002); *Renteria v. K&R Transportation Inc.*, 1999 WL 33268638 (C.D.Cal. 1999). Instead, recognizing the massive negative impact such a private right of action would have on the entire industry, Judge Motz held that § 14704(a)(2) was intended by Congress to apply only to commercial disputes among shippers and brokers. *Id*.

Moreover, as the Court noted in *Schramm*, Robinson cannot be liable for the actions of AKJ and/or Arciszewski, because—as demonstrated repeatedly above—Robinson was not their employer. *Id*. at 547-48 (noting that, pursuant to § 390.3 of the FMCSRs, which implement the MCA, § 14704 of the MCA applies only to **employers and their employees**).

Indeed, such an interpretation is only logical. There would be no reason for Congress to create a federal statutory right of action for personal injuries, when such a cause of action already exists in all fifty states. Such a federal statute would be redundant and of no practical value, and thus, the Court should not give credence to such an interpretation.

In addition, plaintiff also has not shown what Robinson allegedly did to "aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter." § 390.13 of the FMCSRs, 49 C.F.R. § 390.13; *see also* Complaint at ¶¶ 52-53. The plaintiff claims—without any factual support—that Arciszewski was driving in an undisclosed "impaired and/or fatigued condition," and that Robinson "allowed"

her to do so. Complaint. at ¶ 53. This claim cannot stand for several reasons. First, pursuant to the terms of the Freight Agreement, Robinson did not have the authority to control Arciszewski's driving hours, or monitor or control her physical or mental state. *See* Ex. A, at ¶¶ 4, 6. As noted previously, Robinson was *not* Arciszewski's employer. Thus, Robinson had no duty to *prevent* Arciszewski from violating the FMCSRs—that duty rested solely with AKJ, her employer. Accordingly, Robinson cannot be credibly accused of "allowing" Arciszewski to do anything.

Second, this precise question arose in *Schramm*, and was resolved in Robinson's favor by the Court. There, the plaintiffs attempted to assert, under § 390.13, that Robinson had aided and abetted violations by Groff Brothers (the trucking firm in that case), and Foster (Groff's driver). *See* 341 F. Supp. 2d at 550. The Court rejected this position, however, noting that aiding and abetting required more than showing that Robinson "merely brought about the arrangement that made the . . . acts of the principals possible." *Id.* The Court held that the plaintiffs

> have failed to proffer sufficient evidence establishing that Robinson intended to assist Groff Brothers or Foster in violating the hours of service regulations. While Robinson may have brought about the arrangement that made it possible for Groff Brothers and Foster to violate the regulations, this alone is insufficient to show that Robinson knew that Groff Brothers and Foster would violate the regulations.

*Id.* at 551.

Similarly, in the case at bar, the plaintiff has not alleged—nor can he—that Robinson was aware AKJ and Arciszewski were planning to violate the law, and that Robinson intended to assist them in doing so. Indeed, under the terms of the Motor Freight Agreement, Robinson lacked the necessary measure of control to do so.

Accordingly, Counts VI and VII should be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Robinson Defendants ask that their motion be granted, that the case against them be dismissed, and that they be awarded costs, attorney's fees and such other relief as the Court may deem appropriate.

Respectfully submitted,

C.H. ROBINSON WORLDWIDE, INC.,
C.H. ROBINSON COMPANY,
C.H. ROBINSON COMPANY INC.,
C.H. ROBINSON COMPANY LP,
C.H. ROBINSON INTERNATIONAL, INC.,
C.H. ROBINSON OPERATING COMPANY LP,
and
C.H. ROBINSON TRANSPORTATION COMPANY INC.,


By: **/s:// Paul C. Kuhnel**_____

Paul C. Kuhnel (VSB #28151)
Robert Michael Doherty (VSB #43997)
WootenHart PLC
707 S. Jefferson Street, Suite 300
P. O. Box 12247
Roanoke, VA  24024-2247
(540)343-2451
(540)345-6417 (facsimile)

**Counsel for the Robinson Defendants**

s:\robinson_ch\19765\robinson--reply brief.doc6/14/2007rmd