# Exhibit A

EB
77223F
CHR ID# ~~445390~~
ASH ID#

# CONTRACT CARRIER AGREEMENT

THIS AGREEMENT (hereinafter referred to as "the Contract") is made and entered into this day of, __4/19/01__ at Eden Prairie, Minnesota, by and between the following parties (hereinafter referred to as "the Parties"):

C. H. Robinson Worldwide, Inc., a corporation with its principal place of business at 8100 Mitchell Road, Eden Prairie, Minnesota, 55344, for itself and on behalf of its affiliated companies and divisions identified on Appendix A hereto (as may be amended from time to time), which are also parties to this Contract, collectively hereinafter referred to as "Robinson".

and __Unlimited Xpress__ with its principal place of business at __P.O. Box 890094 Morrow, GA 30287__ hereinafter referred to as "Carrier".

## WITNESSETH

WHEREAS, Carrier is a motor contract carrier of property, authorized by the Federal Highway Administration (FHWA) in Docket No. MC-__404254__ and/or Intrastate Permit No __939291__, all other applicable State or Federal governmental agencies which may be required to conduct operations and provide service in intrastate, interstate or foreign commerce in the transportation of General Commodities (except Household Goods), under continuing contract(s) with Robinson; and

WHEREAS, Robinson is a motor carrier property broker duly licensed by the Federal Highway Administration (FHWA) to arrange the transportation of property by authorized motor carriers, which desires from time to time to use the services of Carrier to transport freight for or on behalf of its customers, the transportation of which Robinson controls; and

WHEREAS, the Parties do hereby enter into this Contract pursuant to 49 U.S.C. 14101 (b) for the purposes of providing and receiving specified services under specified rates and conditions, and under which the parties intend to waive certain rights and remedies permitted to be waived under the Interstate Commerce Act, to the extent that any provisions therein are inconsistent with any of the provisions of this Contract.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual promises contained herein, Carrier and Robinson agree as follows:

## 1. SERIES OF SHIPMENTS AND ROBINSON'S DISTINCT NEEDS

Robinson hereby commits to tender, and Carrier hereby commits to transport, a series of at least three (3) shipments during the term of this Contract. Carrier agrees to provide service designed to meet the unique, distinct and continuing transportation service needs of Robinson and its Customers, which include but are not limited to the following: providing flexible contract freight rates which may be amended through a simplified

CHRW Carrier Agreement Ver No. 06.01.00          3          Carrier Representative Initial:

EB

notice provision; providing Certificates of Insurance to Robinson; Carrier's agreement to issue invoices to and to accept payment from Robinson, rather than from the shipper or receiver; participating with Robinson to use various means of communications and transmitting information to permit the tracking and tracing of shipments accepted by Carrier; and the occasional granting of other business considerations.

## 2. CONTRACT RATES

Compensation shall be paid to Carrier solely and exclusively by Robinson on all shipments tendered to Carrier. Carrier's compensation shall be as follows:

a. Carrier's compensation for any specific shipment or shipments may be agreed to orally between the Parties, and the compensation shall subsequently be confirmed by Robinson to Carrier in writing or by electronic means, stating the new contract rate ("the Confirmation"). Unless Carrier objects to the terms and rates of the Confirmation within twenty-four (24) hours after receipt, Carrier shall be presumed to have agreed that the terms are fully and correctly stated. All such Confirmations shall become incorporated as addenda to this Contract, and the Parties agree to retain all such addenda for the period required by applicable law.

b. The Parties may agree in a separate agreement (such as Robinson's "Quick Pay Program Agreement," etc.) to a discount of the negotiated confirmed rate, which separate agreement may be attached to and become a part of this Agreement as Appendix C. If the Parties agree to an Appendix C, the discounted payment shall become the negotiated rate without specific separate notation on any Confirmation.

c. If the Parties fail to agree to a negotiated rate as described above, the Contract rate shall be the amounts set forth in Appendix B attached hereto and made a part hereof.

Carrier agrees that any interstate or intrastate tariffs, released value clauses or rates, or other liability limitations which now or in the future may exist in Carrier's schedules or tariffs shall not apply to transportation provided by Carrier to Robinson during the term of this Contract, unless they are expressly stated in this Contract or in a Confirmation addendum.

## 3. RESPONSIBILITY FOR PAYMENT OF RATES

Robinson shall be solely and exclusively liable for and responsible to Carrier for its freight charges arising out of this Contract, and Robinson's Customers' sole obligation with regard to the payment of transportation charges is to make payment to Robinson. Within twenty (20) days after Robinson's receipt of a clear delivery receipt (or according to the terms of a separate agreement identified in Appendix C, if any), Robinson agrees to pay to Carrier the contract rates and charges even if the Customer does not or cannot pay Robinson. In exchange for this guarantee of payment, Carrier: (i) appoints and designates Robinson as its agent for the purpose of billing and collection of freight charges from the shippers whose freight Robinson tenders to Carrier or arranges for Carrier to transport; (ii) will not communicate in any manner, directly or indirectly, with Robinson's customers, consignors, consignees or any party other than Robinson concerning the collection of any charges relating to transportation services accruing in connection with or as a consequence of this Contract and (iii) waives any right it may

CHRW Carrier Agreement Ver. No. 06.01.00                    4                    Carrier Representative Initial:

otherwise have to proceed or commence any action against any Customer for the collection of any freight bills arising out of transportation services performed by Carrier under this Contract.

Compensation paid to Carrier under this Contract may be withheld in whole or in part by Robinson or any of its subsidiaries or related companies to satisfy claims or shortages arising out of this or other Contracts, or to satisfy advances made to, or on behalf of, Carrier, or to satisfy any debt owed by Carrier to Robinson or any of its subsidiaries or related companies. This offset may occur, at Robinson's discretion, only if the claim or debt has not been acknowledged in writing by Carrier within thirty (30) days of presentation or the claim has not either been paid or denied for a valid cause or reason within ninety (90) days of presentation.

Any claim for overpayment or underpayment of transportation charges in connection with shipments transported under this Contract shall be presented by the party asserting the claim to the other party within sixty (60) days of discovery of the claim by that party, but in no event will any such claim(s) be asserted more than one hundred eighty (180) days after the delivery of the shipment or shipments giving rise to any such claim.

## 4. CARRIER'S SERVICE WARRANTIES

Carrier warrants that (i) (unless Carrier is an "exempt carrier" solely transporting exempt commodities) it is a motor carrier of property authorized by the Federal Highway Administration (FHWA), that all transportation performed by it for or on behalf of Robinson and/or Robinson's customers shall be as a contract carrier pursuant to the terms and conditions of this Contract; (ii) all freight tendered to it by Robinson pursuant to this Contract shall only be transported by Carrier on, in or with equipment owned by Carrier or leased to Carrier under a lease having a duration of more than thirty (30) days, operating under Carrier's operating authorities; (iii) except to the extent that Carrier uses the services of "owner-operators" in the course of conducting its regular operations, Carrier shall not, in any manner, sub-contract, broker or tender to any third party for transportation any freight tendered to Carrier by Robinson for transportation pursuant to this Contract; (vi) while Carrier may also hold authority from the Federal Highway Administration (FHWA) to operate as a motor common carrier, no transportation will be performed by it for or on behalf of Robinson and/or Robinson's customers as a motor common carrier; (v) Carrier's rates and tariffs as a motor common carrier shall not, except as may be specifically provided in this Contract, be applicable to any transportation which it shall perform for and on behalf of Robinson; and (vi) Carrier will at all times have a U.S. DOT safety rating that is satisfactory, and that at no time will it allow its safety rating to become unsatisfactory.

In providing services, Carrier represents and warrants that the driver(s) utilized are competent and properly licensed, and are fully informed of their responsibilities for the protection and care of the involved commodities. Carrier agrees that neither Robinson nor its Customer is responsible for paying the involved driver's salary, wages, compensation or charges, nor are either responsible for Workman's Compensation coverage or any taxes based on salary, wages or compensation. Carrier agrees to provide and maintain the necessary equipment and to provide all fuel and pay all expenses necessary to operate the equipment, and Carrier agrees that in no instance shall Robinson or its Customer be responsible for any of the expenses. Carrier represents that the transportation will be performed without violating local, state or

Case 7:06-cv-00547-GEC-mfu   Document 29-1   Filed 06/14/07   Page 4 of 13   Pageid#: 116

*E B*

federal laws or regulations, and that Carrier has complied and will comply with all laws and regulations of local, state and federal authorities and regulatory bodies having jurisdiction over the operation of its vehicles. Carrier further warrants that all motor vehicle equipment provided by Carrier for the transportation of food grade products will comply with the requirements of The Sanitary Food Transportation Act, and that none of the equipment provided for the transportation of food or food grade products has been or will be used for the transportation of any waste of any kind, garbage, hazardous materials or any other commodity that might adulterate or contaminate food, food products or cosmetics.

At the time each shipment is received by Carrier from Robinson's customer(s), Carrier will request and obtain instructions concerning all handling, securing and product or freight protection requirements of each shipment, including specifications noted on the bill of lading or otherwise. Carrier is responsible for insuring that all freight is properly blocked and braced for transportation unless tendered to Carrier in a pre-loaded, sealed trailer, and Carrier is instructed not to break the seal(s) on the trailer, which fact must be noted on the bill of lading. Carrier is responsible to determine that the goods being shipped are in apparent good order and condition, to the extent that such is ascertainable through a visual examination of the exterior of the goods shipped, before loading and, in the event that they are not, Carrier will contact Robinson for further instructions.

## 5. ROBINSON'S COMPENSATION

In consideration for performing services and its guarantee of payment, Robinson is hereby authorized and empowered to keep any amounts over the contract rates stated in this Contract or Confirmations as its broker's commission, and Robinson shall not be required to disclose the amount of its commission.

## 6. INDEPENDENT CONTRACTOR

The Parties understand and agree that the relationship of Carrier to Robinson hereunder is solely that of an independent contractor, and that Carrier shall and does employ, retain or lease on its own behalf all persons operating motor vehicles transporting commodities under this Contract, and such persons are not employees or agents of Robinson or its Customers. It is further understood and agreed that all drivers of motor vehicles and persons employed in connection with the transportation of commodities under this Contract are subject to the direction, control and supervision of Carrier, and not of Robinson or its Customers. Carrier represents and agrees that such employees are and will at all times be covered by adequate workmen's compensation insurance as provided by law.

## 7. CARRIER'S CARGO LIABILITY

Carrier agrees to transport the commodities to the specified destination with reasonable dispatch (defined as the length of time that it would customarily and ordinarily take to transport a like shipment), unless a specified delivery date and/or time is communicated to Carrier prior to the pick-up of any individual shipment. Carrier hereby assumes all liability for cargo loss and damage while such commodities are in Carrier's custody or control, except for loss, damage, injury or delay to the commodities caused by act of God, public enemy, authority of law, act or default of the shipper or owner or for natural

CHRW Carrier Agreement Ver No. 95.01.00          6          Carrier Representative Initial

shrinkage; and Carrier has the burden of proving that cargo loss, damage, injury or delay was caused by one of the above exceptions. No released value conditions, whether stated in the rates or otherwise, shall apply against Robinson or its customers. In the event branded or labeled goods are damaged, Robinson's customers may determine, within its sole discretion, and subject to a reasonableness standard, whether the goods may be salvaged, and if salvageable, the value of such salvage. Any salvage receipts shall be credited against Robinson's customer's claims against Carrier. Robinson's customers shall have the right to remove all identifying marks or labels when Carrier pays Robinson or Robinson's customers for the full value of the damaged goods and requests possession of the goods for salvage. Alternatively, in the discretion of Robinson or its customers, the goods shall be permanently marked as "damaged" or a similar notation, without debiting or otherwise charging Robinson's customers on account of such notations.

8. **INSURANCE**

Carrier agrees to procure and maintain for the benefit of Robinson and its Customers, at Carrier's own expense, and to provide written proof of, all insurance coverage required by the U.S. Department of Transportation or the States in which services are to be performed, including appropriate insurance forms (B.M.C. 91 or 91X with regard to liability insurance, and B.M.C. 34 with B.M.C. 32 endorsement with regard to cargo insurance), and adequate insurance covering cargo damage, public liability, bodily injury/property damage, and workmen's compensation, all in the form and amounts required by Robinson.

9. **CARRIER'S INDEMNIFICATION**

The Parties agree that Carrier shall be the party solely responsible for operating the equipment necessary to transport commodities under this Contract. Carrier therefore agrees to indemnify Robinson and its Customers and to hold them harmless for: loss or damage to Carrier's equipment, loss resulting from injury, including death, sustained by any employee of Carrier, or by any other person while acting in the capacity of a driver or helper in connection with the operation of the equipment; for any bodily injury, property damage or cargo loss, including the defense of any lawsuits therefrom, arising out of the operation, maintenance or use by Carrier of motor vehicle equipment to perform services under this Contract, for damage sustained by Robinson or its Customers arising out of the furnishing by Carrier of equipment which has been used to haul waste or is otherwise not suitable for hauling food products or which may affect the safety or cleanliness of food products hauled by Carrier; and for any loss or damages sustained by Robinson as a result of any other violation of this Contract by Carrier, including loss or damages due to the negligence, incompetence or dishonesty of Carrier or Carrier's agents or employees; provided, however, that this paragraph shall not apply to any penalty or liability arising solely as a consequence of any wrongful or negligent acts, omissions, or violations by the Robinson, its Customers, agents or employees.

10. **BILLS OF LADING AND DELIVERY RECEIPTS**

Carrier will issue and sign a standard, uniform straight bill of lading or other receipt acceptable to Robinson and Robinson's customers upon acceptance of goods for transportation. All terms or conditions written or printed on the receipts or bills of lading which have not been specifically agreed to by Robinson, either in this Contract or on any

Chrtw Contor Agreement Ver No. 05.01.00       7       Carrier Representative Initial

shrinkage; and Carrier has the burden of proving that cargo loss, damage, injury or delay was caused by one of the above exceptions. No released value conditions, whether stated in the rates or otherwise, shall apply against Robinson or its customers. In the event branded or labeled goods are damaged, Robinson's customers may determine, within its sole discretion, and subject to a reasonableness standard, whether the goods may be salvaged, and if salvageable, the value of such salvage. Any salvage receipts shall be credited against Robinson's customer's claims against Carrier. Robinson's customers shall have the right to remove all identifying marks or labels when Carrier pays Robinson or Robinson's customers for the full value of the damaged goods and requests possession of the goods for salvage. Alternatively, in the discretion of Robinson or its customers, the goods shall be permanently marked as "damaged" or a similar notation, without debiting or otherwise charging Robinson's customers on account of such notations.

8. <u>INSURANCE</u>

Carrier agrees to procure and maintain for the benefit of Robinson and its Customers, at Carrier's own expense, and to provide written proof of, all insurance coverage required by the U.S. Department of Transportation or the States in which services are to be performed, including appropriate insurance forms (B.M.C. 91 or 91X with regard to liability insurance, and B.M.C. 34 with B.M.C. 32 endorsement with regard to cargo insurance), and adequate insurance covering cargo damage, public liability, bodily injury/property damage, and workmen's compensation, all in the form and amounts required by Robinson.

9. <u>CARRIER'S INDEMNIFICATION</u>

The Parties agree that Carrier shall be the party solely responsible for operating the equipment necessary to transport commodities under this Contract. Carrier therefore agrees to indemnify Robinson and its Customers and to hold them harmless for: loss or damage to Carrier's equipment, loss resulting from injury, including death, sustained by any employee of Carrier, or by any other person while acting in the capacity of a driver or helper in connection with the operation of the equipment; for any bodily injury, property damage or cargo loss, including the defense of any lawsuits therefrom, arising out of the operation, maintenance or use by Carrier of motor vehicle equipment to perform services under this Contract, for damage sustained by Robinson or its Customers arising out of the furnishing by Carrier of equipment which has been used to haul waste or is otherwise not suitable for hauling food products or which may affect the safety or cleanliness of food products hauled by Carrier; and for any loss or damages sustained by Robinson as a result of any other violation of this Contract by Carrier, including loss or damages due to the negligence, incompetence or dishonesty of Carrier or Carrier's agents or employees; provided, however, that this paragraph shall not apply to any penalty or liability arising solely as a consequence of any wrongful or negligent acts, omissions, or violations by the Robinson, its Customers, agents or employees.

10. <u>BILLS OF LADING AND DELIVERY RECEIPTS</u>

Carrier will issue and sign a standard, uniform straight bill of lading or other receipt acceptable to Robinson and Robinson's customers upon acceptance of goods for transportation. All terms or conditions written or printed on the receipts or bills of lading which have not been specifically agreed to by Robinson, either in this Contract or on any

CHRW Carrier Agreement Ver No. 05.01.00        7        Carrier Representative Initial

Case 7:06-cv-00547-GEC-mfu Document 29-1 Filed 06/14/07 Page 7 of 13 Pageid#: 119

addenda hereto, shall have no binding effect against Robinson. The receipt or bill of lading issued or executed by Carrier shall be prima-facie evidence of receipt of goods in good order and condition by Carrier unless otherwise noted on the face of said document. Carrier shall submit to Robinson the original signed bill of lading evidencing good delivery of the goods, unless otherwise specifically agreed by Robinson; and in that case, Carrier shall maintain custody of the original signed bills of lading and will provide them to Robinson upon request. If Carrier fails to maintain and provide the bills of lading as agreed, Carrier assumes all risk of loss resulting from the failure to prove good delivery. In the event that Carrier's personnel are not allowed or afforded an opportunity to view and/or examine the goods in order to ascertain the condition of those goods prior to loading on to Carrier's vehicle, Carrier's personnel shall immediately notify Robinson and await instructions prior to transporting the shipment, and shall note on the bill of lading that they were not allowed or afforded an opportunity to view and/or examine the goods shipped.

## 11. FACTORING

Carrier shall provide Robinson written notice of any assignment, factoring, or other transfer of its right to receive payments arising under this Contract thirty (30) days prior to such assignment, factoring, or other transfer taking legal effect. Such written notice shall include the name and address of assignee/transferee, date, date assignment is to begin, and terms of the assignment, and shall be considered delivered upon receipt of such written notice by Robinson. Carrier shall be allowed to have only one assignment, factoring or transfer legally effective at any one point in time, and no multiple assignments, factoring or transfers by the Carrier shall be permitted. Carrier shall indemnify Robinson against and hold Robinson harmless from any and all lawsuits, claims, actions, damages (including reasonable attorneys fees, obligations, liabilities and liens) arising or imposed in connection with the assignment or transfer of any account or right arising thereunder where the Carrier has not complied with the notification assignment requirements of this section. Carrier also releases and waives any right, claim or action against Robinson for amount due and owing under this Contract where Carrier has not complied with the notice requirements of this section

## 12. CONTRACT TERM AND TERMINATION

The initial term of this Contract shall be a period of one (1) year from the date hereof, and shall continue in full force and effect from year-to-year unless it is terminated as provided for herein. Notwithstanding the above, either Party shall have the right to cancel or terminate this contract upon thirty (30) days' prior written notice to the other party.

## 13. COMMUNICATIONS AND CONFIDENTIALITY

Carrier and Robinson intend and hereby agree to use the entire variety of communications and information means available, whether available presently or in the future, to communicate agreements, modifications, rates, instructions, equipment and load location, and any other information helpful or necessary to carry out the intentions of the Parties herein. Such communications and information transmission presently includes telephone, telecopier, software, e-mail, internet, electronic funds transfer, satellite, and information received from third parties (including affiliates of Robinson,

CHFW Carrier Agreement Ver. No. 06.01.00        8        Carrier Representative Initial

outside billing companies and freight payment entities), but this is not intended to be limiting the manner of future communications as they develop.

All information furnished to one Party to the other in the course of performing work or rendering services under this Contract shall be deemed to be the confidential and proprietary information of the disclosing Party and/or its customers. The Party receiving information agrees not to disclose any such information to any third party, nor to use such information other than in performance of work and/or rendering services under this Contract. Carrier agrees not to use Robinson or Robinson's customers' names for promotional or other purposes without prior written consent.

### 14. MISCELLANEOUS

The Parties hereby further agree as follows:

This Contract shall not be rendered unenforceable by virtue of any failure or alleged failure to comply with the provisions of any statute or regulation applicable to transportation contracts, and the parties expressly waive any right that they might otherwise have to challenge the validity of this contract on such grounds, which waiver shall be binding on their respective assigns, heirs, or successors in interest.

Neither party shall assign this Contract or any rights hereunder without the prior written consent of the other party. This Contract shall be binding upon all permitted assigns, heirs and successors of the respective Parties hereto.

All notices required to be given under any of the provisions of this Contract shall be properly given if made in writing and deposited in a United States Post Office by registered mail, postage prepaid, and addressed to the respective parties as set forth above.

Carrier shall have no lien, and hereby expressly waives its right to any lien on any cargo, freight or other property of Robinson or any of its customers.

This Contract constitutes the entire agreement and understanding between the parties and supersedes any and all prior agreements and understanding, either oral or written. Robinson may, from time to time, modify or amend the terms or conditions of this Contract, or the specific Robinson companies which are parties to this Contract and identified in Appendix A, by means of a written amendment which it shall promptly mail or otherwise transmit to Carrier. Said modification or amendment shall become effective three (3) days after transmission by Robinson. Carrier's continued acceptance of freight tendered by Robinson or Robinson's customers thereafter shall constitute acceptance by Carrier of such modification or amendment of this Contract. In the event that any portion of this Contract is declared void or unenforceable, then such provision shall be deemed severed from this Contract which shall otherwise remain in full force and effect.

This Contract may be executed in one or more counterparts and each of such counterparts shall, for all purposes, be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

In the event either party incurs attorney's fees, costs or expenses in enforcing any of the provisions of this Contract, or in exercising any right or remedy arising out of any breach

CHRW Carrier Agreement Ver No 06.01.00         9         Carrier Representative Initial:

CHR ID# 772237
A&H ID# ~~~~~~~

## APPENDIX C

### QUICK PAY DISCOUNT AGREEMENT

By executing this Appendix C, Carrier is requesting that Robinson make early payment of freight charges in exchange for a discount of the agreed rates. Upon final completion of the load, and after providing the necessary documents to confirm completion of Carrier's responsibilities without loss or damage, Robinson agrees to pay to Carrier the amount of the freight bill as confirmed by Robinson, less a discount of 1.5% of the gross freight bill amount. Upon receiving the necessary documents, Robinson will make payment on the same day or the next business day, in a manner designated by Carrier, which may consist of depositing the amount via electronic funds transfer ("EFT") into Carrier's bank account, or depositing the funds into Carrier's T-Chek Account, or issuing a T-Chek Authorization number to the carrier for the same, or making payment to Carrier's factoring company assignee (if any).

Carrier: Unlimited Xpress

By: E. son Bolar
(Must be signed by an officer)

By: Elson Bolar
(Please Print)

TITLE: President

DATE: 6/13/01

10

Carrier Representative Initial:

JUN 19 2001 15:08
PAGE.10    7782106771

312 660 4439

EB

Bolar Taucking Express
CHR ID# 415300
ASH ID #
NOW UNlimited Xpress

of this Contract by the other party, the prevailing party shall be entitled to an award of attorney's fees, costs and expenses against the defaulting party.

The Parties agree that this Contract shall be construed under the laws of the State of Minnesota, and agree that all disputes arising under this Contract may be submitted to the jurisdiction of the State or Federal Courts within the States or Districts of Minnesota or Illinois, or for administrative proceedings to the appropriate Federal or State government agency having jurisdiction over such matters.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the date and year first written above.

Unlimited Xpress
Carrier

By: E__ Bolar
(Must be signed by an officer)

C.H. Robinson Worldwide, Inc. and its Affiliated Broker Subsidiaries

By: _____
(C.H. Robinson Worldwide, Inc. officer)

By: Elson Bolar
(Please Print)

By: Barry Burton
(Please Print)

TITLE President

TITLE Sr. VP

DATE: 4/17/01

DATE: 4-23-01

CHRW Carrier Agreement Ver. No. 05.01.00          10          Carrier Representative initial

CHR ID# 41530
ABH ID #_____

## APPENDIX A

### C. H. ROBINSON WORLDWIDE
### AFFILIATED PROPERTY BROKER PARTIES

This Contract is between Carrier identified in the Contract and the following C.H. Robinson affiliated companies, each of which is a licensed Motor Property Broker:

C.H. Robinson Company, Inc.

C.H. Robinson Company LP

C.H. Robinson Company (under a license issued in the name of Robinson Transportation Services)

C.H. Robinson Company (Canada) LTD, La Compagnie C.H. Robinson Ltee.

Wagonmaster Transportation Co.

This Appendix A supercedes all prior versions, if any. Carrier agrees that this Appendix A may be further amended to add or delete affiliated brokers which will be Parties to this Agreement upon written notice from Robinson to Carrier which shall update, amend or supercede this Appendix A.

Date: 4/17/01

CHRW Carrier Agreement Ver. No. 05.01.00    11    Carrier Representative Initial:

CHR ID# 41530 ⓟ
ASH ID# _____

## APPENDIX B

### CONTRACT CARRIER AGREEMENT ADDENDUM

The rates and charges to be assessed for transportation performed pursuant to this Contract Carrier Agreement unless changed for a specific shipment(s) as provided in paragraph two (2) of the Contract Carrier Agreement shall be as follows:

The rates and charges listed below shall be applicable on interstate and foreign shipments on freight of all kinds except household goods between points in the United States (except Alaska & Hawaii).

1) The rate shall be computed on the basis of $.90 per load mile

2) The rate shall include a single pickup and single delivery

3) Additional pickups and/or deliveries shall be charged at $25 per each additional stop.

**NOTE, the above charges shall only apply in the event that A Rate Confirmation Sheet has not been executed by the parties with respect to a specific shipment.**