EXHIBIT
C

**VOCATIONAL REHABILITATION ASSOCIATES, INC.**
P.O. BOX 21088 • ROANOKE, VIRGINIA 24018 • (703) 929-4352

August 28, 2006

Timothy E. Kirtner, Esquire
Gilmer, Sadler, Ingram, Sutherland & Hutton
P.O. Box 878
Pulaski, VA 24301

      RE: Winford Dallas Jones

Dear Mr. Kirtner:

As you requested, I have interviewed Mr. Jones and I have reviewed medical records pertaining to the injuries he sustained in a motor vehicle collision which occurred on September 12, 2004. I have also reviewed documents pertaining to Mr. Jones' earnings. Please regard this correspondence as a preliminary report of my opinions as to the vocational implications of Mr. Jones' injuries.

Mr. Jones was interviewed on August 4, 2006. It was noted that he is 38 years old and that he resides in Princeton, WV. Mr. Jones' educational background consists of graduation from Iaeger High School in 1986. His work history since 1999 consists exclusively of employment as a Tractor-Trailer Truck Driver. He was previously employed as a Tire Mechanic and as a Route Sales Driver. The only other work experience identified by Mr. Jones was approximately six months of employment as a Mechanic's Helper. At the time of the motor vehicle collision on September 12, 2004 Mr. Jones was employed by Purdy Brothers Trucking Co. His earnings in this employment have been reported in the amount of $1,209 per week or $62,875 per year.

Following the referenced motor vehicle collision, Mr. Jones was treated at Carilion Health System where he was diagnosed with a "left femoral neck fracture, left tib-fib fracture, and a right radial and ulnar fracture". Mr. Jones' medical treatment at the Carilion facility included surgical procedures that were performed by T.E. Shuler, M.D. Mr. Jones was subsequently transferred to a Healthsouth facility in Princeton, WV where he was treated by a pain management specialist, C. Shelton, M.D. Mr. Jones has also been treated by a Licensed Psychologist, C. E. Shamro, M.A., M.F., C.B.T.

A review of Dr. Shuler's medical records reveals that Mr. Jones has been "encouraged to elevate his knee as much as possible when he is not fully ambulating". Otherwise, Dr. Shuler's office notes reflect some reduction in the amount of pain that Mr. Jones has

reported in his left leg although it is noted in the most recent of these office notes (July 10, 2006) that Mr. Jones was complaining of "constant... throbbing, dull" pain which is exacerbated by walking and alleviated by rest. Also in his office note of July 10, 2006 Dr. Shuler described the continued presence of a "fibrous union of [Mr. Jones'] left femur" and Dr. Shuler opined that Mr. Jones "is at maximum medical improvement with regard to his fibrous union". Dr. Shuler further noted that Mr. Jones "may suffer complication of his union becoming unstable under increased activity load". A review of Dr. Shelton's office notes reveal pain assessment comments that resemble those made by Dr. Shuler. Specifically, Dr. Shelton's office notes reflect Mr. Jones' statements that standing, walking or sitting for "too long" increase the amount of pain he experiences in his left lower extremity and that elevating the extremity reduces his experience of pain.

In the interview with Mr. Jones he stated that his emotional response to the injuries he sustained on September 12, 2004 has included the onset of depression and anxiety as well as a lowered threshold for frustration. In the psychological evaluation that was prepared by Mr. Shamro on August 22, 2005 it was noted that Mr. Jones was complaining of depression and anxiety as well as sleep disruption when he "awakens with panic and flashbacks about the accident...". Mr. Shamro diagnosed Mr. Jones with Post Traumatic Stress Disorder and Major Depressive Disorder. At that time, Mr. Jones' Global Assessment of Functioning was reported to be 58. More recently, in Mr. Shamro's July 26, 2006 progress note he reported that Mr. Jones' "mood has been rough" and that he had experienced an exacerbation of pain associated with what was described as a minimal physical activity.

In the August 04, 2006 meeting with Mr. Jones he was observed to walk with a left sided limp and to use a cane when standing or walking. It was further noted that Mr. Jones alternated between sitting and standing postures during the interview. Mr. Jones stated that he continues to experience "constant" pain in his left hip, left knee and in his lower back. Mr. Jones also stated that he experiences "frequent" pain in left leg and that he experiences "occasional" pain in his right (dominant) arm.

Mr. Jones' description of his physical capacities was most notable for his limited ability to maintain any posture (either sitting, standing or walking) for more than a few minutes at a time. More vocationally significant, however, was Mr. Jones' statement that it is necessary for him to either sit in a reclining position or to lie down on multiple occasions during each day. Specifically, Mr. Jones stated that it is necessary for him to recline or rest for up to two hours at a time in order to reduce the chronic pain he continues to experience in his back and left leg. Mr. Jones also stated that it is necessary for him to

elevate his left leg at intervals throughout the day in order to manage the chronic swelling he continues to experience in this lower extremity. Otherwise, Mr. Jones reported that his ability to maintain his attention and concentration is reduced by either the pain he continues to experience or by use of the narcotic medication which he takes on a daily basis.

Mr. Jones has stated that his pre-injury vocational objective was to continue his employment as a Tractor-Trailer Truck Driver until retirement at age 67. Based upon Mr. Jones' description of his physical capacities, in conjunction with the statements of his healthcare providers, it does not appear that it would be reasonable to expect Mr. Jones to return to this occupation. Similarly, again based upon the statements of Mr. Jones in conjunction with the statements of his healthcare providers, it does not appear reasonable to expect that Mr. Jones will be able to perform any other occupation to which he could transfer the vocational skills he has developed in the course of his work history. With regard to potential vocational retraining options, based upon Mr. Jones description of himself as a poor student who "hated school" and "barely got by" with grades of C and D, it is likely that there will be few, if any, options for retraining Mr. Jones for work in a sedentary occupation.

Even more significant than Mr. Jones' limitations associated with acquiring or utilizing vocational skills will be his future capacity to maintain some combination of work postures (sitting, standing or walking) for an 8-hour workday. As previously noted, Mr. Jones has stated it is necessary for him to recline or lie down for prolonged periods of time on multiple occasions during each day in order to reduce the pain in his back and left lower extremity. Additionally, as previously noted, Mr. Jones reports that he continues to find it necessary to elevate his left lower extremity which propels him into a reclining posture and makes it difficult, if not impossible, for him to perform even sedentary activities. Moreover, for as long as Mr. Jones is unable to maintain some combination of work postures for a half or whole workday he will be unable to engage in any competitive employment. Mr. Jones' future vocational options may also be limited by his reduced capacity to maintain attention and concentration due to either pain or the side effects of medications. His mental capacities may be further reduced by the disorders that have been diagnosed by Mr. Shamro.

In summary, it appears that Mr. Jones has sustained lost earnings from September 12, 2004 through the date of this report which may be calculated in the amount of $1,209 per week. Unless Mr. Jones' medical condition improves in the future, it appears that he will continue to incur future lost earnings or lost earning capacity which may also be calculated in the amount of $1,209 per week. Again, unless Mr. Jones' is able to return

to some substantial gainful work activity in the future, it appears that this loss will continue for the remainder of his anticipated worklife. This assessment should be regarded as a conservative estimate of Mr. Jones' economic loss as these calculations do not include loss of benefits or the loss of retirement proceeds. Additionally, these calculations have not been adjusted to reflect present economic value or to reflect future wage increases. Finally, please note that the opinions expressed in this report are subject to revision pending the receipt and review of additional medical or vocational records.

Respectfully,

John Newman, CRC, CDMS, CDA

Certified Rehabilitation Counselor
Certified Disability Management Specialist
Certified Disability Analyst
Vocational Expert-SSA OHA

JN/mtp