UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WINFORD DALLAS JONES, | ) |
| | ) |
|      Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| C.H. ROBINSON WORLDWIDE, INC., | ) |
| | ) |
|      Defendant/Third Party Plaintiff. | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 7:06-CV-00547 |
| AKJ ENTERPRISES, INC., d/b/a | ) |
|    Unlimited Express | ) |
| | ) |
| And | ) |
| | ) |
| ELSON BOLAR, | ) |
| | ) |
| And | ) |
| | ) |
| DONNIE BOLAR, | ) |
| | ) |
|      Third Party Defendants. | ) |

**MEMORANDUM IN SUPPORT OF C.H. ROBINSON
WORLDWIDE, INC.'S MOTION FOR SUMMARY JUDGMENT**

Six months after this Court granted in part its Motion to Dismiss under Rule 12(b)(6), defendant C.H. Robinson Worldwide, Inc., (hereinafter "Robinson"), and after providing the plaintiff with extensive and far-reaching discovery, Robinson is now entitled to summary judgment on the three remaining counts in the plaintiff's Complaint—vicarious liability, negligent hiring, and negligent entrustment.   Each count is discussed in turn below.

## STATEMENT OF UNDISPUTED FACTS

The truly material facts of this case are simple and straightforward.  On the evening of September 12, 2004, Plaintiff Jones, a professional truck driver, was driving a truck Southbound on Interstate 81. *See* Complaint at ¶¶ 5, 13. While passing through Wythe County, Plaintiff's truck collided head on with a truck that belonged to a now-defunct Georgia trucking company called AKJ Enterprises, Inc. ("AKJ"). *See id.* at ¶¶ 1-3. The truck's driver, an AKJ employee named Kristina Mae Arciszewski, unfortunately perished in the crash. *See id.* at ¶¶ 5, 13.  At the time of the crash, AKJ's truck was carrying a load of cable reels manufactured by Coleman Cable, Inc. from Hayesville, North Carolina to East Longmeadow, Massachusetts.[1]  *See id.* at ¶11.   That load was brokered by Robinson.

### Robinson's Relationships with Carriers and Shippers

Robinson is a freight broker—not a trucking company or a shipper.  *See id.* at ¶ 28; *see also* Contract Carrier Agreement between Robinson and AJK,[2] 4/19/01, attached hereto as **Exhibit A** (hereinafter "Contract Carrier Agreement" or "Agreement").   Freight brokers are, in many ways, like travel

---

[1]      There is no evidence that these cable reels were in any way unstable, hazardous, or dangerous cargo.

[2]      In the Contract Carrier Agreement, AKJ is identified as "Unlimited Express", a name under which it did business. *See* Ex. A.

2

agents for motor freight and cargo.  The Contract Carrier Agreement describes Robinson as

> a motor carrier property broker duly licensed by the Federal Highway Administration (FHWA) to arrange the transportation of property by authorized motor carriers, which desires from time to time to use the services of carriers [like AKJ] to transport freight for or on behalf of its customers, the transportation of which Robinson controls.

*Id.* at p.3.

When a shipper, like Coleman Cable, needs to transport product, they often contract with a broker like Robinson to connect them with a trucking company, like AKJ. *See* Deposition of Bruce Johnson, October 8, 2007, at 11, attached hereto as **Exhibit B.**  Like a travel agent, Robinson has access to thousands of carriers, and performs the job of middle-man, accepting shipment requests from shippers and finding carriers for those shipments—often thousands of times a day. *See id.*  Robinson has Contract Carrier Agreements with thousands of carriers, as well as contractual arrangements with shippers. *See id.*  However, both the shippers and the freight carriers remain contractually independent of Robinson. *See id*; *see also* **Exhibit A**.  Indeed, the Contract Carrier Agreement contains the following express provisions governing the relationship between Robinson and AKJ:

- AKJ and Robinson agree that they are both independent contractors of one another, and that AKJ "shall and does employ, retain or lease on its own behalf all persons operating motor vehicles transporting commodities under this contract, and *such persons are not employees or agents of Robinson or its Customers*."  *Id.* at ¶ 6 (emphasis added).

3

- The parties further agreed that "all drivers of motor vehicles and persons employed in connection with the transportation of commodities under this Contract *are subject to the direction, control and supervision of Carrier [AKJ], and not of Robinson or its Customers*." *Id.* (emphasis added).

- AKJ also agreed to ensure that its drivers were "competent and properly licensed" and that "neither Robinson nor its Customer is responsible for paying the involved driver's salary, wages, compensation or charges, nor are either responsible for Workman's Compensation coverage or any taxes based on salary, wages or compensation. Carrier [AKJ] agrees to provide and maintain the necessary equipment and to provide all fuel and pay all expenses necessary to operate the equipment . . . *in no instance shall Robinson or its customer be responsible for any of the expenses." Id.* at ¶ 4 (emphasis added).

- As part of the consideration for the Agreement, AKJ agreed that it would be responsible for maintaining proper licensure, insurance, and Federal Highway Administration certifications—not Robinson—and, further, that it would "*at all times have a U.S. DOT safety rating that is satisfactory, and that at no time will it allow its safety rating to become unsatisfactory." Id.* at ¶ 4 (emphasis added).

Thus, under the express terms of the Contract Carrier Agreement[3] here, Robinson had no control over AKJ or Arciszewski's driving time, compensation, route, or any other aspect of AKJ's handling of the load, or Arciszewski's driving. *See id.* Indeed, Robinson could not fire, or even discipline, Arciszewski. *See id.* Moreover, this had been the case since 2001. *See id.* Also of paramount is the fact that Robinson does not have legal authority to revoke a carrier's Federal Operating Authority. *See id.*

---

[3] The Plaintiff admits the authenticity of the Agreement, and does not dispute that it was in effect at all times relevant hereto. *See* Plaintiff's Responses to Requests for Admission, **Exhibit C** hereto, Nos. 11, 12.

4

## Robinson's Contract Carrier Program

In September 2004—the relevant time frame in this case—Contract Carriers like AKJ that wished to be assigned loads by Robinson had to meet certain criteria in order to be eligible.  On the date that the load was assigned, the carrier was required to have: (1) current Federal Operating Authority (issued by the U.S. Department of Transportation and verified online by Robinson); (2) current and in-effect insurance policies (also monitored by Robinson); and (3) either a Safety Rating[4] from the Federal Motor Carrier Safety Administration ("FMCSA")[5] of "Conditional" or better, or no rating at all.[6]  *See* Johnson Depo., **Exhibit. B**, at pp. 30-31; *see also* Deposition of Annette Sandberg, Esq., March 18, 2008, attached hereto as **Exhibit D**, at pp. 90-91.   In this respect,

---

[4]     Safety ratings are assigned by the FMCSA to carriers who have undergone an extensive, labor-intensive inspection called a "compliance review."  Because of limited resources, only about 12,000 compliance reviews are performed each year by the FMCSA.  As a result, the great majority of carriers never receive one.  *See* Sandberg Depo., **Exhibit D**, at p. 108 (noting that only about 15 percent of the over 700,000 carriers in the FMCSA database have a safety rating).

[5]     Robinson acknowledges that Plaintiff's brief in opposition will almost certainly contain extensive discussion of the FMCSA website and certain safety data available there (known generally as "SafeStat").  However, as Robinson does not believe any of this is relevant, it will not discuss those issues here—but will certainly make appropriate responses in its Reply brief.

[6]     In 2004, Robinson required new Contract Carriers to have a safety rating of "Satisfactory" or higher, or no rating at all; however, Robinson would not automatically drop an existing Contract Carrier whose rating slipped to "Conditional" after they became a Contract Carrier.

Robinson's system, in 2004, was no different from those of others in the industry.  *See* Sandberg Depo., **Exhibit D**, at p. 99.

The following additional facts are also undisputed:  In September 2004, AKJ had valid Federal Operating Authority, insurance, and a "conditional" safety rating.  *See* **Exhibit D**, at pp. 90-91.  Moreover, there is no evidence that AKJ had ever previously been involved in a crash or other incident where someone was killed—or even injured, for that matter.

## ARGUMENT AND AUTHORITIES

### Summary of Argument

Robinson is entitled to summary judgment for the following reasons:  (1) Plaintiff's Vicarious Liability claim fails because the evidence proves that AKJ was an independent contractor of Robinson, and not an employee or agent; (2) Plaintiff's Negligent Hiring claim fails because AKJ was an independent contractor, and Plaintiff cannot meet the high evidentiary burden required to hold Robinson liable for the actions of a contractor, and in the alternative, Plaintiff cannot show that Robinson was negligent in assigning the subject load to AKJ; and (3) Plaintiff's Negligent Entrustment claim fails as a matter of law because Virginia does not recognize a cause of action for negligent entrustment of an activity, and as a matter of fact because Plaintiff cannot establish that Robinson was negligent in assigning the subject load.

**Legal Standard**

Summary judgment is appropriate when there is "no genuine issue of material fact," given the parties' burdens of proof at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed.R.Civ.P. 56(c).

Though, in making this determination, the court should assess the evidence and any permissible inferences drawn therefrom in the light most favorable to the non-moving party, *see Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985), summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Indeed, Rule 56(c) "*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322 (emphasis added).  It is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir.1993) (internal quotations omitted).

Moreover, although Robinson must provide more than a conclusory statement that there are no genuine issues of material fact to support a motion for summary judgment, it " 'need not produce evidence, but simply can argue

7

that there is an absence of evidence by which the non-movant can prove his case.'" *Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393-94 (4th Cir.1994) (internal citations omitted)); *see also Celotex*, 477 U.S. at 325 ("[T]he burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case."). Once Robinson has met this burden, the Plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed.R.Civ.P. 56(e)). The Plaintiff's evidence must be probative, not merely "colorable," *Liberty Lobby, Inc.*, 477 U.S. at 256, and cannot rely on "conclusory statements, without specific evidentiary support," *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir.1998).

**A.**     **The Plaintiff's Vicarious Liability Claim Fails Because the Plaintiff Cannot Establish that AKJ Enterprises, Inc. was not an Independent Contractor of Robinson.**

In its September 11, 2007 Opinion and Order granting in part Robinson's Rule 12(b)(6) Motion, this Court permitted this claim to move into discovery, but warned (rightly, in Robinson's view) that if the Contract Carrier Agreement is authentic, and unless substantial evidence was uncovered in discovery to support the so-called "facts" alleged in the Complaint, then the Court entertained "substantial doubt as to whether the negligence claim is viable." *Jones v. D'Souza*, 2007 WL 2688332, at *7, fn 2 (W.D.Va. 2007).  After over six

8

months of intensive discovery, including *four* requests for production of documents, *two* sets of requests for admission, interrogatories, and *nine* depositions (with a *tenth* still to be taken in the next ten days), the time has come to dispose of this baseless claim.

As the extensive excerpts from the Contract Carrier Agreement set forth in the statement of facts make clear, Robinson and AKJ are independent contractors. *See* **Exhibit A**. Robinson did not have control over AKJ or its driver Arciszewski's driving time, compensation, route, or any other aspect of hauling the load. *See id.* Moreover, Robinson could not fire, or even discipline, Arciszewski. *See id.*

Thus, the sole issue to be decided by the Court regarding on this count is whether the Contract Carrier Agreement was valid and in effect at the time of the crash in this case—September 12, 2004. If Plaintiff cannot establish that the contract was invalid or otherwise not in effect at the time of the crash, Robinson is entitled to summary judgment.

### 1.      The Authenticity of the Contract Carrier Agreement is Undisputed.

Plaintiff admits the authenticity of the Agreement, and disputes neither its wording, nor that it was in effect at all times relevant hereto. *See* Plaintiff's Responses to Requests for Admission, **Exhibit C** hereto, Nos. 11, 12. Instead, Plaintiff claims that—Agreement notwithstanding—the actual relationship between Robinson and AKJ was one of employer/employee. *See* Plaintiff's

Supplemental Responses to Requests for Admission, **Exhibit E** hereto, No. 13. The many problems with the plaintiff's evidence are discussed separately below.

> **2.** **Robinson's Contract Carrier Agreements Have Been Upheld by Other Courts.**

Moreover, it is worth noting that Robinson's Contract Carrier Agreements have been evaluated by *two* other Courts, *both* of which granted summary judgment to Robinson on the issue of independent contractor status of a carrier. *See Schramm v. Foster*, 341 F. Supp. 2d 536, 546 (D. Md. 2004) (analyzing wording in *a virtually identical Agreement* between Robinson and a carrier, and holding that the Freight Agreement did not give Robinson sufficient control over the driver to make Robinson vicariously liable for the driver's negligence.); *see also Lattimore v. Carter, et al.*, Civil Action No. 04-A-27871-2 (Dekalb County, GA, 2007), a copy of which is attached hereto as **Exhibit F.** There, the Court found that, the Carrier Agreement at issue "expressly stated that WCT [the carrier] was an independent contractor and that none of WCT's employees was an employee of CHR [Robinson]." *Id.* at 2. Also, citing Georgia law principles nearly identical to the law of the Commonwealth, the Court rejected the plaintiff's claims that Robinson was vicariously liable for the negligence of WCT—whether based on employment, contract, or actual or apparent agency. *Id.* at 5-7.

10

There is no reason, in the instant case, to depart from the rulings of these other courts on this issue.

### 3.   Plaintiff Cannot Establish That an Employer/Employee Relationship Existed Between Robinson and AKJ.

As this Court correctly instructed in the September 11 Opinion and Order, the question of whether an employer/employee (or master-servant) relationship exists turns on the following factors:

> (1) selection and engagement; (2) payment of compensation; (3) power of dismissal; and (4) power of control. *Hadeed v. Medic-24, Ltd.*, 237 Va. 277, 288 (1989). The fourth factor, power of control, is determinative. *Id.* However, the employer need not actually exercise this control; the test is whether the employer has the power to exercise such control. [citation omitted]

2007 WL 2688332, at *6, fn 1.

As is clear from the Contract Carrier Agreement, Robinson does not have the power to control the operations and activities of carriers like AKJ and their drivers. Even if the Court looks beyond the Agreement, the evidentiary record likewise does not support the contention that Robinson exercised (or even *possessed*) the power to control AKJ or its drivers.

Rather, the *only* evidence Plaintiff has put forward in discovery—and thus, the only evidence upon which he may now rely—to back up his claim that Robinson was the employer/principal of AKJ are weak tidbits that often pile inference upon inference. In Plaintiff's supplemental response to request for admission number 13, **Exhibit E** hereto, he denies that AKJ was an

11

independent contractor of Robinson, and then provides an interrogatory answer listing all of the facts upon which he bases the denial.[7]  Specifically, Plaintiff identifies the following vague and conclusory "facts" as sufficient proof of AKJ's employee status to survive summary judgment and justify taking up a jury's time:

**a.   AKJ's drivers were "required to frequently report their positions and load status" to Robinson;**

The unrebutted testimony in this case is that Robinson's dispatch department receives daily "check" calls from contract carrier's drivers to permit Robinson to track—but not control—the location and progress of the loads it has brokered for its customers, like Coleman Cable.  *See* Deposition of Michael Atkinson, October 8, 2007, attached as **Exhibit G** hereto, at p. 130 (testimony of Robinson corporate representative explaining that carrier's drivers are "required to make check calls to us, but, you know, we're not—we don't tell them where to stop or when they have to make the exact check call. . . . it's encouraged for carriers to, you know, call at least once a day, you know, with an update," and emphasizing that it's "up to the driver to determine their own

---

[7]   Plaintiff was asked in a separate interrogatory, for each request for admission he denied in whole or in part, to "explain in detail the reason for each and every factual basis for any such denial." *See* **Exhibit C**, at 11.  Plaintiff answered that interrogatory by referring Robinson to written responses provided as part of the responses to the individual requests for admissions themselves. Thus, Plaintiff is bound by his supplemental response to request no. 13 in the same manner and to the same extent he would be for any interrogatory answer.

stopping, fueling, and stuff like that.").  This is simply not evidence of control or employment.

**b.      Drivers employed by AKJ "relied on Robinson's T-check service, not on AKJ, for incidental expenses incurred during trips.";**

"T-Checks" are nothing more than advances carriers can receive from Robinson to help cover fuel costs and other expenses incurred during a particular trip.  *See id.* at 55-56.  The money is then deducted from the carrier's payment at the end of the load; T-checks are not loans, gifts, or bonuses.  *See id.*  Moreover, it is disingenuous and misleading for Plaintiff to characterize the T-check system as a direct financial relationship between Robinson and AKJ's *drivers*.  In fact, the evidence shows the opposite—that *carriers* (not *drivers*) sign up for Robinson's T-check system, and that both carrier managers *and* their drivers contact Robinson to request them.  *See id.*; *see also* Deposition of Michael Atkinson, March 6, 2008, attached hereto as **Exhibit H**, at pp. 241-242 (explaining that T-checks are sometimes requested by carriers directly and sometimes by drivers on behalf of the carriers who employ them).

**c.      "When problems arose during trips, drivers called Robinson.";**

Robinson frankly has difficulty understanding how this fact—even if true—would establish an employer/employee relationship between Robinson and AKJ.  If Plaintiff has evidence that Robinson required drivers to contact Robinson directly with problems, rather than talking to the carriers who

employed them, Robinson has not been provided with such evidence in discovery.

      **d.    Even though the Contract Carrier Agreement placed upon AKJ the burden of maintaining a "satisfactory" safety rating with the FMCSA, Robinson allowed AKJ to "continue to transport loads even while its rating was "conditional.""**

It is, again, difficult to see how this information is probative of an employer/employee relationship between Robinson and AKJ. If such a fact were relevant at all, it would speak only to whether AKJ had breached some portion of the Contract Carrier Agreement—an issue which Plaintiff, a non-party to the Agreement, lacks standing to raise. Moreover, there is no evidence in this case that AKJ's "conditional" rating had anything to do with the crash at issue.

For all these reasons, Robinson is entitled to summary judgment on the plaintiff's vicarious liability claim.

**B.    <u>The Plaintiff's Negligent Hiring Claim Fails Because AKJ was an Independent Contractor, and Plaintiff Cannot Meet the High Evidentiary Burden Required to Hold Robinson Liable, and in the Alternative, Plaintiff Cannot Show that Robinson was Negligent in Assigning the Subject Load to AKJ.</u>**

Though Robinson believes that AKJ's independent contractor status is beyond serious dispute in this case, Plaintiff's negligent hiring claim fails regardless of whether the Court finds that AKJ was an independent contractor or not. Both rationales are set forth below.

1.   **AKJ was an Independent Contractor, and Plaintiff Cannot Meet the High Evidentiary Burden Required to Hold Robinson Liable.**

Robinson anticipates that in Plaintiff's brief in opposition—as he did in response to Robinson's 12(b)(6) motion—he will attempt to rely on *Philip Morris, Inc. v. Emerson*, 235 Va. 380 (1988), for the proposition that a company that contracts with an incompetent independent contractor *can* be liable for negligently selecting the contractor.   As before, this reliance is misplaced. *Philip Morris* involved a specially-trained and licensed HazMat contractor who was retained to test, identify, and ultimately remove ultra-hazardous chemicals contained in some tanks on Philip Morris' property.  The contractor failed to take proper precautions, and was overcome by the gas (pentaborane—a corrosive substance *thousands* of times more toxic than cyanide).  The contractor died from his brief exposure, and several other persons in the area were injured.  On appeal, the Supreme Court of Virginia held that Philip Morris *could* be held liable for negligent hiring of its independent contractor, because of the following exceptional circumstances:  (a) the substance being handled, pentaborane, is "ultra-hazardous" and thus requires significant care beyond normal business practices; and (b) the contractor was supposed to be operating under the close, personal supervision of a Philip Morris representative, who had express authority under the parties' contract to control and stop the contractor's work at

any time, but who was not present when the release occurred.  *See* 235 Va. at 390-93.

In the instant case at bar, no such ultra-hazardous materials or activities were involved.  Plaintiff alleges—and the undisputed evidence demonstrates— that AKJ's truck contained cable reels—hardly the type of über-toxic chemicals that would trigger the *Philip Morris* analysis.  Also, unlike the contractor in *Philip Morris*, AKJ was not under the direct supervision and operational control of Robinson.  *See* Contract Carrier Agreement, **Exhibit A**.  Furthermore, Plaintiff has developed *no* evidence in discovery to support his previous conclusory assertion that hauling this type of load constitutes an "ultra-hazardous" activity.[8]

Thus, if the Court agrees that AKJ was an independent contractor, then Robinson is entitled to summary judgment on this claim.

**2.     Plaintiff's Negligent Hiring Claim Also Fails Because Robinson Had No Reason to Believe That AKJ Would be Involved in a Fatal Crash.**

Whether AKJ was an independent contractor or not, the negligent hiring claim also fails because there is no credible evidence in the record that Robinson knew or reasonably should have known that AKJ was likely to have this type of fatal crash.   As the Supreme Court of Virginia has held:

---

[8]     Nor can Plaintiff establish that trucking itself is an ultra-hazardous activity.   Mere regulation of motor carriers at the federal level does not warrant—or even suggest—such an inference.   Indeed, there is in fact *no* statutory or common law authority to suggest that trucking is any more dangerous than ordinary automobile travel.

16

> Liability for negligent hiring is based upon an employer's failure to exercise reasonable care in placing an individual with known propensities, or propensities that should have been discovered by reasonable investigation, in an employment position in which, due to the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others. *Southeast Apartments Mgmt. v. Jackman*, 257 Va. 256, 260, 513 S.E.2d 395, 397 (1999). **[However], [m]ere proof of the failure to investigate a potential employee's background is not sufficient to establish an employer's liability for negligent hiring**. *Majorana v. Crown Cent. Petroleum*, 260 Va. 521, 531, 539 S.E.2d 426, 431 (2000) (emphasis added).

*Interim Personnel of Central Virginia, Inc. v. Messer*, 263 Va. 435, 440 (2002).

In the instant case, however, there was little—if anything—in AKJ's past to suggest to Robinson, or any other reasonable observer, that assigning this load of cable reels to AKJ would likely result in a fatal crash. According to Robinson's records, prior to the September 2004 crash at issue, AKJ was involved in only two previous crashes—both over two years earlier, in 2002— neither of which resulted in any injuries.

Nevertheless, in discovery Robinson produced to Plaintiff a spreadsheet containing a log of every problem—whether big or small, safety related or otherwise—that was reported to Robinson by AKJ or its drivers for all of the loads hauled by AKJ. The overwhelming majority of this information is simply not germane to the issues in the case—relating to such sensational but irrelevant things as an AKJ-employee driver disappearing with a load for several days without checking in; another AKJ driver apparently pulling a knife at a

17

delivery site and stabbing a pallet of cargo because he was scolded by the loading dock workers for wearing flip-flops; and a few disparate instances where AKJ drivers appear to have shown up for a pickup or delivery with only a photocopy of their commercial driver's license, just to name a few.  None of this, of course, would have served to place Robinson on notice "of the possibility that [AKJ] would create an unreasonable risk of harm or would be unfit for the position." *Huffman v. Wynn*, *et al.*, 2006 WL 1288317, at * 4 (W.D.Va. 2006). Virtually all of this evidence is also inadmissible hearsay within hearsay (the log entries represent Robinson employees making notes of what they have been told over the phone by drivers, carriers, or other persons involved with a particular load.).

Nevertheless, Robinson anticipates that Plaintiff will attempt to clutter the summary judgment record with repeated references to these irrelevant, inadmissible events.  It is therefore worth noting that Virginia law requires a close nexus in a negligent hiring claim between the employee's past behaviors and the core conduct at issue.  Hence, in *Interim Personnel*, *supra*, the Supreme Court affirmed the dismissal of a negligent hiring claim on the grounds that "the mere fact that East [the employee] had been convicted twice of DUI, had failed to pay fines or attend counseling, and had been declared an habitual offender, would not place a reasonable employer on notice or make it foreseeable that East would steal a truck, operate the stolen vehicle during non-

18

business hours for his own frolic, and cause an accident on the open highway distant from the environs of his job." 263 Va. at 442. So viewed, the Supreme Court of Virginia would seem to require a near identity of fact patterns between the past events and the current claim.

For these reasons, Robinson is entitled to summary judgment on Plaintiff's negligent hiring claim.

**C.    Plaintiff's Negligent Entrustment Claim Fails as a Matter of Fact Because Plaintiff Cannot Establish that Robinson was Negligent in Assigning the Subject Load to AKJ, and as a Matter of Law Because Virginia Does Not Recognize a Cause of Action for Negligent Entrustment of an Activity.**

The lack of admissible evidentiary support for the proposition that Robinson somehow was, or should have been, on notice that AKJ was likely to kill someone if assigned the Coleman Cable load similarly causes Plaintiff's negligent entrustment claim to fail as a matter of fact.

This claim also fails as a matter of law because Virginia law requires proof "that the *owner of the instrumentality used to inflict injury* knew, or had reasonable cause to know, that he was entrusting the *instrumentality* to a third person who was likely to use it in a manner that would cause injury to others." *Kingrey v. Hill*, 245 Va. 76, 78 (1993) (emphasis added), citing *Hack v. Nester*, 241 Va. 499 (1991); *Denby v. Davis*, 212 Va. 836 (1972).   As Robinson previously asserted in its Rule 12(b)(6) Motion, the "instrumentality" of injury in the instant case was AKJ's tractor-trailer.  It was undisputed then, and remains

19

undisputed now, that Robinson was not the owner of, and had no interest in, AKJ's truck or the load inside, for that matter.  Thus, Robinson cannot, as a matter of both law and logic, have "entrusted" the truck to AKJ.

Plaintiff asserted previously—and continues to assert—that Robinson can be held liable for negligent entrustment of an *activity* (as set forth in § 308 of the Restatement (Second) of Torts), even though neither the Virginia Supreme Court nor the General Assembly has ever recognized such a cause of action—a fact acknowledged in this Court's September 11 Opinion and Order. This Court expressed its "prediction," however, that the Supreme Court of Virginia *would* adopt § 308 of the Restatement[9] if presented with the opportunity. *See* 2007 WL 2688332, at *11.  This forecast appears to be based largely on the fact that Virginia has recognized the narrower theory of negligent entrustment enshrined in § 390 of the Restatement—a cause of action expressly limited to the entrustment of "chattel" to persons who are "because of . . . youth, inexperience, or otherwise," likely to use the chattel in a way that may harm others. *See id.* at *12, fn 6, citing *Denby v. Davis*, 212 Va. 836, 838 (1972).

---

[9]     Section 308 of the Restatement provides as follows:

It is negligent to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such persons intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

20

Robinson respectfully submits that this Court's reasoning is at odds with the practice of the Supreme Court of Virginia regarding the application of the Restatement (Second) of Torts.  In its decisions, the Supreme Court is often fickle in its adoption of parts of the Restatement—there are many instances where the Court adopts one Restatement Rule, but not another, even though the two are similar.  As a result, numerous Circuit Courts in Virginia have held that the Supreme Court's comments on the Restatement are to be construed narrowly.

One topic which has proven fertile ground for this case-by-case paradigm is the law governing when landowners can be held strictly liable for injuries to guests and invitees caused by the violence of third parties.  For example, in *Bridgers v. Doran Corp.*, 1992 WL 884938 (Va. Cir. Ct. 1992), one such premises liability suit, the plaintiff urged the Circuit Court to adopt the reasoning of several portions of the Restatement pertaining to the "special relationships" that must exist in order to hold landowners strictly liable for acts of violence committed against guests and business invitees.  The Circuit Court, noting that the Supreme Court had not yet addressed those particular portions of the Restatement, declined to treat the Supreme Court's silence as a tacit willingness to adopt these portions of the Restatement.  The Circuit Court adroitly explained that "[t]he Supreme Court of Virginia has illustrated the fact that *its references to the Restatement should be read narrowly*:

> We alluded to this Restatement rule in both *Klingbeil Management Group Co. v. Vito*, 233 Va. 445, 447, 357 S.E.2d 200, 201 (1987) and *Gulf Reston, Inc. v. Rogers*, 215 Va. 155, 158, 207 S.E.2d 841, 844 (1974), but made it plain in *Gulf Reston* that this was only a reference to the Restatement rule. Our statement in *Klingbeil* was simply a comment upon the reference in *Gulf Reston*.

1992 WL 884938, at *2, quoting *Wright v. Webb*, 234 Va. 527, 530 (1987) (emphasis added); *see also Beasley v. Young Men's Christian Ass'n of Lynchburg*, 2003 WL 25269417 (Va. Cir. Ct. 2003) (declining in premises liability case to apply rule from Restatement (second) of Torts § 364 because the Virginia Supreme Court has not yet considered the issue).

In light of Virginia courts' preference for interpreting narrowly the Supreme Court's adoption of portions of the Restatement, Robinson respectfully invites this Court to revisit its prediction that the Supreme Court of Virginia would likely adopt the broader definition of negligent entrustment set forth in § 308 of the Restatement.

For all these reasons, Robinson is entitled to summary judgment on Plaintiff's negligent entrustment claim.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Robinson asks that its motion be granted, and that it be awarded summary judgment on all claims currently pending against it, and that it be awarded its costs expended herein, and such other relief as the Court may deem appropriate.

C.H. ROBINSON WORLDWIDE, INC.,

By counsel,


**/s://Paul C. Kuhnel, Esq.**


Paul C. Kuhnel (VSB #28151)
Robert Michael Doherty (VSB #43997)
**WOOTENHART PLC**
707 S. Jefferson Street, Suite 300
P. O. Box 12247
Roanoke, VA  24024-2247
(540)343-2451
(540)345-6417 (facsimile)

**Counsel for the Robinson Defendants**

## **CERTIFICATE**

I hereby certify that I electronically filed the foregoing with John F. Corcoran, Clerk, U. S. District Court, using the CM/ECF system which will send notification of such filing to the following on this __26th_ day of **March, 2008:**

Gary C. Hancock, Esq.
Timothy E. Kirtner, Esq.
Anne Bishop, Esq.
Gilmer, Sadler, Ingram, Sutherland & Hutton
65 East Main Street
P. O. Box 878
Pulaski, VA  24301

and

Byron R. Shankman, Esq.
P. O. Box 1859
Dublin, VA  24084

    **Co-Counsel for the Plaintiff**


       **_/s://Paul C. Kuhnel, Esq.___**


s:\robinson_ch\19765\motion for summary judgment--brief.docMarch 26, 2008rmd