UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WINFORD DALLAS JONES, | ) |
| Plaintiff, | ) |
| v. | ) |
| C.H. ROBINSON WORLDWIDE, INC., | ) |
| Defendant/Third Party Plaintiff. | ) |
| v. | ) Civil Action No. 7:06-CV-00547 |
| AKJ ENTERPRISES, INC., d/b/a Unlimited Express | ) |
| And | ) |
| ELSON BOLAR, | ) |
| And | ) |
| DONNIE BOLAR, | ) |
| Third Party Defendants. | ) |

**C.H. ROBINSON'S  MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF THOMAS M. CORSI, Ph.D.**

C. H. Robinson Worldwide, Inc. ("Robinson"), by counsel, and, in support of its motion to exclude the testimony of Thomas M. Corsi, Ph.D. ("Dr. Corsi"), sets forth the following arguments and authorities:

1

**Background and Summary of Argument**

On September 12, 2004, a serious motor vehicle accident occurred in Wythe County, Virginia involving two tractor trailers. The collision happened when the truck being driven by Kristina Mae Arciszewski hit the truck operated by the plaintiff, Winford Dallas Jones ("Jones"). Ms. Arciszewski, who was killed in the crash, was driving a truck owned by AKJ Enterprises, Inc. ("AKJ") and was carrying a load of cable reels manufactured by Coleman Cable, Inc. ("Coleman"). Robinson was the freight broker that arranged for AKJ to transport Coleman's product.

Jones filed suit against Robinson asserting, among other things, claims of negligent hiring and negligent entrustment. These latter claims are premised upon the contention that Robinson breached its duty of care owed to Jones when it arranged for AKJ to haul a load for Coleman.

To prove that Robinson acted negligently, Jones has designated Dr. Corsi, a professor at the University of Maryland, as an expert witness to testify (presumably) concerning the commercial standards a freight broker like Robinson should have applied under the circumstances of this case. For ease of reference, Dr. Corsi's Rule 26 Report is attached hereto as Exhibit A.

Notably, Dr. Corsi has opined that the standard of care in the freight broker industry requires that, for example, business not be brokered with any motor carriers in the bottom 25th percentile of *any* of four SEA scores that make up the

so-called SafeStat score compiled by the Federal Motor Carrier Safety Administration ("FMCSA"). The basis for that opinion is that the Department of Energy's ("DOE") criteria in hiring carriers is the model for the industry and other freight brokers, according to sparse information revealed on their internet websites, claim that they, too, use FMCSA data in determining which carriers to use.

The problem with Dr. Corsi's analysis is that the DOE criteria is used for the transportation of materials like hazardous nuclear waste, not ordinary commercial materials like that found in the Coleman load. More importantly, Dr. Corsi's opinions are not based upon any information he has obtained about the best practices in the industry at the time of the events giving rise to this case. Any suggestion that what other freight brokers are doing now is what they were doing back in September 2004 would be purely speculative and further grounds for exclusion of Dr. Corsi's opinions.

### Arguments and Authorities

The Supreme Court of the United States in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), explained that district courts should act as gatekeepers of expert evidence and that such evidence or testimony must be "not only relevant, but reliable." Id. at 589. The Court further noted that "expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." Id. at 595. At a minimum, any expert opinion must be viewed within the framework of what is permissible under the Federal Rule of Evidence.

Rule 702 of the Federal Rules of Evidence provides that an expert's opinion is not admissible unless "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Rule 703 further requires that, in order for an expert opinion to be admissible, the facts or data relied upon by an expert witness be "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences on the subject." "The party offering the expert witness … has the burden of showing, by a preponderance of the evidence, that the expert's testimony is admissible." Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2004).

    I.    *Dr. Corsi's Opinions Concerning Standard of Care Do Not Satisfy the Reliability Standards Required by Daubert and Rules of Evidence 702 and 703.*

(a) Rule 702

The crux of Dr. Corsi's opinions is that Robinson was negligent in arranging for AKJ to carry the load, since AKJ had been given a "conditional" rating by the FMCSA. Dr. Corsi asserts that the relevant standard of care required that freight brokers refuse to broker product transport for carriers that rank in the bottom 25th percentile of the FMCSA's statistics and even cease doing business with them altogether.[1] See Corsi's Report, pg. 8. However, Dr. Corsi fails to provide any reliable evidence that such a requirement was the accepted standard of care in the

---

[1] Interestingly, Dr. Corsi has acknowledged that there are between 300,000 and 400,000 active carriers. See Corsi Deposition, pg. 187. Therefore, following Dr. Corsi's logic, there are up to 100,000 active carriers with which it would be negligent to do business with.

4

freight broker industry.  Such evidence should come from either the regulatory environment at the time, state or federal statutes, or even what other similarly situated freight brokers were doing at the time.

In Flaherty v. Legum & Norman Realty, Inc., 2007 WL 4694346 (E.D. Va. 2007), a condominium owner was sued when a person died allegedly as a result of bacteria present in the condominium's water system.  A copy of *Flaherty* is attached hereto as Exhibit B.  There, plaintiff sought to introduce the testimony of a microbiologist concerning the bacteria and the defendant's alleged negligence in maintaining its water system.  The Court held that the microbiologist's opinion concerning the standard of care was not admissible since it did not satisfy the requirements of Daubert or Rule 702.  In reaching this conclusion, the Court stated that "there are no natural or state mandated standards for the testing or prevention of *legionella* bacteria in potable water by a property management company that the plaintiff's expert could point to establish an applicable standard of care."  Id.

Here, as in Flaherty, Dr. Corsi could not cite a single federal or state statute, regulation, report, or other authority requiring a freight broker to even check the statistics maintained by the FMSCA, much less refuse to deal with any carrier in the bottom 25th percentile of such statistics.  Nor could Dr. Corsi point to any governing bodies or industry organizations which have adopted, advocated, or even validated his opinion of the standard of care.  In fact, Dr. Corsi has conceded that the FMSCA has actually issued a warning that the FMCSA statistics should not be used for any purpose "other than identifying and prioritizing carriers for

5

FMCSA and state safety improvement and enforcement programs." See Corsi's Deposition, pg. 73 (attached hereto as Exhibit C).

Dr. Corsi's sole support for his contention that the industry accepted standard of care requires that freight brokers not work with carriers in the bottom 25th percentile of the FMCSA statistics are some informal internet searches performed by him just prior to his deposition. Specifically, Dr. Corsi performed an internet search in which he was able to find websites of a handful of freight brokers which advertise their current use of FMCSA statistics in selecting carriers, although he admits that even within that handful of brokers, the standards applied are not the same. See Corsi's Deposition, pp. 90-100. Dr. Corsi described the research underlying his opinion as follows: "I just went on and did some searching on the web of freight logistics companies and their practices and I found some of these company [sic] would have their practices on the web and others wouldn't." Corsi Deposition, pg. 92. Such a review of what some brokers are doing is cursory at best. Dr. Corsi has testified that while "there are hundreds" of freight brokers, See Corsi Deposition, pg. 96, he nevertheless seeks to create an industry-wide standard based upon the purported practices of five to eight brokers which happen to advertise their carrier selection criteria on their websites.[2]

As a default position, Dr. Corsi also points to the DOE, which is regularly responsible for the transporting of nuclear waste, as an entity that uses FMCSA statistics in hiring carriers. Dr. Corsi states in his report that the DOE has been

---

[2] It is not exactly clear how many websites Dr. Corsi relies upon. At one point in his deposition he seems to indicate that there were five while at another point he indicates that there were eight. See Corsi Deposition, pp 91-93.

6

"recognized to have a model program of motor carrier selection and monitoring." Corsi's Rule 26 Report, pg. 6. When asked in his deposition by whom has this program been recognized as being a model, however, Dr. Corsi answered simply "well, by me." Corsi's Deposition, pp. 99-100. Dr. Corsi concedes; however, that *none* of the freight brokers whose websites he visited use the exact carrier selection procedures employed by the DOE. Corsi Deposition, pg. 111.

Fed. R. Evid. 702 requires that expert testimony be based on (1) sufficient facts or data; (2) reliable principles and methods; <u>and</u> (3) the reliable application of the reliable principles and methods to the facts of the case. Dr. Corsi's opinions fails under all three requirements. Certainly, an informal internet search which yielded a relatively small number of carriers that purport to employ standards similar to what Dr. Corsi argues is the applicable standard of care does not constitute "sufficient facts or data" or "reliable principles and methods." In reality, Dr. Corsi employed no substantive data or methodology at all in forming his opinion.

It is clear from Dr. Corsi's deposition that the standard of care which he espouses is nothing more than what he believes the standard should be.

(b) <u>Rule 703</u>

Dr. Corsi's testimony concerning standard of care also fails under Rule 703, which requires that, in order for expert testimony to be admissible, the expert has to have relied upon information of a kind reasonably relied upon by experts in that field. Here, the plaintiff has the burden of showing that experts in the freight

broker industry would rely upon an internet search sampling to establish their opinions regarding the standards of care.

In Redman v. John D. Brush and Co., 111 F.3d 1174 (4th Cir. 1997), the plaintiff sought to introduce an engineer's testimony concerning the industry standards in manufacturing safes. The Court noted that much of the engineer's opinions concerning industry standards came from informal conversations with personnel of a store that sold the safes. There was no proof offered that an expert in that field would rely upon conversations with store personnel to form an opinion as to industry standards. Id. at 1179. The Court held that, although the engineer was qualified to testify concerning the construction of the safe and its component materials, his opinion concerning industry standards did not meet the requirements of Rule 703. Id.

Here, Dr. Corsi has admitted that his opinion concerning the applicable standard of care comes from an informal survey of a relatively small number of company websites. The Plaintiff has not offered any evidence that an expert qualified to testify concerning the accepted standard of care in the freight broker industry would resort to such methods. So viewed, Dr. Corsi's standard of care opinion is inadmissible under Rule 703.

(c) Dr. Corsi's Opinions Also Fail to Establish the Applicable Standard of Care in 2004

In addition to failing to satisfy the reliability requirements of the Federal Rules of Evidence, Dr. Corsi's opinions fail for an even more fundamental reason: he offers no evidence concerning what the standard of care in the industry was in

2004, the year of the accident. In fact, he readily admitted that he has no knowledge of what standards were applied by freight brokers in 2004. See Corsi Depsoition, pg. 135. "Expert testimony used to establish duty must establish the standard of care within a reasonable degree of probability." Flaherty, 2007 WL 4694346. Certainly, Dr. Corsi's hearsay testimony regarding what a few company websites advertise in 2008 cannot be said to establish the industry accepted standard of care in 2004 within any reasonable degree of probability. By his own admission, his opinion does not even purport to establish the standard of care in 2004. See Corsi Deposition, pg. 135. Dr. Corsi's inability to show what the industry standard was in 2004 or that it was no different from the time period testified to in his deposition, is grounds for exclusion.

> II. *Dr. Corsi Lacks the Required Experience and Education to Testify Concerning the Standard of Care Applicable to the Freight Broker Industry*

Even if the Court were to accept the notion that Dr. Corsi's opinions are sufficiently grounded in reliable data and methodology, and that his internet searches were reasonable in forming his opinions, he still does not qualify as an expert in the field in which Robinson operated. Rule 702 requires that a person be qualified as an expert because of their "knowledge, skill, experience, training, or education" in a particular field. Dr. Corsi's curriculum vitae reveals a marked absence of any real experience or education relating to the freight broker industry or the regulatory side of the trucking industry. Instead, he is first and foremost an academic.

9

Dr. Corsi acknowledges that none of his education relates to the freight broker industry. See Corsi Deposition, pp.148-52. He has also never worked for the FMCSA or a freight broker. Id. at 149.[3]

While Dr. Corsi does state that he has experience with the FMCSA in developing methodologies in compiling and analyzing data, nothing in his training, education, or experience would qualify him to opine on the standards of care applicable to how that data should be used by the industry. Dr. Corsi may be qualified to offer expert testimony concerning the FMSCA's methodology in gathering data relating to freight carriers, but informal internet searches of five to eight company websites do not qualify him to testify regarding the standard of care in the entire industry. (He did not even take the extra step of actually talking to industry insiders.) This court should treat Dr. Corsi just like the unqualified experts in Redman and Flaherty and prevent the introduction of such unreliable and unsupported opinions.

## Conclusion

The testimony of expert witnesses "can be both powerful and quite misleading." Daubert, 509 U.S. 595. By Dr. Corsi's own admission, he has never been employed by the FMCSA or a freight broker; he has also never received formal training or education in the freight broker industry. Because he lacks the

---

[3] When discussing his education, Dr. Corsi admitted "when you look at the issue of carrier selection and the things that we've gotten in today, that certainly is not a focus of my education at Kent State or the University of Wisconsin." Corsi Deposition, pp. 151-52.

required "knowledge, skill, experience, training, or education," his testimony is inadmissible pursuant to Rule 702.

Dr. Corsi has testified that the data and methodology upon which he bases his standard of care opinion comes from an informal internet search prior to his deposition. Dr. Corsi has not cited any federal or state statutes or regulations, any standards or recommendations from industry associations, nor any literature in industry publications, which would support his theory that it would be negligent to do business with any carrier that ranks in the bottom 25th percent of the FMCSA statistics. Such opinion not only is devoid of any real evidentiary support, it is also devoid of logic and common sense.

Rule 703 requires that the data relied upon by an expert be of a kind reasonably relied upon by experts in that field. The Plaintiff has offered no evidence to support the contention that Dr. Corsi's informal internet search to determine the applicable standard of care would be used by actual experts in the field of freight brokers. Therefore, Dr. Corsi's testimony is again made inadmissible by Rule 703.

Even if Dr. Corsi had offered an opinion as to standard of care that was not lacking in sound data and methodology, his testimony would still fall short. Nothing in his testimony indicates that the bottom 25% standard of care which he advocates was the industry standard in 2004. Indeed, in response to questions as to what standards freight brokers employed in 2004, Dr. Corsi admitted "I don't know." Corsi Deposition, pg. 98. For the reasons discussed above, the testimony

of Dr. Corsi as to the standard of care applicable to the freight broker industry is inadmissible and must be excluded.

                Respectfully submitted,

                C.H. ROBINSON WORLDWIDE, INC.,

                By: s// Paul C. Kuhnel, Esq.
                    Counsel for C. H. Robinson Worldwide, Inc.

Paul C. Kuhnel (VSB #28151)
Robert Michael Doherty (VSB #43997)
Benjamin S. Candland (VSB #68011)
**WOOTENHART PLC**
707 S. Jefferson Street, Suite 300
P. O. Box 12247
Roanoke, VA 24024-2247
(540)343-2451
(540)345-6417 (facsimile)

    **Counsel for the Robinson Defendants**

## CERTIFICATE

I hereby certify that I electronically filed the foregoing with John F. Corcoran, Clerk, U. S. District Court, using the CM/ECF system which will send notification of such filing to the following on this **26**[th] day of **March, 2008**:

Gary C. Hancock, Esq.
Timothy E. Kirtner, Esq.
Gilmer, Sadler, Ingram, Sutherland & Hutton
65 East Main Street
P. O. Box 878
Pulaski, VA  24301

Byron R. Shankman, Esq.
P. O. Box 1859
Dublin, VA  24084

**Co-Counsel for the Plaintiff**

                                                **/s:// Paul C. Kuhnel, Esq.**

s:\robinson_ch\19765\motion to exclude expert. brief.doc3/26/08bc