UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WINFORD DALLAS JONES, | ) |
| Plaintiff, | ) |
| v. | ) |
| C.H. ROBINSON WORLDWIDE, INC., | ) |
| Defendant/Third Party Plaintiff. | ) |
| v. | ) Civil Action No. 7:06-CV-00547 |
| AKJ ENTERPRISES, INC., d/b/a Unlimited Express | ) |
| And | ) |
| ELSON BOLAR, | ) |
| And | ) |
| DONNIE BOLAR, | ) |
| Third Party Defendants. | ) |

## MEMORANDUM IN SUPPORT OF ROBINSON'S MOTION *IN LIMINE* TO PERMIT EVIDENCE REGARDING PLAINTIFF'S SETTLEMENT WITH AKJ ENTERPRISES, INC.

In the instant motion, defendant C.H. Robinson Worldwide, Inc. ("Robinson"), asks the Court to take judicial notice of the following facts from the Court's own records: (1) the fact that AKJ Enterprises, Inc. had, at the time of the subject crash, a $1,000,000 insurance policy; and (2) that as the result of the settlement of an interpleader action in this Court (*Canal Ins. Co. v AKJ*

*Enterprises, et al.*, Civil Action 7:05cv00312-gec), on August 6, 2007, Plaintiff received payment in the amount of $756,231.10 as compensation for injuries received in the subject crash. In the alternative, Robinson asks for an Order permitting it to offer evidence at trial to prove these facts, if the Court declines to judicially notice them.

The facts and law supporting this Motion are set forth below.

### **RELEVANT FACTS AND BACKGROUND**

To support his negligent hiring and negligent entrustment claims in this case, Plaintiff makes repeated factual assertions regarding what he considers to be AKJ's lack of money; spotty insurance history; and other alleged financial problems. *See, e.g.* Plaintiff's Brief in Support of Motion for Partial Summary Judgment, at p. 5, fn 8 (discussing AKJ's "history of repeated insurance cancellations"), p. 17 (speciously claiming that "Robinson was or should have been aware that AKJ was impaired financially" and that the fact that AKJ obtained T-Checks as somehow establishing that AKJ was dangerous)[1]; Plaintiff's Brief in Opposition to Robinson's Motion for Summary Judgment, at pp. 15-16 (arguing that AKJ's weak financial position made it economically

---

[1] Another reason to permit these facts into the record is that Plaintiff relies upon evidence apparently obtained during the interpleader action as part of his case. *See, e.g.*, Plaintiff's Brief in Supp. of his Mot. for Part. Sum. Judg. at p. 20 and fn 35; *see also id.* at Exhibit 38 (attaching and relying upon discovery responses from interpleader action).

2

dependent upon Robinson, as it allegedly had insufficient assets [aside from a $1,000,000 insurance policy!] with which to operate).

Plaintiff was involved in an interpleader action brought by Canal Insurance Company—AKJ's liability carrier—that was filed in this Court on May 20, 2005. *See* Case History Report for Civil Action No. 7:05cv00312-gec, attached hereto as **Exhibit A**, and of which the Court may take judicial notice. The record from that case plainly demonstrates that a total of $1,000,000—the full amount of AKJ's insurance policy on September 12, 2004 (the date of the subject crash)—was deposited into the Court by Canal Insurance Company to be distributed among Plaintiff; his employer, Purdy Brothers Trucking; and Charles Kevin Morris, the much-discussed "co-driver/boyfriend/spiritual advisor" of the decedent, Kristina Arciszewski. *Id.* After an apparently highly contentious series of mediations, the case was finally settled, and a final Order was entered by this Court on August 6, 2007, disbursing the funds. *See* Final Order, attached hereto as **Exhibit B,** and of which the Court may take judicial notice. Plaintiff's portion of the final distribution was $756,231.10. *See id.*

## **ARGUMENT**

Robinson believes that this information is both probative and material to the issues in the case, and that it is an appropriate subject for judicial notice. As this Court is no doubt aware, judicial notice is governed by Fed. R. Evid. 201(b), which provides in relevant part:

(b) <u>Kinds of facts</u>. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Judicial notice is properly used for establishing undisputed facts that are common knowledge—such as the fact that April 7, 2008 was a Monday, (or that the Atlanta Braves are the best team in baseball). Courts typically take judicial notice of geographic facts[2], publicly available financial data and statistics[3], and established scientific principles—such as the laws of physics[4]. In addition, Courts may properly take judicial notice of the laws, and court decisions of their own and other courts and other states.[5]

Information regarding the amount of AKJ's insurance policy, and the fact that Plaintiff recovered over $750,000 from it as compensation for personal injuries, is relevant and admissible here for the following reasons: First, under

---

[2] *N.L.R.B. v. Baltimore Transit Co.*, 140 F.2d 51 (4th Cir. 1944) (Circuit Court of Appeals could take judicial notice of fact that Baltimore is in size the seventh largest city in the United States.)

[3] *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650 (4th Cir. 2004) (Court of Appeals, as well as the district court, may take judicial notice of published stock prices without converting a motion to dismiss into a motion for summary judgment.).

[4] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (laws of thermodynamics are appropriate subject of judicial notice).

[5] *Holly v. McDowell Coal & Coke Co.*, 203 F. 668 (4th Cir. 1913) (noting that a federal court may take judicial notice of the laws created by statute or judicial decisions of all the states in the Union).

4

Virginia law, settlement payments from other tortfeasors for the same injuries are *not* considered a "collateral source," and thus would not be inadmissible on that basis—indeed, Robinson is entitled to a setoff in the amount of the Plaintiff's settlement with AKJ:

> [T]he collateral source rule and the joint tort-feasor rule are capable of compatible coexistence only if their differing fields of operation are recognized and respected. The collateral source rule purports to place upon the defendant-tort-feasor the full burden of his wrongdoing. If, however, the plaintiff's injury is the product of the combined wrongdoings of the defendant and a settling joint tort-feasor, the credit rule intercedes to ensure that the defendant will not be burdened with full restitution for an injury which ... by settlement of a tort claim, the plaintiff implicitly attributes in part to the settling party.

*Accordia of Virginia Insurance Agency v. Genito Glenn, L.P.*, 263 Va. 377, 387-88 (2002), quoting *Sweep v. Lear Jet Corp.*, 412 F.2d 457, 461 (5th Cir.1969). "Hence," teaches the Supreme Court, "the collateral source rule traditionally does not apply to settlement proceeds." *Id.*

Second, this information is directly relevant to two issues in the case: (a) to rebut Plaintiff's above-described claims that Robinson was negligent for not recognizing AKJ's alleged financial problems and purported insolvency; and (b) it is necessary to help Robinson prove that, on the date it booked the subject load, AKJ had valid insurance—one of the selection criteria employed by Robinson. The amount of AKJ's policy is also relevant because Federal Guidelines require carriers to have a minimum of $750,000 in insurance, and

5

this proves that AKJ had 25% more than the required minimum—a fact that tends to disprove Plaintiff's claim that AKJ was essentially insolvent.

Third, the probative value of these facts far outweighs any prejudice to Plaintiff that he may wish to assert under Fed. R. Evid. 403. Here, the facts are being presented solely to rebut evidence offered by the Plaintiff to prove Robinson's alleged negligence in assigning the subject load to AKJ, which is based upon evidence regarding AKJ's alleged lapses in insurance coverage, and other purported financial problems. *See infra*.

For all these reasons, Robinson requests that the Court take judicial notice of the above-referenced facts from its own records.

## CONCLUSION

For the foregoing reasons, Robinson asks that is motion be granted.

Respectfully submitted,

C.H. ROBINSON WORLDWIDE, INC.,
By counsel,

 **/s://Robert Michael Doherty, Esq.**

Paul C. Kuhnel (VSB #28151)
Robert Michael Doherty (VSB #43997)
**WOOTENHART PLC**
707 S. Jefferson Street, Suite 300
P. O. Box 12247
Roanoke, VA  24024-2247
(540)343-2451
(540)345-6417 (facsimile)

**Counsel for the Robinson Defendants**

6

## CERTIFICATE

I hereby certify that I electronically filed the foregoing with John F. Corcoran, Clerk, U. S. District Court, using the CM/ECF system which will send notification of such filing to the following on this **17th** day of **April, 2008**:

Gary C. Hancock, Esq.
Timothy E. Kirtner, Esq.
Gilmer, Sadler, Ingram, Sutherland & Hutton
65 East Main Street
P. O. Box 878
Pulaski, VA 24301

Byron R. Shankman, Esq.
P. O. Box 1859
Dublin, VA 24084

    **Co-Counsel for the Plaintiff**

                                                  **/s:// Robert Michael Doherty, Esq.**

s:\robinson_ch\19765\motion in limine no 2--motion.doc4/17/2008rmd

7

Case 7:06-cv-00547-GEC-mfu   Document 100   Filed 04/17/08   Page 7 of 7   Pageid#: 1634