| | |
|---|---|
| WINFORD DALLAS JONES, | : |
| Plaintiff | : |
| v. | : |
| C. H. ROBINSON WORLDWIDE, INC., *et al.*, | : |
| Defendants/Third Party Plaintiffs | : |
| | : Case No. 7:06-cv-00547 |
| v. | : |
| AKJ ENTERPRISES, INC., d/b/a Unlimited Express | : |
| and | : |
| ELSON BOLAR | : |
| and | : |
| DIONNIE BOLAR, | : |
| Third Party Defendants. | : |

## MOTION TO COMPEL DISCOVERY
## AND MOTION FOR SANCTIONS

**COMES NOW** Plaintiff, Winford Dallas Jones, by counsel, and in support of

his Motion states as follows:

1. This Motion addresses two separate categories of discoverable information that have not been provided to Plaintiff. In the first instance, there is discoverable information that Defendant has been ordered to produce pursuant to this Court's Order entered the 13th day of March, 2008. The other category of information includes documents that were produced in response to Requests for Production served by Plaintiff and to which Requests incomplete production has clearly been made.

## DOCUMENTS WHICH THE COURT ORDERED DEFENDANT TO PRODUCE

2. This Court's Order of March 13, 2008, required Defendant to produce documentation from its computer systems relating to Bolar Trucking Express, Inc. ("Bolar Trucking") and AKJ Logistics, LLC from January 1, 1999, through December 31, 2005. Plaintiff's counsel did receive some documents in response on or about March 24, 2008; however, Plaintiff's counsel noted a surprising lack of information concerning Bolar Trucking, the entity that was a predecessor to AKJ Enterprises, Inc. ("AKJ"), the unfit and unsafe motor carrier in this case.

3. Plaintiff's counsel communicated with defense counsel and inquired as to whether there would not have been additional records in Defendant's "Express System" or an older computer system known as Bronco. Plaintiff's counsel was advised that it was defense counsel's understanding that records prior to 2002 had not been retained. No response was ever formalized in writing for the benefit of the Court, and Plaintiff's counsel continued to inquire, asking that this

response be formalized on behalf of C. H. Robinson. A copy of Plaintiff's counsel's letter of April 14, 2008 is attached hereto as Exhibit 1. Plaintiff's counsel has now received a voice mail message from defense counsel indicating that they do not believe they are required to produce anything else under the Federal Rules. That voice mail seems to reference three grounds for Defendant's decision not to produce additional documents: 1) that Plaintiff's Requests were "very, very broad;" 2) that there was a prior agreement between counsel to produce documents within specific time frames; and 3) that Plaintiff has not filed a Rule 56(f) Affidavit with regard to these documents, as a basis for producing no further documentation.[1]

4. The first two reasons are easily addressed because they pre-dated the Court's Order. As to the broadness of the Requests, any such issues were addressed by the Court's Order, which required production. Plaintiff's counsel cannot see how any such objections survive the Court's Order. With regards to agreements between counsel, it is true Plaintiff's counsel agreed to refine Plaintiff's Requests to address specific timeframes and did so in Plaintiff's Motion to Compel, in fact refining those timeframes further in Plaintiff's Amendment to Motion to Compel. However, the issue now is whether Defendant has produced all the

---

[1] Plaintiff's counsel is reluctant to allude to voice mail messages and other personal communications between Plaintiff's counsel and defense counsel in this Motion, as all those communications throughout the life of this case have been professional and courteous, and counsel does not now wish to change the tone of those communications. However, given the rapidly approaching trial date and the fact that Defendant's reasons for the limitations in its responses has been communicated in this manner, Plaintiff's counsel cannot see that he has any choice but to do so.

3 of 14

Case 7:06-cv-00547-GEC-mfu   Document 104   Filed 04/21/08   Page 3 of 14   Pageid#: 1667

documents responsive to this Court's Order. The Court fashioned a different remedy from that requested by the Plaintiff, and it is that remedy Plaintiff seeks to enforce.

5. To Plaintiff's counsel's understanding, the Defendant has at this time decided that it is not under an obligation to produce this documentation based upon the theory that Plaintiff's filing of Summary Judgment briefs, which admittedly contain a vast amount of evidence in support of Plaintiff's claims, somehow belies Plaintiff's need for and/or the relevancy of the information requested by the Plaintiff and ordered produced by the Court. Again, Plaintiff's counsel is at a loss to understand how that fact mitigates Defendant's failure to produce documents this Court ordered Defendant to produce.

6. As an additional matter, this Court ordered Defendant to produce all e-mail records relative to Bolar Trucking, AKJ Enterprises and AKJ Logistics from January 1, 1999 through December 31, 2005. Although Plaintiff is mindful of Defendant's pending Motion for Reconsideration in respect of the emails that C. H. Robinson has been ordered to produce in this case, Plaintiff notes that Defendant did not file its Motion until March 24, 2008, some fourteen days after the hearing on Plaintiff's First Motion to Compel, where the Court orally informed Defendant of its ruling. Plaintiff anticipates that C. H. Robinson will attempt to argue at the hearing on its Motion for Reconsideration that there would not be time to comply with the Court's ruling before trial, even if its motion were denied. Plaintiff

respectfully submits that, if Defendant has done nothing whatsoever to comply with the Court's Order in respect of the emails at issue, such that it cannot comply with the Court's Order in the event that its Motion for Reconsideration is denied, then Defendant is the author of that dilemma and Plaintiff should be entitled to sanctions in that event for Defendant's failure to comply with the Court's Order.

**REQUESTS FOR PRODUCTION FOR WHICH AN
INCOMPLETE RESPONSE HAS BEEN MADE BUT WITH
REGARD TO WHICH NO COURT ORDER HAS BEEN ENTERED**

7. The next category of information addressed in this Motion is documentation relating to C. H. Robinson's T-Chek system.[2] The T-Chek system allows carriers to receive advances from C.H. Robinson against the fee the carrier is to receive from Robinson for hauling a particular load. T-Cheks are issued for trip incidentals such as fuel and lumpers[3] and come from Robinson's own funds. (See March 13, 2008 Deposition of Bruce Johnson pages 127-135 attached hereto as Exhibit 2). It is also acknowledged by Robinson's corporate representatives that the small carriers with whom Robinson most frequently does business, of which AKJ was one, rely on these advances to "keep the wheels rolling." (See Exhibit 3, Johnson Dep. p. 134-135).

These records are relevant to two issues material to this case. First, since

---

[2] T-Chek Systems, Inc., a wholly owned subsidiary of C.H. Robinson Worldwide, Inc. T-Chek provides a menu of services, including the T-Card, which "enables drivers on the road to pay for fuel, repairs, scales, hotel rooms, receive cash, and other necessities at retail fueling and terminal locations across North America."

[3] "Lumper" is the name given to a person who loads or unloads a truck.

Plaintiff, in addition to negligent hiring and negligent entrustment claims, also alleges vicarious liability on the part of C.H. Robinson, Plaintiff is entitled to present evidence of C.H. Robinson's level or power of control over AKJ and its drivers. The frequency and use of T-Cheks by AKJ speaks to that issue, as it shows AKJ's dependency on the special programs offered by C. H. Robinson, such as T-Chek. For example, based upon the documentation already provided, it is known that there was at least one occasion when an AKJ driver indicated that he could not move his truck until he received a T-Chek for fuel. See Lines 102-105, and 319 of Spreadsheet attached to Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment as Exhibit 18 – a copy of that specific page of the Exhibit is attached hereto as Exhibit 4.

In addition, it has been acknowledged by C.H. Robinson's corporate representatives, and their expert, that the cash flow problems of carriers may be reflected in their safety practices and specifically in the manner in which they maintain their vehicles and the quality of drivers they hire. (See Johnson Dep. p. 207-208, attached as Exhibit 5; Deposition of Annette Sandberg p. 61, l. 1-8, attached as Exhibit 6). Clearly, the extent to which AKJ needed advances from C. H. Robinson just to put fuel in their trucks speaks volumes as to AKJ's financial condition.

8. Plaintiff propounded several Requests for Production to which T-Chek records would have been responsive, specifically Request No. 8 of Plaintiff's First Requests for Production of Documents, and Requests Nos. 3 and 21 of

Plaintiff's Second Requests for Production of Documents. (Those Requests are attached hereto collectively as Exhibit 7.) Plaintiff learned while conducting depositions in Minneapolis of the Defendant's corporate representatives that the T-Chek records were contained in the "Express" computer system from which voluminous records had already been produced to the Plaintiff. In a letter dated March 19, 2008, to defense counsel, Plaintiff's counsel noted that such documentation would have been responsive to the specific Requests attached to this Motion and inquired as to why that information would have been culled out of the documentation produced from the Express System. (See Exhibit 8).

9. After other inquiries had been made concerning the status of this information, Defendant finally produced on March 27, 2008, the T-Chek records attached hereto as Exhibit 9. After having received these documents in response to their Requests, Plaintiff's counsel compared those records to certain spreadsheet data, derived from Defendants' Express System records, that had been previously provided to the Plaintiff. When comparing the detailed T-Chek records provided on March 27, 2008, to the other spreadsheet data from Defendant's Express System records, Plaintiff's counsel was able to identify, based on comparing the itemized T-Chek information with the spreadsheet data, nearly 100 loads in which the spreadsheet data referenced T-Cheks (without any specific detail) having been issued and for which no detailed T-Chek records were produced by Defendant. By letter dated April 10, 2008, Plaintiff's counsel wrote to defense counsel pointing out the discrepancy and providing a summary list of those loads pulled by AKJ in

which Plaintiff could verify that some form of T-check was issued but for which no detailed T-check records were provided. A copy of that letter is attached as Exhibit 10. On April 14, 2008, Plaintiff's counsel, again by letter, inquired of defense counsel as to the discrepancy in the T-check production. (See Exhibit 1).

10. On the afternoon of April 17, 2008, Plaintiff's counsel received a voice mail message in which defense counsel indicated that they did not believe that Plaintiff's prior discovery requests were sufficiently specific enough to entitle Plaintiff to the production of the T-Chek records, and also again referenced that Plaintiff had not filed a Rule 56(f) Affidavit in connection with those records and in opposition to Defendant's Motion for Summary Judgment.

11. Defendant has not formally objected to producing these records in relation to AKJ Enterprises, Inc. (See attached hereto as Exhibit 7 Defendant's responses to the relevant requests for production).[4] Defendant's reasons for refusing to produce the complete T-Chek records apparently are two-fold. First, it seems to be C. H. Robinson's view that Plaintiff's requests were too broad and unspecific to alert Defendant to the fact that such records would be responsive. This position is perplexing in several respects. As already noted, Defendant did not object to the Requests as being vague or otherwise difficult to interpret. Moreover, based upon the Rule 30(b)(6) testimony of Bruce Johnson, this T-Chek

---

[4] In response to Request No. 21 of Plaintiff's Second Requests for Production, Defendant did object to producing these records with respect to AKJ. It should also be noted that, although T-Chek records are not specifically addressed at the prior hearing, subparagraph 1 of the Court's March 13, 2008 Order would seem to encompass these records as well.

information is contained in and accessible through Defendant's Express System which is the database and/or computer system in which the data previously produced to Plaintiff in spreadsheet form, namely the Problem Log Data, Driver Log Data and Load Data concerning AKJ, was contained and from which all the Problem Log Data, Driver Log Data and Load Data were produced to Plaintiff. Indeed, some of the spreadsheet data from Defendant's Express System produced to Plaintiff included references to T-Cheks being issued, which is precisely how Plaintiff's counsel determined that there were discrepancies and insufficiencies in Defendant's production with regard to T-Chek records. Defendant has never advanced any reason as to why responsive information from the same computer database and/or system was omitted from its initial production from the Express System.

Defendant has also alluded to the fact that the Plaintiff did not file a Rule 56(f) affidavit with regard to these records, apparently as some indicator that Plaintiff does not need these records. What Defendant failed to acknowledge is that, in Plaintiff's Brief in Support of Motion for Partial Summary Judgment, Plaintiff did allude to these records and his expectation of receiving them after the filing of his Motion. (See Brief in Support of Plaintiff's Motion for Partial Summary Judgment pp. 32, footnote 46).[5] Furthermore, of course, a Rule 56 (f) affidavit is not a remedy available to a party *seeking* summary judgment.

---

[5] Mindful that the Court can access the Memorandum on-line, Plaintiff has however attached copies of the relevant pages for the Court's convenience.

It is true that Plaintiff strongly believes that the evidence already in the record is sufficient not only to defeat Defendant's Motion for Summary Judgment but also to support an entry of summary judgment on behalf of Plaintiff. The current strength of Plaintiff's case does not make the T-Chek records any less relevant or make them any less responsive to Plaintiff's requests for production, nor does it obscure the glaring discrepancies between Defendant's initial document production and its most recent production of T-Chek records. As described above, the T-Chek records are relevant to two important issues in this case. They are not only "reasonably calculated to lead to the discovery of admissible evidence" but are, in and of themselves, relevant and admissible. The records were responsive to multiple Requests for Production. Finally, the production Defendant has made is, on its face, by comparison with other documents produced by the Defendant, incomplete. There is therefore no reasonable basis for Defendant's refusal to produce the additional T-check records.

## REMEDY

12. As the Court is well aware, by the time of the hearing on this motion, and other discovery motions, the trial date will be less than two weeks away. In addition, the cross-motions for summary judgment will be argued to the Trial Judge on April 28, 2008. As a consequence of these circumstances, Plaintiff is compelled to request that the Court provide remedies that may affect the

admissibility of certain evidence at trial and, potentially, the positions that Defendant may take at trial.[6]

13. With regard to T-Chek records, Plaintiff requests that the Court enter an order requiring all T-Chek records pertaining to AKJ be produced immediately and prohibiting Defendant from making any objection to the admissibility of those records at trial except an objection as to the relevance of the records. In the event that the Court compels production of these records and Defendant is unable to produce the records in a timely manner prior to trial, Plaintiff reserves the right to request, pursuant to Rule 37(b)(2)(i) of the Federal Rules of Civil Procedure, that the Trial Judge grant summary judgment to Plaintiff, if he has not already done so, on the following issues: 1) that Defendant exercised sufficient financial control over AKJ Enterprises so as to make Defendant vicariously liable for AKJ's negligence; and 2) that Defendant was on actual notice, as of September 12, 2004, that AKJ's financial status was impaired.

14. As to records relating to Bolar Trucking prior to 2001[7], Plaintiff is similarly compelled to request remedies that may affect the admissibility of evidence at trial and the positions Defendant can take at trial. To the extent

---

[6] Plaintiff is mindful that certain of the remedies requested herein may fall within the purview of the Trial Judge. Plaintiff however understands the Honorable Magistrate Judge to have the authority, pursuant to the Trial Judge's general referral of discovery matters to the Magistrate, to make a recommendation to the Trial Judge as to what remedies may be appropriate, to the extent those remedies cannot be granted by the Magistrate Judge himself.

[7] These being records Defendant has already been ordered to produce.

additional records, responsive to the Court's order exist, Plaintiff requests that the Court enter an order: 1) requiring the Defendant to produce immediately all records responsive to the Court's prior order and which have not already been produced; and 2) prohibiting the Defendant from making any objection to the admissibility of those records except objections to relevance. <u>See</u> F.R.C.P. Rule 37(b)(2)(ii). Plaintiff further reserves the right, pursuant to Rule 37(b)(2)(i), to the extent Defendant is unable to produce any responsive records in a timely manner prior to trial, to request that the Court grant summary judgment, if it has not done so already, on the issue of Robinson's knowledge that Bolar Trucking's history with Defendant demonstrated that Elson and Dionnie Bolar, the principals of both AKJ Enterprises, Inc. and Bolar Trucking Express, Inc., managed Bolar Trucking in an unsafe and incompetent manner. In the alternative, Plaintiff reserves the right to request that the Court grant a jury instruction allowing the jury to presume these facts.

15. Finally, in respect of the emails that C. H. Robinson has been ordered to produce, Defendant has filed a Motion to Reconsider, objecting to the ordered production on the grounds of the expense and burdensomeness of the production. Plaintiff has responded to Defendant's Motion and Defendant has filed its Reply to that Response. Plaintiff will not take this opportunity to present additional legal argument outside the briefing schedule provided by the Scheduling Order. Plaintiff does think it appropriate, however, to make clear the additional relief that Plaintiff will seek if the Court denies, in part or in full, Defendant's Motion to

Reconsider. In that circumstance, Plaintiff will request that the Court enter an order prohibiting Defendant from objecting to the admissibility of those documents except for objections to relevance. To the extent those records cannot be produced in a timely manner prior to trial, Plaintiff will ask, pursuant to Rule 37(b)(2)(i and ii), that summary judgment be granted, to the extent it has not already been, as to Defendant's knowledge of the poor safety practices of AKJ Enterprises, or , in the alternative, that the Trial Judge instruct the jury to presume that the subject e-mails, if produced, would demonstrate that fact.

**WHEREFORE**, Plaintiff requests that the Court enter an Order compelling discovery and further granting relief in the form of limitations on the objections Defendant may make to the requested information, all as described above, along with an award of Plaintiff's costs and attorneys' fees in this behalf expended.

Respectfully submitted,

**WINFORD DALLAS JONES**

s/      Gary C. Hancock
            Of Counsel

Gary C. Hancock, VSB #16704
Timothy E. Kirtner, VSB #36938
Ann L. Bishop, VSB #43847
GILMER, SADLER, INGRAM, SUTHERLAND & HUTTON
P. O. Box 878, 65 East Main Street
Pulaski, VA  24301
540/980-1360 (telephone)

540/980-5264 (facsimile)

Byron R. Shankman, VSB #13485
P. O. Box 1859
Dublin, VA 24084

Counsel for Plaintiff, Winford Dallas Jones

# CERTIFICATE OF SERVICE

I do hereby certify that I have this 21st day of April 2008 electronically filed the foregoing Motion to Compel and for Sanctions with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Paul C. Kuhnel, Esquire, Wooten Hart PLC, P.O. Box 12247, Roanoke, Virginia 24024-2247, Counsel for C.H. Robinson Worldwide, Inc.; C. H. Robinson Company; C. H. Robinson Company Inc.; C. H. Robinson Company LP; C. H. Robinson International, Inc.; C. H. Robinson Operating Company LP; and C. H. Robinson Transportation Company Inc.

s/ Gary C. Hancock
Gary C. Hancock
Gilmer, Sadler, Ingram, Sutherland & Hutton
P. O. Box 878, 65 East Main Street
Pulaski, VA 24301
540/980-1360 (telephone)
540/980-5264 (facsimile)
ghancock@gsish.com