# GILMER, SADLER, INGRAM, SUTHERLAND & HUTTON, L.L.P.
ATTORNEYS AND COUNSELLORS AT LAW
MIDTOWN PROFESSIONAL OFFICE BUILDING
65 EAST MAIN STREET
POST OFFICE BOX 878
PULASKI, VIRGINIA 24301

TELEPHONE (540) 980-1360
FACSIMILE NO. (540) 980-5264

TIMOTHY E. KIRTNER
Extension 15
tkirtner@gsish.com



April 14, 2008

**Via Facsimile: (540) 345-6417**
(Hard copy to follow)

Robert M. Doherty, Esquire
Wooten Hart PLC
P. O. Box 12247
Roanoke, VA 24024-2247

    Re:   *Jones v. D'Souza, et al.*

Dear Mike:

    I write to address the status of a couple of discovery issues that remain outstanding. First, I believe Ann Bishop had e-mailed you on a couple of occasions concerning the lack of any "load data," "problem log," or "driver log sheets" for Bolar Trucking. Our current understanding is that C. H. Robinson's position is that the Express database does not "go back far enough" to have such information concerning Bolar Trucking. Based upon our understanding that C. H. Robinson purchased American Backhaulers (and thus acquired the Express system) in 2000, we have some understanding of why there would not be Express data on Bolar prior to the acquisition of American Backhaulers. However, since we know (based upon the deposition of Mike Atkinson) that former American Backhaulers employees who came to C. H. Robinson simply continued to use the Express system, it is difficult to understand why there would be no Express "load data," "problem log data," or "driver log data" sheets in the 2000 to 2001 timeframe. Moreover, it is not our understanding of the Judge's ruling that he limited the information to be produced to information in the Express system. Would not the Bronco system, to the extent it was used by C. H. Robinson employees prior to 2001 have some information in the nature of load data, problem log data, or driver log data that would have been responsive to the Judge's order? If the answer to these questions is simply that C. H. Robinson's document retention policy is such that no such records exist prior to 2001, then your client needs to be prepared to put that response in writing; otherwise, I fear we are left in the position of having to add another motion to the growing list of motions pending before the Court.

    Also, we still have not received an explanation as to why there were almost 100 loads involving some form of T-check disbursement that were not referenced in the "T-check production" provided by your clients. I did receive your e-mail and appreciate that you are following up with your client concerning this discrepancy. I also certainly

understand that you are addressing a number of other issues pertaining to this case; however, we are now only three weeks prior to the trial date and seem to have identified some glaring omissions in information that should have, in our view, been produced in response to our First and Second Requests for Production of Documents. Again, I have no interest in filing additional motions that you, I and Judge Urbanksi are going to have to address. However, the information requested is relevant, and it is impossible for us to ignore such glaring discrepancies between the Express system data provided and your clients' "T-check production." We urgently need some response by Thursday, April 17. If additional motions are necessary, we would anticipate asking that they be heard on April 24, which is the date on which we already have a hearing scheduled with Judge Urbanksi.

I look forward to hearing from you.

Sincerely yours,

Timothy E. Kirtner

TEK/bst