# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| **WINFORD DALLAS JONES,** | : |
| | : |
| **Plaintiff** | : |
| | : |
| **v.** | : |
| | : |
| **C. H. ROBINSON WORLDWIDE, INC.,** *et al.,* | : |
| | : |
| **Defendants/Third Party Plaintiffs** | : |
| | : **Case No. 7:06-cv-00547** |
| **v.** | : |
| | : |
| **AKJ ENTERPRISES, INC., d/b/a** | : |
| **Unlimited Express** | : |
| | : |
| **and** | : |
| | : |
| **ELSON BOLAR** | : |
| | : |
| **and** | : |
| | : |
| **DIONNIE BOLAR,** | : |
| | : |
| **Third Party Defendants.** | : |
| | : |

## BRIEF IN OPPOSITION TO ROBINSON'S MOTIONS *IN LIMINE*

**COMES NOW** Plaintiff, Winford Dallas Jones, by counsel, and files this Brief

in Opposition to Defendant Robinson's Motions *In Limine.*

# INTRODUCTION

Defendant C. H. Robinson Worldwide, Inc. ("C. H. Robinson") has filed three separate motions *in limine*, one filed on April 9, 2008; one on April 17, 2008; and one on April 18, 2008. Plaintiff will endeavor, for the convenience of all involved, to address each of the foregoing motions in the brief below. Plaintiff requests that this single brief be deemed his written opposition to each of the foregoing motions *in limine*.

As the Court well knows, both Plaintiff and Defendant C. H. Robinson Worldwide, Inc. ("C. H. Robinson") have filed competing motions for summary judgment and both sides have now had the opportunity to fully respond to each other's briefs, as well as to reply to any opposing memoranda. Plaintiff believes that a review of the summary judgment briefs in this case will give the Court a clear picture of the parties' respective positions in this case for purposes of considering the motions *in limine* filed by both parties.

As Plaintiff has also pointed out to the Court in his reply brief, there are certain elements of Plaintiff's cause of actions for negligent hiring and negligent entrustment that have already been admitted by C. H. Robinson in its Third-Party Complaint against AKJ Enterprises, Inc. ("AKJ"), the negligent motor carrier involved in this case, such as the fact that AKJ was negligent and hired incompetent drivers for the subject load, and the fact that this negligence caused the subject collision. These admissions really only leave in dispute, for purposes of Plaintiff's negligent hiring and negligent entrustment claims, the issues of whether C. H. Robinson has a duty to exercise reasonable care in the selection of its motor carriers, whether it failed to exercised reasonable care, and whether the consequences of that

Case 7:06-cv-00547-GEC-mfu   Document 107   Filed 04/22/08   Page 2 of 23   Pageid#: 1732

failure to exercise reasonable care, i.e., the subject collision, were reasonably foreseeable. All of this notwithstanding, however, Plaintiff believes that he has the right to also present to the Court his evidence in support of those elements already admitted by Defendant, in the event that there is any effort on the part of Defendant to maneuver around those admissions.

As Plaintiff has set forth in his Reply Brief in Further Support of his Motion for Partial Summary Judgment, Plaintiff believes that the elements for a cause of action of negligent hiring of an independent contractor, under Virginia law, are: (1) the independent contractor hired by the defendant was incompetent and unsafe to perform work that would involve a risk of physical harm to third persons, such as the plaintiff, unless skillfully and carefully done; (2) the employer failed to exercise reasonable care in selecting the contractor; (3) exercise of reasonable care in hiring the contractor would have revealed that the contractor was incompetent and unsafe and put the employer on reasonable notice of the threat to third persons posed by the contractor; (4) the contractor performed the work in an incompetent and unsafe manner and in a way that should have been reasonably foreseeable to the employer; (5) the incompetent and unsafe performance of the work by the contractor led to the physical harm suffered by the plaintiff; and (6) the defendant's initial negligence in hiring the incompetent independent contractor was, under the foregoing circumstances, the proximate cause of the plaintiff's injuries.

Similarly, Plaintiff has also previously stated in his reply brief that the elements of a cause of action for negligent entrustment are: (1) the activity at issue was within the control of the defendant; (2) the third person to whom the activity is entrusted by the defendant has some known or reasonably discoverable quality,

characteristic, or propensity that makes it reasonably foreseeable that the third person will engage in the activity in a manner that posses an unreasonable risk of harm to others; (3) the defendant knew or should have known of the quality, characteristic, or propensity; and (4) due to the quality, characteristic, or propensity, the third person did, in fact, engage in the activity in an unsafe manner and caused harm to the plaintiff, all of which was proximately caused by the defendant's initial negligence in entrusting the activity to the third person.

Plaintiff respectfully submits that reference to the foregoing elements will be helpful in evaluating C. H. Robinson's various motions *in limine*, as well as the arguments set forth in the parties' respective briefs. In turn, to the extent that the Court's decisions in respect of the parties' respective summary judgment motions may involve any of the facts or categories of fact that Defendant seeks to exclude through the filing of its various motions *in limine*, Plaintiff asks that the Court consider the arguments set forth herein in determining whether to rely upon such facts on summary judgment.

## ARGUMENT

## I. DEFENDANT'S FIRST MOTION IN LIMINE ERRONEOUSLY SEEKS TO EXCLUDE PATENTLY RELEVANT AND ADMISSIBLE EVIDENCE.

In Defendant's first motion *in limine*, C.H. Robinson seeks to exclude the following information: (1) any evidence relating to predecessor and/or successor entities to AKJ Enterprises, Inc.; (2) any evidence of events that occurred after September 12, 2004; (3) any evidence of prior problems or conduct by AKJ Enterprises, Inc., other than evidence of crashes and/or personal injuries; (4) any

evidence or testimony by Virginia State Trooper K. Scott Clark regarding the cause of the September 12, 2004 crash at issue in this case; and (5) any references and/or evidence as to Robinson's overall revenue, monetary allocation, or profit per load. Many of the specific items of evidence involved have also been addressed somewhat in the parties' respective summary judgment briefs.

## A.     BOLAR TRUCKING EXPRESS, INC. AND AKJ LOGISTICS, LLC:

As Defendant acknowledges in its brief in opposition, Bolar Trucking Express, Inc. was the predecessor entity to AKJ Enterprises, Inc., both entities having been operated by the same principals from the same physical address and both entities having hauled loads for C. H. Robinson. AKJ appears to have begun working for C. H. Robinson shortly after Defendant's business relations with Bolar Trucking Express, Inc. ("Bolar Trucking") ceased. Similarly, after AKJ Enterprises, Inc. went out of business, it was reconstituted as AKJ Logistics, LLC, again by the same principals from the same physical address. AKJ Logistics, LLC appears to have only functioned as a going concern for a matter of months, during which time it also hauled loads for Defendant C. H. Robinson.

In respect of Bolar Trucking, C. H. Robinson had actual knowledge of the relationship between Bolar Trucking and AKJ Enterprises, Inc. at the time that it first contracted with AKJ in April of 2001, as shown by a hand-written notation on the "master" contract carrier agreement between Defendant and AKJ expressly stating on page 10 of that document that "Bolar Trucking Express [is] now Unlimited Express."[1] As such, any knowledge that C. H. Robinson had as to the safety practices

---

[1] "Unlimited Express" was a name under which AKJ Enterprises, Inc. did business.

of Bolar Trucking would be relevant as to whether it was reasonable for C. H. Robinson to ultimately assign the subject load to AKJ. In fact, in his deposition on March 13, 2008, Bruce Johnson, manager of carrier services for C. H. Robinson and the company's Rule 30(b)(6) representative, testified that he would consider information as to the manner in which the principals of Bolar Trucking ran that company to be instructive as to how they would run AKJ Enterprises, Inc. (See Exhibit 24 to Plaintiff's Brief in Support of his Motion for Partial Summary Judgment, Deposition of Bruce Johnson, March 13, 2008, page 189).[2] Furthermore, Plaintiff does not believe that information concerning Bolar Trucking would be "too remote in time"[3] to be relevant to the issues at hand, where Plaintiff's evidence indicates that Bolar Trucking had severe safety issues, as well,[4] and there is no indication that the principals of Bolar Trucking, when they reformulated this entity as AKJ Enterprises, Inc., had any significant alterations to their business practices in respect of the successor entity.

In respect of AKJ Logistics, LLC, Plaintiff understands that this entity began working with C. H. Robinson after the subject accident. The only point that Plaintiff

---

[2] Plaintiff notes that C. H. Robinson brought its Third-Party Complaint against not only AKJ Enterprises, Inc., but also against its principals, Elson and Dionnie Bolar, clearly peering through the corporate veil to do so. It is a contradiction for Defendant to assert on the one hand that the "corporate form" supersedes all practical realities for Plaintiff's purposes, and then argue, on the other hand, that the same corporate formalities are of no importance when it is Defendant that seeks to look beyond them. Plaintiff further notes that C. H. Robinson relied upon the same type of argument in respect of Plaintiff's first motion to compel, which was soundly rejected by the magistrate judge.

[3] Plaintiff does not concede that this "too remote in time" analysis accurately reflects the law applicable in this case for all the reasons set forth in Plaintiff's Reply Brief in Further Support of his Motion for Partial Summary Judgment.

[4] See for example, crash report for Bolar Trucking Express, Inc. from March of 2001, acquired through a FOIA request to the FMCSA, and authenticated by the agency, attached hereto as Exhibit 59 to Plaintiff's Reply Brief in Further Support of his Motion for Partial Summary

seeks to make by reference to AKJ Logistics, LLC is to note that this successor entity, which was essentially nothing more than a reformulation of AKJ Enterprises, Inc., appears to have been unable to survive financially after C. H. Robinson placed it on Defendant's "Do Not Use" list in 2005, the decision to place AKJ Logistics, LLC on this list actually resulting from the refusal of Elson Bolar, one of the principals of both entities, to reimburse Defendant in respect of the subject collision which gives rise to the present case. Plaintiff believes the financial failure of AKJ Logistics, LLC after Defendant removed its patronage is evidence of how dependent the various reformulations of the same trucking company were on C. H. Robinson's business, which Plaintiff believes is relevant to the issue of how much control Defendant possessed over AKJ Enterprises, Inc. for purposes of evaluating whether AKJ Enterprises, Inc. was an employee of Defendant. Plaintiff does not intend to offer any evidence concerning AKJ Logistics, LLC and its apparent safety issues for purposes of establishing the incompetence of AKJ Enterprises, Inc.

**B.**     **EVENTS OCCURRING AFTER SEPTEMBER 12, 2004:**

As an initial matter, C. H. Robinson has not once, in either its motion or its memorandum in support, even hinted as to what specific items of evidence it seeks to exclude. Clearly, Plaintiff can conceive of events theoretically occurring after September 12, 2004, that would be irrelevant because they happened after the subject collision, but Plaintiff can also conceive of events theoretically occurring after September 12, 2004, that would be relevant for purposes of the Court's consideration of the various claims now pending before the Court. Plaintiff does not believe that

---

Judgment.

he should be required to comb through the abundance of evidence compiled in this case to identify for Defendant all of the specific items of evidence covered by C. H. Robinson's motion *in limine* and explain why each and every one is relevant and admissible, with the risk of inadvertently failing to mention any particular item and being deemed somehow to have conceded that item. Respectfully, this is Defendant's motion, and it is Defendant's burden to adequately identify the specific items of evidence at issue for both Plaintiff and the Court with the requisite specificity. Moreover, the Court's Scheduling Order provides that a supporting brief must accompany all pretrial motions, and Plaintiff respectfully submits that Defendant's memorandum does not adequately brief this particular aspect of Defendant's motion to comply with the aforesaid Scheduling Order.

### C.     PRIOR INCIDENTS OF UNSAFE PRACTICES FOUND IN C. H. ROBINSON'S INTERNAL RECORDS:

Although C. H. Robinson again does not specify which "prior problems, incidents or conduct" of AKJ are at issue for purposes of its motion *in limine*, Plaintiff will presume for purposes of his response, based upon similar discussions in Defendant's prior summary judgment memoranda, that Defendant intends to refer to the numerous incidents of driver and vehicle-related problems found in C. H. Robinson's internal, Express System records and which comprise a part of C. H. Robinson's usual business records.[5] (See Defendant's Memorandum in Support of its

---

[5] Although Defendant does not clearly reference Plaintiff's evidence concerning AKJ's poor financial status in its motion *in limine*, AKJ's financial struggles could potentially be seen as a "prior problem." To the extent C. H. Robinson intends to include this evidence in its motion, Plaintiff submits that he has made reference to AKJ's financial struggles for essentially two purposes in this case: (1) to show a circumstance that made this motor carrier vulnerable to C. H. Robinson's domination and control, for purposes of Plaintiff's vicarious liability claim and negligent hiring claim (as to AKJ, as an employee); and (2) to further speak to C. H.

Case 7:06-cv-00547-GEC-mfu   Document 107   Filed 04/22/08   Page 8 of 23   Pageid#: 1738

Motion for Summary Judgment, page 17, admitting that the following incidents were "reported to Robinson by AKJ or its drivers"). These incidents, as recited in C. H. Robinson's Opposition to Plaintiff's Motion for Partial Summary Judgment, include the following: over 22 separate incidents noted of equipment or vehicle breakdowns; two separate instances of AKJ drivers arriving at their destination without proper credentials, one such incident involving Charles Kevin Morris, the co-driver on the subject load;[6] several different instances of AKJ drivers notifying C. H. Robinson that either they or their vehicles had been pulled over by police and that they or their vehicles were being taken out of service for violations of federal safety regulations;[7] two separate instances prior to the subject collision where AKJ drivers were involved

Robinson's notice that AKJ was an unfit and unsafe motor carrier, for purposes of Plaintiff's negligent hiring and entrustment claims, in that studies have found a link between poor financial performance and poor safety performance, as a struggling motor carrier will often "cut corners" in terms of safety, as noted by Defendant's expert, Annette M. Sandberg, in her deposition. (See Exhibit 33 to Plaintiff's Brief in Support of his Motion for Partial Summary Judgment; Exhibit 52 to Plaintiff's Brief in Opposition to C. H. Robinson's Motion for Summary Judgment; and Exhibit 16 to Plaintiff's Brief in Support of his Motion for Partial Summary Judgment, Deposition of Annette M. Sandberg, March 18, 2008, pages 60-61; 123-124). Plaintiff submits that evidence of AKJ's poor financial state is relevant for both of the aforesaid purposes.

[6] Mike Atkinson, one of C. H. Robinson's Rule 30(b)(6) corporate representatives, who booked the subject load and was considered the account representative for AKJ, testified at his deposition that Morris had been the driver on another load for AKJ and C. H. Robinson, namely Load No. 20652169, which was a load that experienced problems relating to the driver's credentials. (See Exhibit 25 to Plaintiff's Brief in Support of his Motion for Partial Summary Judgment, Deposition of Michael T. Atkinson, March 6, 2008, pages 214, 223-235; Exhibit 18, lines 2280-2300).

[7] Defendant's summary judgment briefs do not address the various incidents of AKJ drivers reporting to C. H. Robinson employees that they were being taken out of service by "DOT" or some form of law enforcement agency, for violations of federal safety regulations. Plaintiff questions how a pattern of such incidents, which appeared from the Express records produced to Plaintiff to have increased in frequency in the months leading up to the subject collision, along with the frequency of a variety of safety-related problems, can fail to be proper evidence of a propensity on the part of the motor carrier that hired and managed these drivers, to operate its business in an unsafe manner.

Case 7:06-cv-00547-GEC-mfu   Document 107   Filed 04/22/08   Page 9 of 23   Pageid#: 1739

in crash while hauling C. H. Robinson loads,[8] one instance of an AKJ trailer being rejected by a customer on safety grounds; one instance of an AKJ driver simply walking off and abandoning his tractor-trailer, with keys in the ignition, along with C. H. Robinson's load; one instance of an AKJ driver disappearing with his tractor-trailer and a load worth approximately $150,000.00 for nearly a week, while multiple police departments searched for him, ultimately ending up in jail; and once instance of an AKJ driver threatening employees of one of C. H. Robinson's customers with a knife when they asked him to remove his flip-flops and put on a pair of boots (presumably for safety purposes),[9] as shown on the spreadsheet printouts attached as Exhibit 18 to Plaintiff's Brief in Support of his Motion for Partial Summary Judgment and Exhibit 24, also attached to the aforesaid brief, being deposition testimony of C. H. Robinson's Rule 30(b)(6) representative Bruce W. Johnson, pages 166-188.

Although admitting that all of the aforesaid incidents are, in fact, reflected in C. H. Robinson's usual business records, Defendant nonetheless seeks to prevent the Court from considering this information under its "close nexus" argument, on the ground that none of the incidents cited in Plaintiff's prior briefs are "substantially similar" to the incident giving rise to the present action. In other words, C. H. Robinson continues to assert that the only evidence of prior behavior on the part of AKJ or its drivers that would be admissible would be past incidents of tractor-trailer

---

[8] C. H. Robinson again suggests that Defendant cannot be deemed to have had reasonable notice that AKJ, through its drivers, might cause an accident involving personal injuries because AKJ's other two tractor-trailer accidents did not involve any known or significant personal injuries. This argument is clearly contrary to reason, as Plaintiff addresses in more detail in his brief in opposition to Defendant's motion for summary judgment.

[9] On page 6 of its memorandum in support of its motions *in limine*, Defendant anticipates that Plaintiff will offer evidence of this driver "wearing flip-flops." Although Plaintiff also questions what this choice of footwear may say about the driver involved, it was really the knife-wielding aspect of this incident that caused Plaintiff the most concern.

collisions where severe personal injuries occurred.

However, there is a marked distinction to be made between how one establishes notice of, or the existence of, a propensity, pattern, or characteristic of a person or entity, and how one establishes notice of a static or physical defect, as is found in the case relied upon by C. H. Robinson as support for its "close nexus" theory, namely *Roll 'R' Way Rinks, Inc. v. Smith*, 218 Va. 321, 237 S.E.2d 157 (1977), which concerned a defective condition at a skating rink.[10]  A propensity or characteristic may manifest itself in a multitude of different bad acts involving very different circumstances and, accordingly, may be proven by evidence of specific acts which may be somewhat factually dissimilar but which readily speak to the same propensity or characteristic from which they arose.  Clearly, the negligent hiring cases which Plaintiff has previously noted in his prior briefs not only fail to provide any support for C. H. Robinson's "close nexus" theory, but stand flatly in contradiction to this theory.  See, for example, *Interim Personnel of Central Va., Inc. v. Messer*, 263 Va. 435, 559 S.E.2d 704 (2002) (negligent hiring); *Davis v. Merrill*, 133 Va. 69, 112 S.E. 628 (1922) (negligent hiring).  Plaintiff further wishes to note that negligent entrustment cases which have previously been referenced in Defendant C. H. Robinson's memoranda in support of its previous motion to dismiss also support Plaintiff's position in this regard.  See, for example, *Kingrey v. Hill*, 245 Va. 76, 425 S.E.2d 798 (1993) (negligent entrustment); *Hack v. Nester*, 241 Va. 499, 404 S.E.2d 42 (1990) (negligent entrustment).

Specifically, Plaintiff notes that the *Roll 'R' Way Rinks* case, relied upon by C.

---

[10] C. H. Robinson also relies upon *Jones v. Ford Motor Company*, 263 Va. 237, 559 S.E.2d 592 (2002), a products liability case.  Defendant has yet to produce an actual negligent hiring or negligent entrustment case setting forth its "close nexus" theory.

H. Robinson, was concerned primarily with the remoteness of certain evidence in terms of time; however, in *Interim Personnel*, also relied upon by Defendant for its "close nexus" argument in its Memorandum in Support of its Motion for Summary Judgment, and which was in fact, actually a negligent hiring case, the Virginia Supreme Court considered, in making its decision, evidence of a DUI conviction more than eight years prior to the subject incident; a DUI conviction more than three years prior; and the employee's habitual offender designation received more than two years prior.  See *Interim Personnel*, 263 Va. at 438, 559 S.E.2d 706.  Furthermore, this evidence was clearly admitted in the *Interim Personnel* case despite the lack of a "near identity of fact patterns between the past events and the current claim." *Id.* Plaintiff submits that none of the evidence that Plaintiff expects to present in this case would relate to any incidents occurring more than three to four year prior to the subject collision, unless Defendant is made to produce further evidence as a result of one of Plaintiff's motions to compel.

As an additional matter, in *Davis*, cited previously herein, the Virginia Supreme Court found the employer in that case liable under a negligent hiring theory, based in part on its consideration of the plaintiff's evidence that the employee had been discharged by the same employer "many years ago" for drunkenness. *Id.*, 133 Va. at 78-80, 112 S.E. at 631.  The Virginia Supreme Court further noted that the employee's supervisor "made no inquiry of anyone else concerning [the employee's] past record, habits or general fitness for the position" and that, had the supervisor looked up the employee's record, showing his discharge for drunkenness, he would probably not have hired the employee. *Id.*  Much as occurred in the *Interim Personnel* case, cited above, the Virginia Supreme Court considered evidence of past events,

Case 7:06-cv-00547-GEC-mfu   Document 107   Filed 04/22/08   Page 12 of 23   Pageid#: 1742

such as a prior discharge for drunkenness, in reaching its determination that the employer had negligently hired the employee, and as such, clearly imposed no restrictions on the admissibility of evidence in that case in terms of proximity in time or a "near identity of fact patterns between the past events and the current claim."

Similarly, in *Kingrey v. Hill*, <u>supra</u>, the plaintiff alleged that the defendant negligently entrusted her rifle to her husband, who then fired a shot into the plaintiff's vehicle when he inadvertently crossed onto defendant's property. In considering the evidence presented in that case, the Virginia Supreme Court specifically considered evidence of a prior altercation that had occurred between the defendant's husband and other trespassers upon his land which occurred more than 10 years prior, and which did not involve any firearm. *Id.*, 245 Va. at 78-79, 425 S.E.2d at 799-800. There was no suggestion in this case that the Virginia Supreme Court considered this evidence to have been improperly admitted, even though the prior bad act occurred approximately 10 years before the subject event and the subject event did not occur under "substantially the same or similar circumstances." In *Hack v. Nester*, <u>supra</u>, another negligent entrustment case also cited by C. H. Robinson in support of its previous motion to dismiss, the Virginia Court of Appeals considered as part of the evidence the negligent actor's previous DUI convictions, one occurring as much as 10 years prior to the accident giving rise to that action, and one occurring approximately 4 years prior. *Id.*, 404 S.E.2d at 45.

Based on the foregoing authority, which are actually Virginia cases involving the same or similar causes of action, Plaintiff submits that there is no such "close nexus" theory or doctrine in respect of negligent hiring and entrustment claims.[11]

---

[11] Plaintiff's evidence in this case actually has a "closer nexus" in terms of proximity in time,

Rather, the test is the same for the Court as in any other case – whether the evidence is relevant, and, therefore, admissible. In terms of relevancy, Plaintiff respectfully submits that the aforesaid incidents are not being offered by Plaintiff to prove whether or not AKJ or Arciszewski were, in fact, negligent in respect of the subject collision.[12] Rather, these incidents are being offered both as evidence of a propensity on the part of AKJ, in terms of its hiring practices and the quality and reliability of the drivers that it typically employed, as well as to show that C. H. Robinson had notice that there were serious safety issues with AKJ that needed to be addressed if it were going to continue to do business with this motor carrier. For this reason, these incidents need not be "nearly identical" to those events giving rise to the present case in order to have probative value and be admissible in this case.

### D. TESTIMONY OF TROOPER K. SCOTT CLARK:

Defendant C. H. Robinson seeks to exclude any evidence or testimony by Virginia State Trooper K. Scott Clark regarding the cause of the September 12, 2004 crash at issue in this case. As an initial matter, Plaintiff notes that he need not prove the cause of the subject collision, where C. H. Robinson has already admitted in its Third-Party Complaint against AKJ Enterprises, Inc. that AKJ's negligence in hiring incompetent drivers caused the collision that resulted in Plaintiff's significant personal injuries. That being said, however, Rule 803(8) of the Federal Rules of Evidence, would permit Plaintiff to present the Virginia State Police Division Four Crash Team Report at the trial of this case, and Plaintiff is content to rely upon this

---

identity of actors involved, and similarity of fact patterns than is found in most of the foregoing cases.

[12] These points have, of course, already been admitted by C. H. Robinson in its Third-Party Complaint.

Case 7:06-cv-00547-GEC-mfu   Document 107   Filed 04/22/08   Page 14 of 23   Pageid#: 1744

report, which Defendant's motion does not seek to exclude. Further Plaintiff does not interpret Defendant's motion as seeking to prevent Trooper Clark from testifying as to the investigation of the subject collision and his findings, and Plaintiff reserves the right to call him as a witness to testify as to such matters.

### E. C. H. ROBINSON'S PAST AND CURRENT FINANCES AND PROFITS:

Plaintiff made passing reference in his Brief in Support of his Motion for Partial Summary Judgment to C. H. Robinson's published revenues, the number of loads it claims to transport each year, and deposition testimony as to the tiny fraction of C. H. Robinson's resources that are allocated to the department ostensibly in charge of managing Defendant's relationship with its carriers, including any "monitoring" of the safety status of such carriers, to the extent any "monitoring" may have occurred, simply for the purpose of demonstrating how little of its vast resources C. H. Robinson applies toward safety. Plaintiff believes this evidence would be pertinent to contradict any arguments or claims by C. H. Robinson that it could not reasonably have done more in terms of monitoring its contract carriers. Plaintiff also intends such recitals of fact to demonstrate, from a public policy perspective, how important it is to the safety of Americans on our nation's highways that third-party logistics providers like Defendant exercise reasonable care in the selection of their motor carriers, particularly given that C. H. Robinson is literally responsible for the transport of millions of loads each year, and these numbers are rapidly growing.

### II. DEFENDANT'S SECOND MOTION IN LIMINE SEEKS TO PERMIT THE

**INTRODUCTION OF CLEARLY IRRELEVANT INFORMATION.**

Defendant's second motion *in limine*, filed April 17, 2008, seeks an affirmative ruling from the Court prior to trial as to whether C. H. Robinson can present evidence at trial of the settlement achieved in the related Interpleader action, in which Canal Insurance Company, the insurer for AKJ Enterprises, Inc., offered up its entire coverage for the Court to divide among the various claimants. Although it is not entirely clear from C. H. Robinson's memorandum in support, it appears that Defendant is asking to submit, for purposes of the liability phase of the trial of this case, evidence that (i) AKJ had $1,000,000.00 of insurance coverage in place at the time of the subject accident and (ii) Plaintiff received $756,231.10 in the settlement of the Interpleader action initiated by Canal Insurance Company.

As an initial matter, Plaintiff has never suggested that AKJ did not have insurance coverage in place at the time the subject collision occurred. Although it is difficult to say whether AKJ would have still had this insurance policy in place two or three months later, given AKJ's history of insurance cancellations, as represented in Exhibit 13 to Plaintiff's Brief in Support of his Motion for Partial Summary Judgment, there is no dispute between the parties as to whether AKJ had insurance coverage at the time of the collision. Plaintiff cannot see how this fact speaks to whether AKJ was in financial crisis, however, as AKJ was required to maintain insurance coverage in order to retain its federal operating authority as a motor carrier engaged in interstate commerce. See 49 C.F.R. §§ 387.7, 387.9. Accordingly, if AKJ had any priorities in terms of allocating whatever resources it did have, it would

have been to maintain its insurance coverage as best it could. Further, Plaintiff cannot see how having insurance coverage generates income for the motor carrier that allows it to keep its trucks in good repair, hire qualified, safe drivers, and put fuel in the tanks of its tractor-trailers. If C. H. Robinson has any evidence that AKJ's insurance policy with Canal Insurance Company was generating any sort of dividend that was being returned to AKJ and which could be used by AKJ to finance its operations, Defendant has not notified Plaintiff of this evidence.

Notwithstanding the foregoing, however, Plaintiff has no objection to C. H. Robinson entering at the liability phase of this trial evidence that AKJ had insurance coverage in place, and the amount of that coverage, to the extent relevant to whatever issues are to be presented to the jury after the Court has decided the parties' respective motions for summary judgment. Plaintiff does, however, object to the idea of C. H. Robinson submitting at the liability phase of this trial any evidence as to whether Plaintiff received any portion of AKJ's available insurance coverage, or the amount received.[13] Without question, knowing whether Plaintiff has received some compensation from another source, or the precise amount received by Plaintiff, would have absolutely no relevance to whether or not C. H. Robinson is liable for Plaintiff's injuries. Plaintiff can only imagine that Defendant may wish to persuade a jury that Plaintiff has been more than amply compensated and hope that this would impact a jury's consideration of the entirely separate issue of whether C. H. Robinson

---

[13] Plaintiff does not dispute that evidence of Plaintiff's recovery in the settlement of the Interpleader action is admissible for purposes of the damages phase of this case.

Case 7:06-cv-00547-GEC-mfu   Document 107   Filed 04/22/08   Page 17 of 23   Pageid#: 1747

was negligent and liable. This is simply impermissible, as Plaintiff is confident the Court would agree.

## III. DEFENDANT'S THIRD MOTION IN LIMINE IS WITHOUT REASONABLE SUPPORT.

C. H. Robinson's third motion *in limine*, filed April 18, 2008, seeks to exclude evidence of a compliance review conducted in May of 2004. As an initial matter, Plaintiff is wholly unaware of any compliance review having been conducted in respect of AKJ in May of 2004, and has no evidence to proffer of a compliance review from May of 2004. For this reason alone, Plaintiff believes that C. H. Robinson's third motion *in limine* should be denied.

To the extent, however, that Plaintiff is constrained to interpret Defendant's motion, and supporting memorandum, as attempting to refer to a compliance review that was conducted in respect of AKJ in May of 2003, Plaintiff must object to C. H. Robinson's attempt to exclude this portion of Plaintiff's evidence because C. H. Robinson's expert, Annette M. Sandberg, has suggested that it "doesn't mean anything." Although Plaintiff agrees that Ms. Sandberg certainly has an extensive and noteworthy background in law enforcement, Plaintiff must disagree with C. H. Robinson's rapidly developing theory that Ms. Sandberg, by virtue of less than three years as head of the FMCSA, has achieved some elevated status which entitles her to usurp the Court's role and decide what evidence is or is not relevant.[14]

In her deposition, taken by Plaintiff's counsel on March 18, 2008, Ms.

---

[14] Much as Plaintiff disagrees with the related prong of C. H. Robinson's developing theory of this case, i.e., that C. H. Robinson may blatantly ignore the ruling of a federal district judge if the FMCSA even indirectly suggests an excuse for doing so (although Plaintiff disagrees with Defendant as to what the purported "warning page" from the FMCSA's

Case 7:06-cv-00547-GEC-mfu   Document 107   Filed 04/22/08   Page 18 of 23   Pageid#: 1748

Sandberg simply stated that, from her perspective, a "proposed" rating had no "regulatory significance." Plaintiff does not dispute that the FMCSA would have taken no disciplinary action in respect of a proposed rating, at least not initially, but certainly, Plaintiff disagrees that a proposed rating has no regulatory significance. For example, a motor carrier that has received a "proposed" unsatisfactory rating has 61 days to obtain a follow up compliance review and improve its rating to at least "conditional," or otherwise the motor carrier will lose its right to lawfully haul loads in interstate commerce, and ultimately its federal operating authority will be revoked. See 49 C.F.R. § 385.13.

Regardless of the foregoing, however, Plaintiff does not seek to enter evidence as to the May 2003 compliance review for purposes of showing whether AKJ was on the verge of some adverse enforcement action by the FMCSA. Plaintiff seeks to enter this evidence to show the nature and extent of AKJ's various documented deficiencies in terms of safety, recognized and noted by the FMCSA inspector, as well as to show that AKJ violated many of the same federal safety regulations for which it was specifically cited in the May 2003 review during the two-month period between this first compliance review and the follow up review conducted in July of 2003. All of this evidence is clearly relevant to show that AKJ did have a propensity to operate its business in an unsafe manner, in contradiction of federal safety regulations, and further, that AKJ had a propensity to continue its deficient safety performance even after having been fined for such deficiencies as a result of the first review.[15]

_____

website actually means).

[15] Defendant suggests that entering evidence of proposed safety ratings is "no different than seeking to offer evidence that someone was charged with a crime for which they were not

Case 7:06-cv-00547-GEC-mfu   Document 107   Filed 04/22/08   Page 19 of 23   Pageid#: 1749

As a final matter, C. H. Robinson complains that "Plaintiff has come forward with no evidence . . . that Robinson even had a way of knowing at the time about the proposed rating of a motor carrier." Plaintiff does not disagree that C. H. Robinson would have had no reasonable means of knowing of the unsatisfactory compliance review between the conduct of the review in May of 2003 and the follow up review in July of 2003, but after the results of the July 2003 compliance review were posted and made publicly available, C. H. Robinson would have been on notice of the "conditional" safety rating received at the second compliance review, if it had happened, in 2004, to have an effective system in place for monitoring safety ratings of its current contract carriers. As both Plaintiff's expert, Dr. Thomas Corsi, and Ms. Sandberg have opined, notice of AKJ's "conditional" safety rating should have prompted C. H. Robinson to (1) look at the information generated from the carrier's compliance review and determine the areas in which the carrier was deficient; (2) consider the plan of improvement proposed by the carrier, to correct the deficiencies; and (3) consider any internal records of the company related to the carrier's safety performance; as well as potentially (4) consider the financial soundness of the carrier. (See Exhibit 16 to Plaintiff's Motion for Partial Summary Judgment, Deposition of Annette M. Sandberg, March 18, 2008, pages 122-123).[16] This investigation by C. H.

_____

convicted." Clearly, there is no comparison between these two events. AKJ was found to have violated numerous safety regulations in the first compliance review, and was even fined for several of them, and then later, at a subsequent review, although AKJ was still found to have committed numerous violations of federal safety regulations in the brief, two-month period between the two reviews, AKJ's performance at the second review was considered just good enough to improve its final rating to "conditional." There was nothing about the second compliance review that "absolved" AKJ of its prior infractions. The federal safety regulations simply permit motor carriers a second chance to improve, which is not the same thing as an acquittal of wrongdoing.

[16] C. H. Robinson wishes to essentially pick and choose from among the various opinions offered by Ms. Sandberg, suggesting that hers is the final word in terms of the use of SafeStat

Robinson, which both experts agree should have been conducted, would have logically included an investigation into the first compliance review conducted in May of 2003. That is how C. H. Robinson would have gained knowledge of this event, by exercising reasonable care.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, Plaintiff respectfully requests that the Court deny Defendant C. H. Robinson's various motions *in limine* for the reasons asserted herein.

Respectfully submitted,

**WINFORD DALLAS JONES**

s/        Gary C. Hancock
Of Counsel

Gary C. Hancock, VSB #16704
Timothy E. Kirtner, VSB #36938
Ann L. Bishop, VSB #43847
GILMER, SADLER, INGRAM, SUTHERLAND & HUTTON

---

(which testimony Plaintiff clearly interprets differently than Defendant) but then essentially ignoring or denying Ms. Sandberg's testimony as to the various steps of the investigation that she clearly testified C. H. Robinson should have conducted, which included consideration of the compliance reviews conducted in May and July of 2003. As Defendant cannot change Ms. Sandberg's testimony, it now seeks to attack Plaintiff's evidence as to what C. H. Robinson would have found, had Defendant conducted the investigation that both experts believe should have been conducted. In the end, however, Bruce Johnson, Defendant's Rule 30(b)(6) corporate representative, testified that even if he had seen all of this information, he still would have hired AKJ Enterprises, Inc. to haul the subject load. (See Exhibit 24 to Plaintiff's Brief in Support of his Motion for Partial Summary Judgment, Deposition of Bruce W. Johnson, March 13, 2008, pages 166-188).

Case 7:06-cv-00547-GEC-mfu   Document 107   Filed 04/22/08   Page 21 of 23   Pageid#: 1751

P. O. Box 878, 65 East Main Street
Pulaski, VA 24301
540/980-1360 (telephone)
540/980-5264 (facsimile)

Byron R. Shankman, VSB #13485
P. O. Box 1859
Dublin, VA 24084

Counsel for Plaintiff, Winford Dallas Jones

## CERTIFICATE OF SERVICE

I do hereby certify that I have this 22nd day of April 2008 electronically filed the foregoing Brief in Opposition to Robinson's Motions *In Limine* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Paul C. Kuhnel, Esquire, Wooten Hart PLC, P.O. Box 12247, Roanoke, Virginia 24024-2247, Counsel for C.H. Robinson Worldwide, Inc.; C. H. Robinson Company; C. H. Robinson Company Inc.; C. H. Robinson Company LP; C. H. Robinson International, Inc.; C. H. Robinson Operating Company LP; and C. H. Robinson Transportation Company Inc.

s/    Gary C. Hancock
Gary C. Hancock
Gilmer, Sadler, Ingram, Sutherland & Hutton
P. O. Box 878, 65 East Main Street
Pulaski, VA 24301
540/980-1360 (telephone)
540/980-5264 (facsimile)

Case 7:06-cv-00547-GEC-mfu   Document 107   Filed 04/22/08   Page 22 of 23   Pageid#: 1752

ghancock@gsish.com