# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| **WINFORD DALLAS JONES,** | : |
| | : |
| **Plaintiff** | : |
| | : |
| **v.** | : |
| | : **Case No. 7:06-cv-00547** |
| | : |
| **C. H. ROBINSON WORLDWIDE, INC.,** | : |
| | : |
| **Defendant** | : |
| | : |
| ——————————————————— | : |

## PLAINTIFF'S BRIEF IN OPPOSITION TO ROBINSON'S MOTION FOR JUDGMENT AS A MATTER OF LAW, OR, ALTERNATIVELY, FOR A NEW TRIAL

**COMES NOW** Plaintiff, Winford Dallas Jones, by counsel, and files this Brief in Opposition to Defendant Robinson's Motion for Judgment as a Matter of Law, or, Alternatively, for a New Trial.

## INTRODUCTION

As the Court knows, the parties have previously addressed at length many of the issues raised in Defendant's present motions in the context of the parties' respective motions for summary judgment, as well as in the course of Defendant's motions for judgment as a matter of law brought at the close of Plaintiff's evidence at trial, and again at the close of all evidence at trial. Each time, the Court, after intensive scrutiny of Plaintiff's evidence and legal arguments, denied Defendant's

motion and allowed the case to proceed.  Plaintiff cannot find in Defendant's Brief in Support of C. H. Robinson's Motion for Judgment as a Matter of Law, or, Alternatively, for a New Trial, any new legal arguments not previously presented to the Court and respectfully submits that the Court has been presented no reason to depart from its prior decisions.

## ARGUMENT

## I.  DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW SHOULD BE DENIED.

A renewed motion for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure, frequently referred to in case law as a motion for judgment notwithstanding the verdict ("judgment n.o.v."), is not favored in the Fourth Circuit.  See *Handley v. Union Carbide Corp.*, 620 F. Supp. 428, 431 (S.D. W. Va. 1985) ("Motions for judgment n.o.v. should be sparingly granted."); *Smitty Baker Coal Co. v. United Mine Workers*, 457 F. Supp. 1123, 1130 (W.D. Va. 1978) ("There can be no doubt that judgment n.o.v. is properly granted only under the most unusual circumstances."); *Cranford v. Moore*, 587 F. Supp. 712, 715 (M.D.N.C. 1984) ("Unquestionably, jury verdicts must be accorded great deference.").  As the district court noted in *Handley*, to repeatedly vacate jury verdicts is to "invite disrespect and cynicism for our jury system." *Id.*, 620 F. Supp. at 431 n.8.

A motion for judgment n.o.v. should not be granted if "there was any evidence in the case that would authorize a verdict for the plaintiff" or more precisely, if there was "substantial" evidence supporting the jury's verdict.  See *Defender Indus. v. Northwestern Mut. Life Ins. Co.*, 938 F.2d 502, 505 (4th Cir. 1991); *Wyatt v. Interstate & Ocean Transport Co.*, 623 F.2d 888, 891 (4th Cir. 1980) (defining

Case 7:06-cv-00547-GEC-mfu   Document 146   Filed 06/05/08   Page 2 of 29   Pageid#: 1995

"substantial evidence" as "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment could reasonably return a verdict for the nonmoving party . . . ."). In reviewing the evidence for purposes of a motion for judgment n.o.v., the trial court should not retry the case, pass upon the credibility of witnesses, or attempt to replace the jury's decision with its own. See *Handley*, 620 F. Supp. at 431; *Smitty Baker Coal Co.*, 457 F. Supp. at 1130. Instead, the trial court must view the evidence in the light most favorable to the party opposing the motion and give that party the benefit of all reasonable inferences to be derived from the evidence. See *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 151, 120 S. Ct. 2097, 2110 (2000) ("[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe."); *S. Atl. P'Ship of Tenn. v. Riese*, 284 F.3d 518, 532 (4th Cir. 2002). Judgment as a matter of law is only proper when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. See *Benner v. Nationwide Mut. Ins. Co.*, 93 F.3d 1228, 1234 (4th Cir. 1996).

**A.    THERE WAS SUFFICIENT EVIDENCE FOR A REASONABLE JURY TO FIND THAT DEFENDANT'S NEGLIGENCE PROXIMATELY CAUSED PLAINTIFF'S INJURIES.**

As the Court noted in the jury instructions given to the jury in the present case, the "proximate cause" of an accident is a cause that, in a natural and continuous sequence, produces the accident, injury, or damage, and without which the accident, injury, or damage would not have occurred. [1]  See also *Interim Pers. of Cent. Va., Inc. v.*

---

[1] *See* Jury Instructions, page 8.

*Messer*, 263 Va. 435, 442, 559 S.E.2d 704, 708 (2002). The Court also instructed the jury as to Plaintiff's burden to prove the elements of his case by a preponderance of the evidence, which the Court defined as "the amount of evidence that persuades you that a fact is more likely so than not so."[2] <u>See also</u> *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2513, 168 L. Ed. 2d 179, 196 (2007); *NLRB v. General Wood Preserving Co.*, 905 F.2d 803, 821 n.31 (4th Cir. 1989). Accordingly, with respect to the proximate cause element of Plaintiff's cause of action, the jury was aware that Plaintiff's burden was to prove that it was more likely than not that Defendant's negligence caused the subject collision, not to establish the cause of the collision beyond all shadow of a doubt or conclusively discredit every other conceivable explanation for the accident.[3]

Defendant asserts in its memorandum in support that Plaintiff has failed to produce sufficient evidence to establish that, more likely than not, Defendant's negligence in hiring AKJ Enterprises, Inc. ("AKJ"), an incompetent and unsafe independent contractor,[4] to haul a load of cable reels entrusted to Defendant's care by its customer, Coleman Cable, Inc., was the proximate cause of the collision which led to Plaintiff's substantial and life-altering injuries. Defendant further asserts, however, that "in order to prevail, Plaintiff must establish that some defect or

---

[2] *See* Jury Instructions, page 2.

[3] <u>See</u> *Northern Virginia Power Co. v. Bailey*, 194 Va. 464, 471, 73 S.E.2d 425, 429 (1952) ("It is not necessary that the circumstances establish negligence as the proximate cause with such certainty as to exclude every other possible conclusion."); *Pitsillos v. The S.S. George,* 176 F. Supp. 351, 353 (E.D. Va. 1959)(deriving from evidence of a "negative character" an inference that dangerous condition existed and caused accident).

[4] Notably, Defendant's renewed motion does not raise any concern with the sufficiency of Plaintiff's evidence in respect of the incompetence of AKJ, which necessarily underlay the jury's verdict in his favor.

Case 7:06-cv-00547-GEC-mfu   Document 146   Filed 06/05/08   Page 4 of 29   Pageid#: 1997

characteristic which Robinson negligently failed to investigate or discover was the proximate cause of the accident which resulted in Plaintiff's injuries" and that Plaintiff "has to show that Robinson was on notice of something about AKJ's tendencies in the past that went on to cause this particular accident at this particular time and place."[5]  Plaintiff submits that he has met this burden, and Defendant is simply incorrect in its position that he failed at trial to present substantial evidence on this point, as set forth below.

### 1.   THE DEFECT OR CHARACTERISTIC OF AKJ ENTERPRISES, INC. THAT DEFENDANT NEGLIGENTLY FAILED TO INVESTIGATE OR DISCOVER WAS AKJ'S DEMONSTRATED TENDENCY TO EMPLOY UNSAFE DRIVERS AND ITS RELATED TENDENCY NOT TO PROPERLY CHECK THE CREDENTIALS AND BACKGROUNDS OF ITS DRIVERS.

Plaintiff presented at trial evidence that AKJ had a Driver SEA of 97.8 at the time of the subject collision, as calculated by the Federal Motor Carrier Safety Administration ("FMCSA"), which placed AKJ among the worst two and two-tenths percent (2.2%) of motor carriers in the country in terms of driver safety, as well as roadside inspection reports from 2004 which provided further detail as to the data underlying this score.[6]  *See* Plaintiff's Exhibit 7.  Plaintiff also introduced into evidence a study published on the FMCSA website, which indicates that motor

---

[5] Defendant suggests in its memorandum that Plaintiff had an obligation to affirmatively present evidence to disprove or eliminate any alternate possibilities for how the subject collision occurred; however, the authority cited in Defendant's memorandum simply does not stand for this proposition.  See *Harrison v. Edison Bros. Apparel Stores*, 814 F. Supp. 457, 464 (M.D.N.C. 1993).  All that is required of Plaintiff is a showing of "substantial" evidence, sufficient to provide a reasonable basis for a rational choice among any alternate possibilities.  *Id.*  Plaintiff met this burden at trial, as set forth herein.

[6] Plaintiff also introduced evidence that AKJ had a Vehicle SEA of 97.09 and a Safety Management SEA of 78.53, both such scores also being deemed "deficient" by the FMCSA's standards.  *See* Plaintiff's Exhibit 7.

carriers with Driver SEA scores greater than 75 were sixty-three percent (63%) more likely to be involved in a crash than motor carriers with scores of 74 or less. *See* Plaintiff's Exhibit 8.[7] All of the foregoing evidence was publicly available at the time the subject load was assigned to AKJ, but as Defendant's employees and representatives testified at trial, Defendant's policy was not to examine publicly available information about the safety performance of its carriers.

Driver SEAs are based primarily on the actual safety performance of a specific motor carrier's drivers while operating on this nation's public highways, as evaluated by inspectors and law enforcement officials at traffic stops and/or roadside inspections. A grossly deficient Driver SEA score, such as that assigned to AKJ by the FMCSA, is evidence that AKJ was routinely hiring drivers who were incompetent and unfit, in that they failed to comply with federal safety regulations and generally exhibited poor safety performance while operating commercial vehicles on behalf of AKJ. The fact that AKJ's Driver SEA score was grossly deficient for more than two years prior to the subject collision, meaning that no significant improvement or change occurred over time as new data was entered and new data dropped from the FMCSA's system, shows that such poor safety performance on the part of AKJ's drivers was ongoing and continuous. This score demonstrated that AKJ had a tendency to hire unsafe and unfit drivers. Plaintiff also introduced evidence from Defendant's own internal records, known as "problem logs," which indicated actual knowledge on the part of C. H. Robinson employees that AKJ's drivers were operating in violation of federal safety regulations and had been

---

[7] The very purpose of SafeStat and the individual SEA scores, including the Driver SEA score, is to identify those companies whose drivers were more likely to be involved in crashes.

involved in prior accidents, consistent with the tendencies underlying AKJ's abysmal SEA scores. *See* Joint Exhibit 1.

Furthermore, in addition to the fact that AKJ had a "conditional" safety rating, in violation of AKJ's contract with Defendant and a fact of which Defendant admits being aware prior to assigning the subject load to AKJ, Plaintiff also introduced at trial the May 2003 and July 2003 compliance reviews conducted at AKJ's principal location by officials of the FMCSA, which ultimately led to AKJ's "conditional" rating. *See* Plaintiff's Exhibits 10 and 11. These compliance reviews show that AKJ was cited repeatedly by FMCSA inspectors for its failure to properly check the driving and employment records of its drivers. In addition, Plaintiff introduced at trial an "Automobile Loss Notice" form, dated September 14, 2004, which was prepared by AKJ's insurance broker for AKJ's insurer, Canal Insurance Company, and which indicated that AKJ had, in fact, failed to check the backgrounds of the two particular drivers hired to physically transport the subject load, namely Kristina Mae Arciszewski ("Arciszewski") and Charles Kevin Morris ("Morris"). *See* Plaintiff's Exhibit 12. Plaintiff also introduced evidence of what AKJ would have found had it actually investigated these drivers before dispatching them to pick up the subject load, namely that Morris' commercial driver's license had been revoked, and that Arciszewski had only held her commercial driver's license for approximately one month and does not appear to have previously accepted employment as a commercial driver. *See* Plaintiff's Exhibits 2 and 3.

Finally, as indicated in the live testimony of Defendant's employee, Michael T. Atkinson, who booked the subject load with AKJ, and the deposition testimony of Maximillian F. Cortis, the employee who accepted responsibility for transporting the

subject load from Defendant's customer, Coleman Cable, Inc., the subject load was considered "hot," which in the vernacular of Defendant's employees indicated that the load was time-sensitive. *See* Exhibit A, Excerpt from Trial Transcript of Michael T. Atkinson, page 41, lines 3-15; Exhibit B, Excerpt from Deposition Transcript of Maximillian F. Cortis, which was read into evidence at trial, page 69, lines 14-24; page 70, line 1. AKJ, which accepted this load from Defendant, knew and understood that this load had a strict delivery time, but nonetheless chose to hire a driver with no experience as a tractor trailer driver, along with a co-driver who lacked a valid commercial driver's license, to transport the subject load. In fact, AKJ was late in dispatching Arciszewski and Morris to pick up the subject load, a fact known to Defendant during the transport process. *See* Exhibit A, Excerpt from Trial Transcript of Michael T. Atkinson, page 41, lines 16-19. This situation was exacerbated by the fact that Arciszewski and Morris became lost as they attempted to locate the Hayesville, North Carolina, facility where they were to retrieve their load, putting them further behind schedule. *See* Exhibit A, Excerpt from Trial Transcript of Michael T. Atkinson, page 42, lines 20-23.

In light of the foregoing, Plaintiff submits that he presented substantial evidence from which a reasonable and fair-minded jury, in the exercise of impartial judgment, could reasonably conclude that it was more likely than not that AKJ, an unfit and incompetent motor carrier, had, amongst its various defects or unsafe tendencies, a tendency to hire incompetent and unsafe drivers, as well as a related tendency to fail to investigate the driving or employment histories of said drivers before dispatching them to transport loads, and that Defendant negligently failed to investigate or discover such tendencies or defects prior to assigning the subject load

to AKJ.

**2. PLAINTIFF PRESENTED SUFFICIENT EVIDENCE FOR A REASONABLE JURY TO CONCLUDE THAT AKJ, CONSISTENT WITH THE AFORESAID TENDENCIES, HIRED INCOMPETENT AND UNSAFE DRIVERS ON THIS PARTICULAR LOAD.**

As shown by the driver's report for Charles Kevin Morris submitted into evidence as Plaintiff's Exhibit 3, Morris had prior convictions for driving while under the influence, and other numerous moving violations stemming back many years. Had AKJ conducted even the most minimal investigation of Morris, it would have uncovered this information. Similarly, Arciszewski had only obtained her first commercial drivers license from the State of Utah approximately one month prior to accepting the task of transporting Defendant's "hot" load. *See* Plaintiff's Exhibit 2.

Although not advocating that a new commercial driver is, *per se*, incompetent to operate a tractor trailer, Plaintiff does believe that Arciszewski's actions during the transport of the subject load, as discussed further below, including particularly those immediately preceding the subject collision, demonstrate that she was an unfit and incompetent driver, likely due in large part to her lack of experience.[8] Plaintiff further submits that, in respect of the load involved in the subject collision, Arciszewski's lack of experience, when considered in conjunction with the fact that Arciszewski was to be teamed with an unsafe and unlicensed co-driver, made her particularly incompetent to handle the transport of the subject load, due to its time-sensitive quality, the length of the haul, and the other surrounding factors.[9]

---

[8] Lack of experience was identified as a potential cause of the crash in the Virginia State Police Division Four Crash Team Report, entered as Plaintiff's Exhibit 1.

[9] See also *TXI Transp. Co. v. Hughes*, 224 S.W.3d 870, 2007 Tex. App. LEXIS 4124 (2007) (finding sufficient evidence that negligent hiring of inexperienced driver was the proximate

As an initial matter, Arciszewski and Morris became lost trying to locate the pick up address for the subject load and were still running behind schedule at the time of the crash, which are facts that tend to support an inference or conclusion that Arciszewski was as incompetent driver for purposes of the subject load, when viewed in conjunction with the other available evidence. This lack of competence on the part of Arciszewski was further demonstrated in the specific driving behaviors noted by eye-witnesses Richard Peele and Susan Cannedy, who were both traveling in the vicinity of Arciszewksi's tractor-trailer when she left her lane of travel and struck Plaintiff's vehicle head on. Most particularly, Ms. Cannedy testified before the jury as to noticing Arciszewski's tractor-trailer begin a steep ascent up an exit ramp several miles prior to the collision, only to alter course at the last moment, without signaling, and abruptly drop back down into the right-hand lane of travel of Interstate 81 "right into traffic," forcing other vehicles in that lane "to move to avoid hitting [Arciszewski's vehicle]." *See* Exhibit C, Excerpt from Trial Transcript of Susan Cannedy, page 4, lines 6-12; page 5, lines 16-20. Ms. Cannedy testified, in fact, that she recalled being concerned that Arciszewski's tractor-trailer would "tip over" as a consequence of this reckless maneuver. *See* Exhibit C, Excerpt from Trial Transcript of Susan Cannedy, page 5, lines 3-6. A few miles later, Arciszewski's vehicle was speeding down the interstate above the legal speed limit, passing Mr. Peele's tractor-trailer, before swerving back and forth in its lane of travel and then ultimately crossing the median between the northbound and southbound lanes to collide with Plaintiff's vehicle. *See* Exhibit D, Excerpt from Trial Transcript of Richard Peele, page 9, lines 22-24.

---

cause of accident in which the inexperienced driver crossed center line into on-coming

Case 7:06-cv-00547-GEC-mfu   Document 146   Filed 06/05/08   Page 10 of 29   Pageid#: 2003

When viewed in its entirety, the evidence presented by Plaintiff clearly showed that Arciszewski was not operating her vehicle in a competent manner for some time prior to the subject collision, and also provided an explanation for her incompetence, i.e., lack of experience. Arciszewski's lack of experience was, in fact, listed as a contributing factor to the subject collision by the Virginia State Police in the Virginia State Police Division Four Crash Team Report, which presents the official conclusions of the officers who investigated the cause of the crash and which was entered into evidence, without objection, as Plaintiff's Exhibit 1. Furthermore, even Defendant's corporate representative, Mark Walker, testified at trial that it was Defendant's position that AKJ hired incompetent drivers in respect of the subject load and that this was the cause of the collision. Accordingly, Plaintiff submits that he presented substantial evidence from which a reasonable and fair-minded jury, in the exercise of impartial judgment, could reasonably conclude that it was more likely than not that Arciszewski was an incompetent driver, hired by AKJ in accordance with its aforesaid tendency to employ unfit and unsafe drivers, and that, in co-drivers Kristina Mae Arciszewski and Charles Kevin Morris, Defendant got exactly what it should have expected from AKJ – unfit, unsafe and incompetent drivers.

**3. PLAINTIFF PRODUCED SUFFICIENT EVIDENCE AT TRIAL FOR A REASONABLE JURY TO CONCLUDE THAT THE INCOMPETENCE OF ARCISZEWSKI WAS THE CAUSE OF THE SUBJECT COLLISION, THUS COMPLETING THE CAUSAL LINK BETWEEN DEFENDANT'S NEGLIGENCE AND PLAINTIFF'S INJURIES.**

As the Court knows, Plaintiff sought partial summary judgment from the Court as to the negligence of Arciszewski, the driver employed by AKJ, along with

traffic).

her co-driver, Charles Kevin Morris, to haul the subject load. Defendant made absolutely no effort to refute or otherwise respond to Plaintiff's motion on this point, and, accordingly, the Court granted summary judgment to Plaintiff as to the fact that Arciszewski was negligent in the operation of her vehicle in respect of the collision in which Plaintiff's injuries occurred.[10] Defendant did not offer any objection prior to or during trial as to the Court's holding, or to the Court's inclusion of this holding in the instructions given to the jury. Furthermore, Defendant did not assert any objection to this holding as a part of its basis for seeking a directed verdict at the close of evidence at trial. See Givens v. O'Quinn, 447 F. Supp. 2d 593, 599 (W.D. Va. 2006) (citation omitted) ("A renewed motion for judgment as a matter of law under Rule 50 is simply a renewal of an earlier motion made at the close of the evidence, and thus it can only be granted on grounds specifically advanced in the pre-verdict motion.").

Although in its memorandum, Defendant argues that the Court's finding as to the negligence of Arciszewski has no bearing on the issue of proximate cause, Plaintiff submits that Defendant fails to appreciate the importance of this finding. As set forth in the Court's jury instructions, and as supported by applicable Virginia authority, negligence is "the failure to use . . . the care a reasonable person would have used under the circumstances . . ." See also Moore v. Virginia Transit Co., 188 Va. 493, 498, 50 S.E.2d 268, 271 (1948) ("As this court has stated, and restated, negligence is the failure to do what a reasonable and prudent person would ordinarily have

---

[10] Defendant states in its brief that the Court found that AKJ was negligent, a point which Plaintiff is loathe to dispute; however, Plaintiff believes the Court's actual holding was that *Arciszewski* was negligent in the operation of her vehicle, leading to the subject collision. However, as noted previously, Defendant has not raised any issue with Plaintiff's evidence as to the negligence of AKJ for purposes of its present motion.

Case 7:06-cv-00547-GEC-mfu   Document 146   Filed 06/05/08   Page 12 of 29   Pageid#: 2005

done under the circumstances of the situation, or doing what such person would not have done under existing circumstances."). The Court's finding that Arciszewski was negligent in the operation of her vehicle, which has gone without objection from Defendant, establishes conclusively for purposes of this case that the cause of the subject collision was Arciszewski failing to use due care and operate her vehicle in a prudent and reasonable manner, without justification or excuse, or any intervening or superseding factors.

The Court's holding that Arciszewski failed to use due care and operate her vehicle in a prudent and reasonable manner, which was addressed by the Court with the jury and also by both parties' counsel in their closing statements, narrows significantly the range of causative factors that can be considered in respect of Defendant's motion.[11] By virtue of the Court's holding and in light of the evidence,

---

[11] Although Defendant states in its memorandum that the trial record contains evidence of "many potential causes" of the subject collision, Defendant made absolutely no attempt whatsoever to present any evidence as to the cause of the accident, either at the summary judgment stage or during the trial of this case. Defendant now suggests several "potential causes" of the collision, which are entirely inconsistent with the Court's finding that Arciszewski negligently caused the subject collision and/or which are within the realm of what would have been foreseeable to Defendant based on the information available to it about the types of drivers typically employed by AKJ. Specifically, Defendant has suggested (i) that Arciszewski suffered a sudden medical emergency (a theory to which no evidence was presented, which is contrary to the Court's finding that Arciszewski was negligent, and which is belied by the distance of as much as seven miles over which Arciszewski's erratic driving behavior continued); (ii) that Arciszewski's tractor-trailer suffered a never before encountered mechanical problem (which is contrary to the Court's finding that Arciszewski was negligent, and which is actually contradicted by the Virginia State Police Division Four Crash Team Report entered into evidence as Plaintiff's Exhibit 1); (iii) that Arciszewski was intoxicated (which is not supported by the record and which Plaintiff is prepared to disprove with the medical examiner's toxicology report for Ms. Arciszewski should the Court grant Defendant's motion for a new trial); (iv) that Arciszewski and her co-driver may have been having a fight at the time of the accident (a theory not supported by any of the evidence and which is further diminished as a possible explanation in that none of the eye-witnesses observed any sign of commotion or disturbance inside the cab of Arciszewski's vehicle); or (v) that Arciszewski was beset by an errant bee, as was suggested to the jury by Defendant's counsel during closing argument (a theory to which no evidence was presented,

Case 7:06-cv-00547-GEC-mfu   Document 146   Filed 06/05/08   Page 13 of 29   Pageid#: 2006

the only potential causes of the subject collision that the jury could have reasonably considered in their review of the evidence were (1) mere inattentiveness or (2) some form of incompetence.[12], [13]

In evaluating these two potential causes of the subject collision and endeavoring to decide between the two, the jury had before it several key pieces of evidence, entered without objection from Defendant and uncontroverted by any evidence introduced or presented by Defendant. First, the jury had before it the Virginia State Police Division Four Crash Team Report, which stated that Arciszewski's inexperience as a commercial vehicle driver was believed to be a contributing factor involved in the crash. The jury also had before them Arciszewski's driver's record from the State of Utah, which confirmed her lack of experience. The jury also heard live testimony from Michael T. Atkinson, and deposition testimony of Maximillian F. Cortis, both employees of Defendant involved in booking the subject load with AKJ, which showed that the load at issue was a "hot" or "time-sensitive" load and that Arciszewski, an inexperienced driver, was dispatched late by AKJ to pick up the subject load, along with her unlicensed co-driver, Charles Kevin Morris. Plaintiff submits, as an initial matter, that the jury

which is contrary to the Court's finding that Arciszewski was negligent, and which is, again, belied by the distance over which Arciszewski's erratic driving behavior continued, unless it was a singularly antagonistic and determined bee). Such highly speculative theories are completely unsupported by any evidence in the record and are, in fact, contradicted by it.

[12] Plaintiff notes that the Virginia State Police also came to a similar conclusion, i.e., that "the main causative factor of the crash was error or inattention of [Arciszewski]," ultimately concluding that "inexperience might have been a contributing factor." *See* Plaintiff's Exhibit 1.

[13] *See* <u>Wratchford v. S. J. Groves & Sons Co.</u>, 405 F.2d 1061, 1067 (4th Cir. 1969)("[W]hen a district judge is confronted with only two conflicting inferences, each of which he regards as equally probable, and there is no other possible explanation of the event, that, itself, strongly indicates that other judges and other reasonable men might rationally regard the one

Case 7:06-cv-00547-GEC-mfu   Document 146   Filed 06/05/08   Page 14 of 29   Pageid#: 2007

could have reasonably concluded that Arciszewski's inexperience rendered her incompetent, at minimum, to haul the particular load at issue, partly due to its time-sensitive nature, which would have likely placed greater pressure on Arciszewski to push herself and her vehicle beyond her level of comfort in an attempt to meet the deadlines imposed upon the transport of the subject load, and also that this incompetence led Arciszewski to lose control of her vehicle and strike Plaintiff's vehicle head on.

In addition to the foregoing, however, the jury heard from Michael Atkinson, Defendant's employee, that Arciszewski and Morris became lost trying to locate the pick up address for the load in North Carolina and that they were still running behind schedule for delivery of the load when the collision occurred. Plaintiff also presented uncontroverted evidence from Richard Peele and Susan Cannedy, both eye-witnesses to the subject collision, who testified that Arciszewski was speeding and operating her tractor-trailer in a patently unsafe manner many miles prior to the point along Interstate 81 where she left her lane of travel, crossed the median between the northbound and southbound lanes, and struck Plaintiff's tractor-trailer head on. Specifically, Ms. Cannedy testified that Arciszewski aborted an attempt to exit the interstate well after it was reasonably safe or prudent to do so, instead coming back down onto the interstate after having already begun to ascend the exit ramp, directly into the right traveling lane for other vehicles and without even signaling an intent to do so, apparently risking a "roll over" in the process. Clearly, Arciszewski's aborted and dangerous attempt to exit the interstate shortly before the collision indicates that she either did not understand what maneuvers could be safely

inference as more probable than the other.").

accomplished with a fully loaded tractor-trailer weighing as much as 75,000 pounds, or that she did not care. The fact that Plaintiff was operating her vehicle in such a patently unsafe manner well before the collision occurred strongly suggests that the cause of the subject collision was not mere, momentary inattentiveness, but was, instead, the culmination of a pattern of incompetence.[14] Plaintiff submits that it was reasonable for the jury to conclude that Arciszewski's driving behavior immediately prior to the subject collision was evidence of Arciszewski's incompetence, given the distance and length of time over which such erratic driving behavior occurred and particularly when viewed in light of the variety of behaviors exhibited over the course of the trip, such as getting lost and consistently running behind schedule. Such incompetence was precisely what could be anticipated by anyone reviewing the wealth of information that was available to Defendant about AKJ and the types of drivers it hired.

As a final matter, although the Court concluded that Plaintiff could not properly enter into evidence Defendant's third party complaint against AKJ, in which Defendant admitted that AKJ hired incompetent drivers in respect of the subject load, i.e., that Arciszewski and Morris were incompetent drivers, and that this act of hiring incompetent drivers caused the subject collision, Defendant's corporate representative, Mark Walker, when presented with the third party complaint, testified that it was C. H. Robinson's position that AKJ hired incompetent

---

[14] See _Garrett v. Albright_, 2008 U.S. Dist. LEXIS 22490, *9-10 (W. D. Mo. 2008) (finding that a reasonable juror could conclude that tractor trailer driver was fatigued where plaintiff produced witness testimony that driver was falling asleep at the wheel and there were "substantial weaknesses" with regard to driver's claim that he slept for ten hours before the collision).

drivers and that this caused the subject collision.[15]

Plaintiff respectfully submits to the Court that, in light of the Court's holding that Arciszewski was negligent in the operation of her vehicle, the conclusions set forth in the Virginia State Police Division Four Crash Team Report as to the causal connection between Arciszewski's inexperience and the crash, the eye-witness testimony presented at trial as to Arciszewski's erratic and unsafe driving behavior, Arciszewski's driving report and other evidence of her inexperience as a commercial driver, and the admissions of Defendant's own corporate representative, there was ample evidentiary basis for a reasonable and fair-minded jury, in the exercise of impartial judgment, to reasonably conclude that it was more likely than not that Arciszewski was incompetent and that this incompetence caused the subject collision. Although much of Plaintiff's evidence as to the cause of the subject collision is circumstantial, the Court properly instructed the jury that circumstantial evidence could be given as much weight as direct evidence,[16] and upon consideration of a Rule 50(b) motion, the Court is to give credence to any reasonable inferences in Plaintiff's favor derived from such circumstantial evidence, including the inference that Arciszewski was an unfit and incompetent driver and that this incompetence

---

[15] Michael Atkinson, Defendant's employee who booked the subject load with AKJ, also agreed that, if he had not placed the subject load with AKJ, Arciszewski and her 75,000 pound tractor-trailer would not have been traveling up the northbound lane of Interstate 81 on September 12, 2004, at approximately 8:30 p.m., just in time to encounter Plaintiff's vehicle. *See* Exhibit A, Excerpt from Trial Transcript of Michael T. Atkinson, page 57, lines 21-25; page 58, lines 1-4.

[16] See <u>Castle v. Bullard</u>, 64 U.S. 172, 187, 16 L. Ed. 424, 428-29 (1860) ("Circumstances altogether inconclusive, if separately considered, may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof."); *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Surety Co.*, 427 F.2d 862, 868 (4th Cir. 1970) ("[I]t is the province of the jury to resolve conflicting inferences from circumstantial evidence."); *McSlarrow v. Walker*, 56 Md. App. 151, 159, 467 A.2d 196, 200 (1983) ("The matter of causation need not be established by direct and positive proof to an absolute certainty.").

was the cause of the subject collision.  As noted previously, the appropriate inquiry for purposes of Defendant's motion is whether there was "substantial" evidence to support the jury's determination that Arciszewski was incompetent and that this incompetence caused the subject collision, without weighing the evidence, assessing credibility, or without imposing upon such review the Court's subjective opinions as to whether any of the alternate theories now being suggested by Defendant are more probable or reasonable.  Under such a review, Defendant's motion must be denied.

**B.    THE COURT HAS PREVIOUSLY RULED, IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND ITS MOTIONS FOR A DIRECTED VERDICT, THAT A CLAIM FOR THE NEGLIGENT HIRING OF AN INDEPENDENT CONTRACTOR MAY BE PRESENTED UNDER VIRGINIA LAW WHERE THE TYPE OF WORK TO BE PERFORMED BY THE CONTRACTOR IS SUCH THAT A RISK OF PHYSICAL HARM IS CREATED IF THE WORK IS NOT PERFORMED IN A SKILLFUL AND COMPETENT MANNER.**

In Defendant's memorandum in support of its renewed motion for judgment as a matter of law, Defendant objects to the jury instructions given by the Court, arguing that the instructions misstated Virginia law in terms of the elements for a claim for negligent hiring of an independent contractor,[17] and also that the Court erred in refusing to include references to specific issues or "facts" arguably favorable to Defendant.

**1.    THE COURT'S JURY INSTRUCTIONS ACCURATELY DESCRIBE THE ELEMENTS OF A CAUSE OF ACTION FOR NEGLIGENT HIRING OF AN INDEPENDENT CONTRACTOR UNDER VIRGINIA LAW**

---

[17] As this issue was thoroughly addressed in Plaintiff's summary judgment briefs, Plaintiff incorporates the pertinent arguments and authorities from those previous memoranda herein.

Case 7:06-cv-00547-GEC-mfu   Document 146   Filed 06/05/08   Page 18 of 29   Pageid#: 2011

As to the legal issues underlying Defendant's "objections," Defendant asserts first that *Philip Morris, Inc. v. Emerson,* 235 Va. 380, 399, 368 S.E.2d 268, 278 (1988), stands for the proposition that a claim for negligent hiring of an independent contractor is only available where a "hazardous activity" or "task with an increased risk of harm to others" is involved.[18]  Defendant then complains that the Court did not find, and that Plaintiff did not prove, that interstate trucking is an "inherently hazardous" or "high risk" activity.

As an initial matter, Defendant makes no effort in its memorandum to define what type of activity is encompassed by the terms "inherently hazardous" or "high risk," so that Plaintiff can properly respond to Defendant's argument.  That being said, Plaintiff submits that interstate trucking is, in fact, a task involving a risk of physical harm to others if not skillfully and carefully performed, as contemplated under Rule 411 of the Restatement (Second) of Torts, upon which the Virginia Supreme Court relied in *Philip Morris,* and as more fully described in the official comments and illustrations to that section.[19]  As previously set forth in Plaintiff's

---

[18] Defendant appears to retreat from its earlier position that *Philip Morris* required an "ultra-hazardous" activity.  Although it would appear to Plaintiff that Defendant's position may be somewhat different from that expressed in oral argument in support of Defendant's motion for judgment as a matter of law during the course of the trial, Plaintiff does not object to Defendant taking a position as to the law that seems to be evolving toward that advanced by Plaintiff and relied upon by the Court.

[19] Rule 411 provides that "[a]n employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor . . . to perform work which will involve a risk of physical harm unless it is skillfully and carefully done."  See RESTATEMENT (SECOND) OF TORTS § 411 (1965).  That Rule 411 is intended to cover the operation of a commercial vehicle is amply demonstrated by the official illustration to this rule, which provides as follows:  "A, a builder, employs B, a teamster, to haul material through the streets from a nearby railway station to the place where A is building a house. A knows that B's trucks are old and in bad condition and that B habitually employs inexperienced and inattentive drivers. C is run over by a truck carrying A's material and driven by one of B's employees. A is subject to liability to C if the accident is due either to the bad condition of the truck or the inexperience or inattention of the

Brief in Opposition to Defendant's Motion for Summary Judgment, other jurisdictions relying upon Rule 411 have considered a wide variety of activities to fall within the purview of Rule 411, including the operation of a tractor trailer. <u>See</u>, <u>for example</u>, *Puckrein v. ATI Transport, Inc.*, 186 N.J. 563, 579-581, 897 A.2d 1034, 1044-45(N.J. 2006) (applying Rule 411 in context of a tractor-trailer accident); *Leach v. Newport Yellow Cab, Inc.*, 628 F. Supp. 293, 299 (S.D. Ohio 1985) (applying Rule 411 in the context of a taxi cab accident); *Louie v. Servicelink, Inc.*, 1995 Del. Super. LEXIS 610 (denying the defendant's motion for summary judgment as to negligent hiring of motor carrier under Rule 411).[20]    Plaintiff submits that the issue of whether operating a tractor-trailer on a public highway involves a risk of physical harm to third persons unless skillfully and carefully done is readily apparent, and that is why the operation of tractor-trailers is so heavily regulated and why there is a federal agency, the Federal Motor Carrier Safety Administration, which devotes itself to safety issues pertaining to the operation of tractor-trailers and the motor carrier industry.

As to "proving" that interstate trucking is an activity that presents a risk of physical harm to others if not skillfully and carefully performed, Plaintiff submits

---

driver." <u>See</u> Restatement (Second) of Torts §411 cmt. d, illus. 5 (1965). In the present case, Defendant knew or should have known that AKJ habitually employed incompetent and unsafe drivers, and did so in this instance, and that the incompetence of Arciszewski, the driver hired by AKJ to transport the subject load, was the cause of the subject collision and Plaintiff's resulting injuries.

[20] Plaintiff also makes reference to the following authority: *Hodges v. Johnson*, 52 F. Supp. 488, 490 (W.D. Va. 1943) ("It is a matter of common knowledge that the transportation of freight upon the highways, usually by means of huge trucks and trailers, is fraught with great danger to the traveling public."); *Aronovitch v. Ayres*, 169 Va. 308, 318, 193 S.E. 524, 526 (1937) ("These trucks, sometimes inordinate in size, measurably monopolize our highways and add to the peril of their use, and it is in the light of their potential destructiveness that a high degree of care is but ordinary care.").

that whether or not interstate trucking is such an activity is a question of law that has already been decided by the Court in permitting the present case to proceed to trial and, ultimately, to a jury verdict in Plaintiff's favor. This notwithstanding, however, certainly Plaintiff presented evidence that the AKJ vehicle likely weighed in excess of 75,000 pounds,[21] as well as the particulars circumstances of the subject load, including the distance over which the load of cable reels had to be transported. Additionally, Bruce Johnson, one of Defendant's representatives, testified that he believed that a risk of physical harm existed if a tractor-trailer were not operated in a skillful and competent manner. Beyond this, however, Plaintiff submits that the risks associated with interstate trucking, including the particular risk of physical injury associated with a tractor-trailer crash, is so thoroughly within the common knowledge and experience of the jury as to require no specific evidence on that point. Accordingly, there was more than sufficient basis for the jury to conclude, to the extent required to do so, that interstate trucking is an activity within the realm of activities contemplated by *Philip Morris* and Rule 411 of the Restatement (Second) of Torts.

For the foregoing reasons, Plaintiff asks that the Court deny Defendant's motion to persuade the Court to revisit the law of the case, as the parties have argued this issue in depth and at length in their respective summary judgment briefs, their oral arguments at the summary judgment hearing, and in oral argument in respect of Defendant's motions for judgment as a matter of law made during the course of the trial. Defendant has presented no arguments or authority in support of its present motion not previously presented to the Court, and, accordingly, no reason has been

---

[21] *See* Exhibit A, Excerpt from Trial Transcript of Michael T. Atkinson, page 42, lines 13-19.

Case 7:06-cv-00547-GEC-mfu    Document 146    Filed 06/05/08    Page 21 of 29    Pageid#: 2014

presented to abandon or "rethink" the legal framework for the present case now that

the resources of the parties, and of the Court, have been expended to conduct a jury

trial based upon the Court's previous rulings as to the law applicable to this case.

**2.      THE COURT IS NOT REQUIRED TO EXPRESSLY INSTRUCT THE JURY TO PAY SPECIAL ATTENTION TO EACH AND EVERY "FACT" OR ISSUE POTENTIALLY FAVORABLE TO DEFENDANT.**

In respect of the Court's jury instructions, the Court has significant latitude to

use such instructions to draw the jurors' attention to specific items of evidence if the

Court believes it necessary to assist the jury in arriving at a just conclusion.  *See*

*Nelson v. Green Ford, Inc.*, 788 F.2d 205, 208 (4th Cir. 1986).  The Court is not required

to include reference to every argument or item of evidence, or to suggest a decision

to the jury, as Defendant would have the Court do.  *Id.* (noting that the trial court

need not include "every scrap of evidence as if the jury were dependent upon the

court's summation alone as the basis for its deliberations"); see also *Riese*, 284 F.3d at

530 (citation omitted) ("Instructions are adequate if 'construed as a whole, and in

light of the whole record, [they] adequately [inform] the jury of the controlling legal

principles without misleading or confusing the jury to the prejudice of the objecting

party.'").

In the present case, the Court discussed with counsel the proposed jury

instructions in chambers, and seemed satisfied, as was Plaintiff, that the jury

instructions presented to the jury referenced a fact or issue deemed more favorable to

Plaintiff, namely the "arrangement between defendant and AKJ Enterprises . . . and

the nature of the services which C. H. Robinson undertook to perform in connection

with the delivery of the load in question," as well as a fact or issue deemed more

favorable to Defendant, namely the "role of the government in regulating motor carrier safety." *See* Jury Instructions, page 7. As Plaintiff understands it, the Court intended to provide these more detailed instructions to the jury given the complexity of some of the legal and factual issues in the case, but in an impartial manner that pointed out issues of roughly equivalent value to each party. As Plaintiff's counsel argued during such discussions, adding in the extra points that Defendant wished to have presented would destroy the careful balance of issues highlighted in the Court's instructions, and essentially suggest to the jury that it should return a verdict favorable to Defendant.

With respect to the two specific items that Defendant argues should have been emphasized in the instructions, Plaintiff notes that there really was no evidence introduced by either party as to what others in the freight brokerage industry were doing in 2004 other than perhaps a passing comment or two from Defendant's representatives or expert as to what they believed others in the industry were not doing in 2004. Such statements were vague and non-specific, absent any statistics as to industry practices or any detailed examples of the practices employed by specific members of Defendant's "industry."[22] For this reason, Plaintiff submits that highlighting for the jury the issue of what "others in the freight brokerage industry were doing" would unfairly place focus on a poorly developed issue that was treated as peripheral at best during the course of the trial.

---

[22] Moreover, as Plaintiff has argued in various pre-trial memoranda filed with this Court, Plaintiff believes that Defendant occupied such a unique position in 2004, in light of the *Schramm* lawsuit then pending against Defendant (*Schramm, et al v. Foster, et al*, 1:02-cv-03442), that the actual practices of others in the "industry" at that time is of limited value, as clearly Defendant would have gained a wealth of understanding and appreciation for the various data available to it in respect of the safety practices of its motor carriers through its defense of the Maryland lawsuit.

Case 7:06-cv-00547-GEC-mfu   Document 146   Filed 06/05/08   Page 23 of 29   Pageid#: 2016

As to Defendant's proposed instruction as to the "primacy" of the federal government in regulating interstate trucking safety, Plaintiff notes that the actual jury instructions given to the jury spoke of the "role" of the federal government in regulating motor carrier safety. As such, Defendant's objection really goes more to the choice of words used in the written instructions, rather than whether a specific point was brought to the jury's attention by the Court. Certainly, there was nothing prejudicial to Defendant in the use of the word "role," and Plaintiff submits that the word "role" served the purpose of focusing the jury's attention on Defendant's position that any motor carrier with valid operating authority from the federal government was safe for Defendant to employ. Plaintiff further notes that the parties were aware of the substance of the jury instructions prior to closing and that Defendant was free to address with the jury in its closing remarks its position as to the "primacy" of the federal government in terms of regulating motor carrier safety. With respect to the jury instructions issued by the Court, however, including in those instructions the word "primacy," which is a stronger, more favorable term for Defendant, when added to the other issues favorable to Defendant already highlighted in the Court's instructions, would clearly suggest to the jury that the Court considered Defendant's position to have particular merit.[23] Plaintiff respectfully submits that it is up to the jury to determine what arguments do or do not have merit and requests that the Court deny Defendant's motion on this point.

---

[23] In fact, Defendant argues in its memorandum that "Affirming the federal government's primacy in regulating motor carrier safety is also important for the jury because it indicates that the private sector's role in trying to determine which carriers are safe is imprecise and very limited." Again, it is not the Court's role to "affirm" Defendant's position. It was the jury's task to decide whether it would give credence to Defendant's position that safety is only a matter of concern for the government.

## II. DEFENDANT'S MOTION FOR A NEW TRIAL SHOULD BE DENIED.

Under Rule 59 of the Federal Rules of Civil Procedure, and applicable case law, a new trial is warranted when (1) the verdict is against the clear weight of the evidence; (2) the verdict is based upon evidence which is false; or (3) the verdict will result in a miscarriage of justice. *Id*. In considering a new trial motion, the district court may weigh the evidence and consider the credibility of the witnesses. See *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 200 (4th Cir. 2000). In support of its motion, Defendant argues only that the verdict rendered by the jury in this case is against the clear weight of the evidence in terms of the proximate cause element of Plaintiff's claim for negligent hiring.[24]

In respect of a motion to set aside a jury verdict as contrary to the clear weight of the evidence under Rule 59, although the trial court is granted considerable discretion in deciding whether to grant a new trial, the trial court is nonetheless prohibited from reweighing the evidence and setting aside a jury verdict merely because the jury could have drawn different inferences or conclusions or because the trial judge believes that other results are more reasonable. See *Lee v. Adrales*, 778 F. Supp. 904, 907 (W.D. Va. 1991) (citations omitted) (refusing to exercise such discretion absent a "definite and firm conviction that a mistake was committed" after review of the evidence).

As previously noted, the "clear weight of the evidence" test is to be applied where a party seeks a new trial under Rule 59. See *Stamathis v. Flying J, Inc.*, 389 F.3d 429, 436 (4th Cir. 2004). In the present case, assuming the Court finds that Plaintiff has presented "substantial" evidence in support of the proximate cause element of

his cause of action, so as to deny Defendant's Motion for Judgment as a Matter of Law, then the Court's inquiry for purposes of Defendant's alternative Motion for a New Trial must be focused on the issue of whether the verdict in Plaintiff's favor, although supported by "substantial" evidence, is nonetheless against the clear weight of the evidence. See *Atlas Food Sys. & Servs. v. Crane Nat'l Vendors*, 99 F.3d 587, 594 (4th Cir. 1996) (citations omitted).

In respect of the applicable standard, Plaintiff submits to the Court that if he has presented "substantial" evidence, then Defendant's motion for a new trial must be denied, as Defendant has presented no contradictory evidence as to the issue of proximate cause. Accordingly, there is no other evidence in the record as to any other potential cause of the subject collision against which Plaintiff's evidence may be weighed or that would clearly outweigh Plaintiff's evidence as to proximate cause.[25] Plaintiff submits that the "clear weight of the evidence" standard in the Fourth Circuit necessarily envisions a scenario in which substantial evidence has been presented in support of two or more competing theories and the trial court has been asked to determine whether one such theory so overwhelmingly outweighs the other as to constitute the clear or great weight of the evidence. This standard cannot logically be employed to weigh "substantial evidence" in support of a verdict against

_____

[24] Defendant has not argued any other basis for seeking a new trial.

[25] Even if the Court were to conclude that any of the evidence in the record supports a different conclusion than that reached by the jury, Plaintiff submits that any such contradictory evidence would have to be more than substantial, and, in fact, more than simply the greater weight of the evidence. Absent a great disparity between the conflicting evidence and the evidence in Plaintiff's favor, such that the conflicting evidence constitutes the great or clear weight of the evidence, the jury's verdict must stand. See *Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360, 367 (5th Cir. 1980) ("Here there is no great weight of the evidence in any direction. On this record, the jury's conclusions are at least as likely to be true as any others, are not at variance with any established physical laws, and are not against any great evidentiary weight.").

speculation that evidence not in the record might have supported a different outcome, as the Defendant asks the Court to do.

As a final matter, although perhaps not evidence *per se* for purposes of Defendant's motion, Plaintiff cannot help but note that the jury which rendered the verdict in his favor was selected after an extensive voire dire, both by counsel and the Court, and that such jury proved duly attentive during the course of the trial, exhibiting no sign of bias or favor prior to delivering its verdict. In fact, the Court, in discharging this jury, commented upon and in fact, commended the jury upon, its attentiveness. Further, the members of the jury deliberated for nearly three hours, sometimes arguing so vehemently that their voices could be heard in the courtroom, indicating that the jurors took their task very seriously. Accordingly, there can be no suggestion that the jury that heard this case was anything other than impartial, diligent, and as well instructed as any jury could possibly be. Plaintiff submits that there is no reason to believe that a more reasonable or diligent jury could be obtained.

For the foregoing reasons, Plaintiff respectfully submits that there is no reasonable basis for Defendant's motion for a new trial under Rule 59 of the Federal Rules of Civil Procedure.


## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, Plaintiff respectfully requests that the Court deny Defendant C. H. Robinson's Motion for Judgment as a Matter of Law, or, Alternatively, for a New Trial for the reasons asserted herein.

Respectfully submitted,

**WINFORD DALLAS JONES**


s/     Gary C. Hancock
        Of Counsel


Gary C. Hancock, VSB #16704
Timothy E. Kirtner, VSB #36938
Ann L. Bishop, VSB #43847
GILMER, SADLER, INGRAM, SUTHERLAND & HUTTON
P. O. Box 878, 65 East Main Street
Pulaski, VA 24301
540/980-1360 (telephone)
540/980-5264 (facsimile)

Byron R. Shankman, VSB #13485
P. O. Box 1859
Dublin, VA 24084

Counsel for Plaintiff, Winford Dallas Jones


### CERTIFICATE OF SERVICE

I do hereby certify that I have this 5th day of June 2008 electronically filed the foregoing Brief in Opposition to Robinson's Motion for Judgment as a Matter of Law, or, Alternatively, for a New Trial with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Paul C. Kuhnel, Esquire, Wooten Hart PLC, P.O. Box 12247, Roanoke, Virginia 24024-2247, Counsel for C.H. Robinson Worldwide, Inc.

s/     Gary C. Hancock
Gary C. Hancock
Gilmer, Sadler, Ingram, Sutherland & Hutton
P. O. Box 878, 65 East Main Street
Pulaski, VA  24301
540/980-1360 (telephone)
540/980-5264 (facsimile)
ghancock@gsish.com