```
 1  BY MR. KIRTNER:
 2  Q    Good afternoon, Mr. Atkinson.
 3  A    Good afternoon.
 4  Q    We've met on a couple of occasions.  How are you today?
 5  A    Doing well.  Thank you.
 6  Q    Can you tell us your full name, please, first.
 7  A    Michael Thomas Atkinson.
 8  Q    Where do you live, Mr. Atkinson?
 9  A    Glen Ellyn, Illinois.
10  Q    And who do you work for?
11  A    C.H. Robinson.
12  Q    That's the defendant in this case; is that correct?
13  A    Correct.
14  Q    And how long have you worked for C.H. Robinson?
15  A    Eleven years.
16  Q    And you told us, I think, already that you live in
17  Illinois, close to Chicago, correct?
18  A    Correct.
19  Q    And you work in Chicago as well, correct?
20  A    Yes, sir.
21  Q    For C.H. Robinson?
22  A    Correct.
23  Q    What is the name, if it has a name, of the particular
24  office of C.H. Robinson that you work in in Chicago?
25  A    We're known as the Chicago Central Branch.
```

EXHIBIT A

```
 1  System, and the driver log date, correct?
 2  A     Uh-huh.
 3  Q     Somebody put in there "hot"?
 4  A     That could mean that, you know, there was a time
 5  constraint at the shipper, to make it to the shipper by a
 6  certain time, or, you know, that it was conveying information
 7  to the driver that there was some sensitive nature about that.
 8  Q     In your understanding, it indicates there's a time
 9  sensitivity somewhere along the way, correct?
10  A     Yeah, and relaying that information to the driver, making
11  sure he was aware of it.
12  Q     And if it's designated "hot" in here, in this driver log
13  data, that information would be communicated to the carrier
14  and to the driver so they know it's hot, correct?
15  A     Sure.  Right.
16  Q     Was it your understanding that the drivers for AKJ who
17  were hauling this load were actually running late at some
18  point during this transit?
19  A     They were.  They were running late for the pickup time.
20           MR. KIRTNER:  Give me just one moment, Your Honor.
21           THE COURT:  Sure.
22       (Discussion off the record between plaintiff's counsel.)
23           MR. KIRTNER:  Your Honor, can I have about two
24  minutes to consult with co-counsel?
25           THE COURT:  Are you asking just to consult here in
```

1 open court?
2 MR. KIRTNER: Sure.
3 THE COURT: Go ahead.
4 (Discussion off the record between plaintiff's counsel.)
5 MR. KIRTNER: A few more questions, Mr. Atkinson.
6 Thank you, Your Honor.
7 THE COURT: Sure.
8 BY MR. KIRTNER:
9 Q  Let me have you look at the load confirmation sheet again
10 that's been marked as an exhibit. Do you have that still in
11 front of you, Mr. Atkinson?
12 A  Yes.
13 Q  That load confirmation sheet shows the estimated weight
14 of the cable reels that are going to be hauled, doesn't it?
15 A  Yes.
16 Q  And what does it indicate that weight was to be?
17 A  40,000.
18 Q  Do you know what the weight of a tractor-trailer is?
19 A  I believe about 35,000 pounds, give or take, depending on
20 the age of the equipment.
21 Q  Do you know from any of the documents that you have in
22 front of you, or that you are able to recall, what the
23 delivery time was for these cables to be in East Longmeadow,
24 Massachusetts?
25 A  The time looks like between 0900 and 1400, which would be

1  THE COURT: And not your own information or
2 perception of the driver's abilities?
3  THE WITNESS: If I know the driver really well, you
4 know, then I would -- then I can make that differentiation.
5  THE COURT: Fair enough.
6  Mr. Kirtner.
7  MR. KIRTNER: Yes, Your Honor.
8  REDIRECT EXAMINATION
9 BY MR. KIRTNER:
10 Q   C.H. Robinson has a do-not-use list for carriers,
11 correct?
12 A   Correct.
13 Q   AKJ was not on that list?
14 A   No.
15 Q   Was there a do-not-use list for drivers?
16 A   No.
17 Q   You were asked by Mr. Doherty whether you could take a
18 carrier off the road, and you said "no." And I think you said
19 that the government could do that?
20 A   Correct.
21 Q   But once C.H. Robinson acquired from Coleman Cable the
22 right to move this load, you had the right to decide who was
23 going to haul this load, correct?
24 A   Correct.
25 Q   And if you had decided that wasn't going to be

58

Michael Atkinson - Redirect

1  AKJ Enterprises, they would not have been on Interstate 81
2  with this load of cable reels on September 12, 2004, around
3  8:30, correct?
4  A    Correct.
5  Q    Mr. Doherty asked you whether you compromised safety for
6  the sake of a commission when you booked this load. Do you
7  remember him asking you that?
8  A    Yes.
9  Q    You said "no," correct?
10 A    Uh-huh, yes.
11 Q    The reality is that you didn't think about safety at all
12 when you booked this load, correct? It was not a
13 consideration?
14 A    Correct.
15 Q    Because it's not your job?
16 A    Right.
17 Q    Similarly, it's not your job to worry, in your view,
18 about whether AKJ's drivers have driver's licenses, correct?
19 A    Correct.
20 Q    It's not C.H. Robinson's problems to worry about that; is
21 that correct?
22 A    That's between the driver and their employer, the
23 trucking company.
24 Q    Which is to say, in your view, it's not C.H. Robinson's
25 problem whether the drivers who are pulling loads for