UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WINFORD DALLAS JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:06-CV-00547 |
| | ) |
| C.H. ROBINSON WORLDWIDE, INC. | ) |
| | ) |
| | ) |
| Defendant | ) |

**REPLY TO PLAINTIFF'S OPPOSITION TO C.H. ROBINSON'S
MOTION FOR JUDGMENT AS A MATTER OF LAW OR,
ALTERNATIVELY, FOR A NEW TRIAL**

Plaintiff's arguments in his brief in opposition to the instant motion merely underscore his inability to establish proximate cause. As explained below, the Court should exercise its discretion, and set aside the jury's verdict pursuant to Fed. R. Civ. Pro 50(b), and/or grant a new trial to C. H. Robinson Worldwide, Inc. ("Robinson") pursuant to Rule 59.

**ARGUMENT**

**A.  Plaintiff Offers Nothing New on the Issue of Causation.**

Aside from the issues discussed below, and a few extrinsic facts, slyly inserted into his summary of the trial evidence,[1] Plaintiff's brief in opposition

---

[1] These include Plaintiff's assertions, in footnote 11 of his brief, that: (1) he is "prepared" to present portions of Kristina Arcizsewski's autopsy report (a document not in evidence) to "disprove" any claim by Robinson that the cause of the subject crash was related to Ms. Arcizsewski's health, as well as his contention that the two eyewitnesses—Ms. Cannedy and Mr. Peele—testified that AKJ's truck not only swerved and shimmied, but did so over a "distance of as much as seven miles." Neither witness said anything of the sort. *See* Trial Testimony of Richard Peele and Susan Cannedy, attached hereto as **Exhibit A**.

contains no new factual analyses or arguments on the issue of proximate cause. In other words, despite poring over the trial record for close to a month, Plaintiff has come up with no new insights or explanations for how his evidence proves proximate cause. Robinson's responses to Plaintiff's salient points appear below.

### B. Plaintiff Misapplies the Applicable Legal Standards.

Though, for purposes of this motion, Robinson does not dispute that Plaintiff presented considerable evidence at trial relating to the negligence of Robinson and AKJ Enterprises, Inc. ("AKJ"), he did not—and cannot, now that trial is completed—present any evidence at all to establish that Robinson's negligence was a proximate cause of the subject crash. To try to skirt this problem, Plaintiff argues in his opposition brief that his verdict should stand so long as there is "substantial evidence" to support them. Pl. Br. at 2, quoting *Defender Indus. v. Northwestern Mut. Life Ins. Co.,* 623 F.2d 502, 505 (4th Cir. 1991) (citations omitted). Robinson does not dispute that this is a correct statement of the rule; however, Plaintiff misapplies the concept in his brief. Plaintiff's position appears to be that as long as he has presented a "substantial" *quantity* of evidence at trial, the verdict must be left intact—regardless of whether this evidence *qualitatively* supports all of the necessary elements of his cause of action. Thus, Plaintiff spends the great majority of his opposition brief simply re-stating all of his negligence evidence against AKJ, Arcizsewski, and Robinson.

---

Otherwise, Plaintiff has shown commendable restraint in his depictions of the evidence.

This is the same untenable position Plaintiff has taken throughout this litigation—that having lots of evidence is equivalent to having *sufficient* evidence. The Court will recall, for example, Plaintiff's ponderous briefs in support of his motion for partial summary judgment and in opposition to Robinson's motion for summary judgment. There, Plaintiff presented his evidence as a single, 30-page monolith—and made very little attempt to explain how the specific parts of this evidence proved specific elements of his case. Instead, Plaintiff essentially averred that having lots of evidence about certain facts (like the designation of the subject load as "hot") was an acceptable substitute for having no evidence of other facts (such as the actual cause of the subject crash). Moreover, Plaintiff contended in one brief that it was the job of Robinson and/or the Court to parse through the evidence and actually match it up with the elements of his claim.

Nevertheless, in opposing the instant motion—as it was with summary judgment—it is Plaintiff's job to show that his "substantial" evidence establishes *all* elements of his cause of action. This he cannot do.

Plaintiff also misinterprets the case law and the Court's jury instructions on the issue of proximate cause. As Robinson explained in its opening brief, one reason why Plaintiff cannot establish proximate cause here is because he cannot show what caused the subject crash in the first place. It is not enough to simply say that the Court has already found that Arcizsewski was negligent in causing the crash—Plaintiff must prove what the *specific acts of negligence were*. Without that evidence, it is impossible for the jury to properly evaluate whether or not those specific acts of negligence were consistent with a pre-existing "quality"

3

of AKJ of which Robinson reasonably should have been aware. *See* Closing Jury Instructions, at 8. The Court also properly instructed the jury that where "two or more actors were negligent, and if the negligence of each proximately caused the injuries to the plaintiff, then each is liable to him for his injury." *Id.*

Nevertheless, Plaintiff—relying on a District Court case from *North Carolina*, among other things—takes the by now well-worn position that he does not have to prove this part of his case. *See, e.g.,* Pl. Br. at 5, fn 5. Plaintiff instead contends that where there are multiple possible causes of a crash, he is not obligated to *disprove* them all. *See id.* However, Plaintiff ignores the fact that he has the *affirmative* burden of proving what the cause *was*. *See Weddle v. Draper*, 204 Va. 319, 322 (1963) ("**[T]he plaintiff who alleges negligence [must] show why and how the accident happened, and if that is left to conjecture, guess or random judgment, he cannot recover**.") (emphasis added).

However, Plaintiff has not met this burden, and thus, his verdict should not stand.

### C. Plaintiff is Unable to Establish the Cause of the Subject Crash.

As support for his theory of proximate cause, Plaintiff relies on § 411 of THE RESTATEMENT (SECOND) OF TORTS (1965), and, specifically, one of the "illustrations" that appear in the commentary following the rule:

> A, a builder, employs B, a teamster, to haul material, through the streets from a nearby railway station to the place where A is building a house. A knows that B's trucks are old and in bad condition and that B habitually employs inexperienced and inattentive drivers. C is run over by a truck carrying A's material and driven by one of B's employees. A is subject to

4

liability to C if the accident is due either to the bad condition of the truck or the inexperience or inattention of the driver.

*Id.* at cmt. d, illustr. 5, and quoted in Pl. Br. at 20, fn 19.

It is also clear from Plaintiff's brief that the only evidence he can point to that even arguably establishes the *cause* of the subject crash—as opposed to what happened before and after—comes from the Virginia State Police Crash Report, Plaintiff's Trial Exhibit 1, that contains the following statements:

(1) "It appears the main causative factor of the crash was error or inattention of " Arcizsewski; and

(2) "It is believed this person was a new driver for the company and inexperience might have also been a contributing factor."

Trial Ex. 1, at 2.

Plaintiff then argues that this evidence establishes that the cause of the crash was driver inexperience; that AKJ had low driver SEA scores, and had been cited by the FMCSA for "driver-related" problems in two separate compliance reviews; that these compliance reviews establish that AKJ had a "tendency to employ unsafe drivers and [a] related tendency not to properly check the credentials and backgrounds of its drivers"; and, thus, Robinson knew or should have known that any driver hired by AKJ would be unsafe. Pl. Br. at 5. There are two ways to analyze Plaintiff's theory--both actually support *Robinson*, however—not Plaintiff.

First, as Robinson explained in its opening brief, the trial record in this case, in fact, contains *no* evidence regarding the cause of the subject crash. The two sentences from the State Police Report are taken out of context (the report itself is actually inconclusive as to the cause of the crash), and both statements

5

are qualified—"It *appears* that the main causative factor . . .", "It is *believed* this person was a new driver . . . and inexperience *might* also have been a contributing factor." Pl. Tr. Ex. 1, at 2 (emphasis added).

Likewise, the testimony from the two eyewitnesses—Susan Cannedy and Richard Peele—is not probative of the cause of the crash, because both witnesses testified that while they observed AKJ's truck speeding and/or shimmying, neither of them believed that this behavior is what caused the truck to veer off the road. Indeed, Ms. Cannedy testified that, after AKJ's truck swerved back onto the road from the off-ramp, it then "continued on *at a regular speed*" for some distance before "suddenly [making] a hard left turn across the other lane of traffic and into the median." **Ex. A** hereto, at 5-6 (emphasis added). During cross-examination, she also agreed that she did not know what caused AKJ's truck to veer off the road:

> Q. You don't know why the vehicle left the roadway, do you?
>
> A. No.
>
> Q. It just left the roadway?
>
> A. Yes.

*Id.* at 7.

Mr. Peele testified that his recollection was that AKJ's truck "sort of did a wiggle" immediately before crossing the median. *Id.* at 9. Like Ms. Cannedy, however, Mr. Peele confirmed that AKJ's truck appeared to leave the road for no reason:

> Q. You don't have any idea as you sit here today, what caused that northbound rig to simply just veer off into the median strip?

6

> A. It just did it.

*Id.* at 11.

Thus, Plaintiff has failed to present *any* evidence tending to show the cause of the subject crash. As noted previously, without proof of the factual cause of the crash, Plaintiff cannot establish proximate cause against Robinson, because Plaintiff cannot show that the cause of the crash was a trait or "quality" of AKJ of which Robinson was, or reasonably should have been, aware. He cannot do this, and so Robinson should prevail on its motion.

**D. Even if the Court Accepts the State Police Report as Evidence that the Cause of the Subject Crash was Driver Inexperience, Plaintiff Still Cannot Prevail.**

Alternatively, even if the Court accepts the statements in the State Police Report as evidence, however gauzy, that the cause of the crash was driver inexperience—as the Court appears to have done in its recent Summary Judgment Opinion—Robinson still prevails, because Plaintiff has presented *no* evidence that any of AKJ's prior safety problems were caused by inexperienced drivers. Plaintiff must prove, after all, that the cause of the crash was a pre-existing "quality" of AKJ, and that Robinson was, or reasonably should have been aware of that quality when it booked the subject load. *See* Closing Jury Instr. at 8.

There is no evidence from which any reasonable fact finder could conclude that one of AKJ's "qualities" was a tendency to hire *inexperienced*

drivers who then drove incompetently.[2] The "Problem Log" (Joint Trial Exhibit 1) contains *no* references to driver inexperience issues (or with excessive speed, for that matter). None of Robinson's witnesses—Max Cortis, Bruce Johnson, Mark Walker, or even the now-immortal Mike Atkinson—testified about problems caused by driver inexperience.

Moreover, the much-hyped FMCSA safety evidence is devoid of references to driver inexperience. Throughout this litigation, Plaintiff repeatedly attacked Robinson's failure to look at the compliance reviews, SEA scores, and roadside inspection data on AKJ. Time and again, the jury and the Court were told that "if only Robinson had bothered to look" at these materials, they would have seen this for themselves. In fact, however, *none* of these sources say *anything* about driver experience at all—let alone offering support for a claim that driver inexperience was the cause of some (or any) of AKJ's purported safety issues. Even giving Plaintiff the benefit of every inference, AKJ's driver SEA score is not, by itself, proof of any *specific* driver-related problems. The roadside inspection reports that were offered into evidence by Plaintiff at trial (Plaintiff's Trial Exhibit 13) likewise say *nothing* about the experience level of the drivers being inspected. Even the two compliance reviews (Plaintiff's Trial Exhibits 10

---

[2] There is no evidence in the record that AKJ had ever hired an inexperienced driver, apart from Arcizsewski, or by extension, that this crash was something other than an isolated, one-time event which was not reasonably foreseeable to anyone. Interestingly, it would appear from this lack of proof, that Plaintiff may not have proven that AKJ was negligent or "incompetent" with respect to the assignment of this load. If the Court agrees, this is yet another basis to grant the instant motion.

and 11), upon which Plaintiff relied at trial as his most compelling evidence of AKJ's "tendency" to hire "unsafe" drivers, actually do little to aid his cause.

AKJ's May 21, 2003 Compliance Review (attached hereto as **Exhibit B** for the Court's convenience) identifies the following acts of apparent noncompliance by AKJ:

- "Using a driver before the motor carrier has received a negative pre-employment controlled substance test result."

- "Failing to conduct random alcohol testing at an annual rate of not less than the applicable annual rate of the average number of driver positions."

- "Failing to ensure persons designated to determine that drivers undergo reasonable suspicion testing receive 60 minutes training for alcohol and/or 60 minutes of training for controlled substances."

- "Failing to maintain driver's employment application in driver's qualification file."

- "Failing to maintain inquiries into driver's driving record in driver's qualification file."

- "Failing to maintain inquiries into driver's employment record in driver's qualification file."

- "Failing to maintain a note relating to the annual review of the driver's driving record . . ."

- "Failing to maintain a list or certificate relating to violations of motor vehicle laws . . ."

- "Requiring or permitting driver to drive more than 10 hours."

- "Requiring or permitting driver to drive after having been on duty more than 70 hours in 8 consecutive days."

- "Failing to require driver to make a record of duty status."

- "False reports of records of duty status;" and

- "Failing to keep a maintenance record" relating to certain vehicles.

9

Nearly all of these entries involve recordkeeping and filing issues—not the actual safety of AKJ's drivers. In addition, those entries that do relate specifically to driver safety all involve violations of hours of service, duty status, and failure by AKJ to maintain records of its drivers' prior employment records (something a brand-new driver like Arciszewski would not have). There simply is no finding, or implication, of any safety problems, crashes, or other violations caused by inexperienced drivers.[3]

Moreover, the July 25, 2003 Compliance Review (a copy of which is attached hereto as **Exhibit C**, for the Court's convenience) involved the same violations, minus *six* items that had been remedied by AKJ in the interim:

- "Using a driver before the motor carrier has received a negative pre-employment controlled substance test result."

- "Failing to maintain a copy of the response from each State agency in the driver's qualification file."

- "Failing to maintain inquiries into driver's employment record in driver's qualification file."

- "Failing to maintain a list or certificate relating to violations of motor vehicle laws . . ."

- "Requiring or permitting driver to drive more than 10 hours."

- "Requiring or permitting driver to drive after having been on duty more than 70 hours in 8 consecutive days."

- "Failing to require driver to make a record of duty status . . ."

---

[3] This was the *only* documentary evidence offered by Plaintiff at trial regarding AKJ's safety record, and what Robinson would have seen if it had looked on the FMCSA website. If there are other websites, reports, documents, *et cetera,* that Plaintiff believes would have shown a tendency by AKJ to hire inexperienced drivers—or to have problems with inexperienced drivers—Plaintiff failed to offer them as evidence.

10

Again, there is nothing at all about inexperienced drivers (let alone evidence of any problems caused by driver inexperience), nor anything else that would have put Robinson, or anyone else, on notice—or even to suggest the existence of—a "tendency" or "quality" on the part of AKJ relating to safety issues caused by AKJ's use of inexperienced drivers. Indeed, there is no evidence in this case that AKJ had ever hired an inexperienced driver *other than* Arciszewski! Nor is there any evidence that this crash was something more than an isolated event caused by the only inexperienced driver ever employed by AKJ.

Thus, on this trial record, even if Robinson had visited the FMCSA website and looked at the inspection data, compliance reviews, and SEA scores—as Plaintiff claims it should have—Plaintiff has not pointed to a single piece of data or information that would have put Robinson on notice that AKJ had a "tendency" to use inexperienced drivers to haul its loads.

## **CONCLUSION**

Without this proof, Plaintiff cannot establish that Robinson's negligence was a proximate cause of the subject crash, as a matter of law. Accordingly, the verdict should be set aside, and judgment entered in Robinson's favor. Alternatively, a new trial should be granted.

        C.H. ROBINSON WORLDWIDE, INC.,

        By counsel,

        **/s://Robert Michael Doherty, Esq.**

11
Case 7:06-cv-00547-GEC-mfu    Document 148    Filed 06/13/08    Page 11 of 12    Pageid#: 2083

Paul C. Kuhnel (VSB #28151)
Robert Michael Doherty (VSB #43997)
**WOOTENHART PLC**
707 S. Jefferson Street, Suite 300
P. O. Box 12247
Roanoke, VA  24024-2247
(540)343-2451
(540)345-6417 (facsimile)

**Counsel for the Robinson Defendants**

## CERTIFICATE

I hereby certify that I electronically filed the foregoing with John F. Corcoran, Clerk, U. S. District Court, using the CM/ECF system which will send notification of such filing to the following on this **13th** day of **June, 2008**:

Gary C. Hancock, Esq.
Timothy E. Kirtner, Esq.
Gilmer, Sadler, Ingram, Sutherland & Hutton
65 East Main Street
P. O. Box 878
Pulaski, VA  24301

Byron R. Shankman, Esq.
P. O. Box 1859
Dublin, VA  24084

**Co-Counsel for the Plaintiff**

    /s://Robert Michael Doherty, Esq.

s:\robinson_ch\19765\jnov motion--reply.doc6/13/2008rmd